UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDDIE D. ENNIS,

                                        Plaintiff,

                                                                    5:18-CV-00501

v.
                                                                    (GTS/TWD)

NEW YORK DEPARTMENT OF PAROLE,

                                        Defendant.
_____

APPEARANCES:

EDDIE D. ENNIS
Plaintiff pro se
114 Franklin Street
Apt. 208
Watertown, New York 13601

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

                    **ORDER AND REPORT-RECOMMENDATION**

I.      **INTRODUCTION**

        The Clerk has sent the civil rights complaint of *pro se* Plaintiff Eddie D. Ennis ("Ennis")

against sole Defendant, New York Department of Parole, to the Court for initial review.  In this

action, Plaintiff challenges the special conditions of release to parole supervision imposed upon

him on his release from prison and into the custody of the Department of Corrections and

Community Supervision ("DOCCS"), Division of Parole, on March 16, 2017, on the grounds the

conditions deprive him of his fundamental constitutional rights.[1]  (Dkt. No. 1 at 3.)  Also before

_____

        [1]  The New York State Department of Correctional Services and the New York State
Division of Parole merged to form DOCCS in 2011.  *See* N.Y. Laws of 2011, Chapter 62.  The
Division of Parole is now a division of DOCCS.  The Court will construe Plaintiff's complaint as
having named DOCCS rather than the New York Department of Parole as Defendant.

the Court are Plaintiff's application to proceed *in forma pauperis* ("IFP Application"), and a letter request for the assignment of counsel.  (Dkt. Nos. 2 and 3.)

## II.    IFP APPLICATION

The Court finds that Plaintiff has demonstrated the requisite economic need to proceed with this matter *in forma pauperis*.  As a result, Plaintiff's IFP Application (Dkt. No. 2) is granted.

## III.    INITIAL REVIEW

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e).  Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[2]

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that

---

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged    but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).

**IV.    PLAINTIFF'S COMPLAINT**

On May 24, 2010, Plaintiff was sentenced to a term of imprisonment and five years of Post-Release Supervision after being convicted of a course of sexual conduct against a child in the first and second degree.  (N.Y. Penal Law §§ 130.75(1)(a) and 130.80(1)(b)).  (Dkt. No. 1 at 29); *see also People v. Ennis*, 969 N.Y.S.2d 284, 285 (4th Dept. 2013).  Upon his release in March 2017, Plaintiff was placed on Post-Release Supervision for five years and numerous special conditions of release to parole supervision were imposed on him.  (Dkt. No. 1 at 3, 20-30.)  The special conditions challenged by Plaintiff in this action involve being precluded from residing with his wife and two sons ages eleven and nineteen, and not being allowed to own or use a computer or other electronic device with access to the internet.  *Id*. at 3-4.

**A.    Family Related Special Conditions of Release**

Plaintiff has been married to his wife since 1995.  *Id*. at 7.  His first son was born in 1998.  *Id*.  Plaintiff claims to have strong ties to his family and believes his children are suffering emotionally and mentally from the lack of stability and guidance that would be provided by having a father figure in the home, and his wife is being denied the right to cohabit with her husband and best friend in the same residence as their children.  *Id*. at 7, 10.

Prior to his conviction in 2010, Plaintiff had no criminal record, no history of drug or alcohol abuse, and served in the military from 1991 until his incarceration.  *Id*. at 7.  His wife and children were not involved in the charges against him, which involved a minor female relative, and there are no orders of protection regarding his wife and children.  *Id*.  Plaintiff is considered low risk of re-offending on the Compass Risk Assessment.  *Id*.

4

Plaintiff alleges he was informed by New York Parole that he will not be permitted to live with his family until his eleven year old son turns eighteen. *Id*. at 6. Plaintiff's parole officer has allowed Plaintiff to spend time with his eleven year old son since Easter 2007. *Id*. at 12. Plaintiff claims the reason he was given for not being permitted to reside with his family was that it would not comply with the Sexual Assault Reform Act ("SARA"). *Id*. at 6. According to Plaintiff that is not the case. *Id*. at 6-7. Plaintiff contends not permitting him to reside with his family is punitive in effect, constitutes an abuse of discretion, and is arbitrary. *Id*. at 7. Plaintiff further contends it deprives him of a liberty interest in violation of the Fourteenth Amendment to the United States Constitution, and violates the Ex Post Facto Clause of the New York State Constitution (Art. I § 10). *Id.*

**B.    Computer and Internet Use Related Special Conditions of Release**

Plaintiff alleges that the special conditions of parole imposed on him completely ban him from owning and/or using a computer or other electronic device with the ability to access the internet for the purpose of continuing his education, conducting legal research, conducting business, or other legal activity such as continuing his post-conviction process to vacate the criminal judgment in his case even though the crime for which he was convicted had absolutely nothing to do with a computer or the internet. (Dkt. No. 1 at 13.) Plaintiff claims he is not allowed by parole to have a laptop in his apartment and is not allowed to type and print his own court motions forcing him to seek the assistance of others. *Id*. According to Plaintiff, the only computer and internet access permitted by his parol officer is supervised use to seek employment at the Work Place in Watertown, New York. *Id.*

## V.    LEGAL ANALYSIS

### A.    Special Conditions of Parole

Parolees are not without constitutional rights.  *United State ex. rel. Sperling v. Fitzpatrick*, 426 F.2 1161, 1164 (2d Cir. 1970).  They are, however, subject to "restrictions not applicable to other citizens," and while on parole enjoy only "conditional liberty properly dependent on observance of special parole restrictions."  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  While parolees do not have a protected liberty interest in being free from special conditions of parole, they may have a viable due process claim under § 1983 based on the substance of the conditions and/or the basis for imposing the conditions.  *See Singleton v. Doe*, No. 14-CV-0303 (MB), 2014 WL 3110033, at *3 (E.D.N.Y. July 7, 2014) (citing *Maldonato v. Fischer*, No. 11-CV-1091Sr., 2012 WL 4461647, at *5 (W.D.N.Y. Sept. 24, 2012)); *Maldonato*, 2012 WL 4461647, at *5 (finding due process claim under § 1983 where allegations related to "the *substance* of the special conditions at issue . . . and the basis for their imposition") (emphasis in original).

As a general rule, "the imposition of conditions    whether imposed prior to or subsequent to release, by the parole board or a field parole officer    must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses." *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 298-99 (E.D.N.Y. 2018) (quoting *Singleton*, 2014 WL 3110033, at *3); *Robinson v. New York*, No. No. 1:09-cv-0455 (GLS/RFT), 2010 WL 11507493, at *6 (N.D.N.Y. Mar. 26, 2010) (where a special condition of parole "is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation.").

6

1.    Family Related Claims

A parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by substantive due process. *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005); *see also Troxel v. Granville*, 530 U.S. 57, 65-6 (2000) (plurality opinion) ("[T]he interest of parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents[.]"). "Children have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (citation omitted).

The well-established principles regarding familial association have been applied to analogous parole conditions by the Second Circuit.  In *Myers*, a case involving supervised release in the federal system, the Court applied strict scrutiny in considering a special condition of supervised release prohibiting the defendant "from spending time alone with his child absent authorization from the U.S. Probation Office." *Myers*, 426 F.3d at 120.  The Second Circuit held that to satisfy substantive due process, such a restriction on a releasee's liberty "must reflect the heightened constitutional concerns" of strict scrutiny, thus requiring the deprivation to be "narrowly tailored to serve a compelling state interest." *Id.* at 126.

In *United States v. McGeoch*, 546 F. App'x. 44 (2d Cir. 2013) (summary order), the Second Circuit applied strict scrutiny to a parole condition that restricted the defendant's contact with his sons, by barring him from any contact with a person under age eighteen unless supervised by a person approved by the parole officer. *Id.* at 48.  Without taking any position on whether the parole condition was warranted, the Court held that an individualized evaluation of

the threat the defendant actually posed to the safety of his children was necessary, writing:

> Absent an individualized inquiry into whether [the defendant's]
> sexual proclivities pose a threat to his sons . . . the imposition of a
> harsh condition of supervised release that either prohibits
> interaction with his children or makes such interaction subject to
> supervision by a person approved by the probation officer violates
> the [defendant's] due process rights.

*Id*. at 49 (citation omitted).

2.    Computer and Internet Use

Plaintiff claims that the special conditions of parole to which he is subject completely ban

him from owning and/or using a computer or other electronic device with the ability to access the

internet for the purpose of continuing his education, conducting legal research, conducting

business, or other legal activity such as continuing his post-conviction process to vacate the

criminal judgment in his case even though the crime for which he was convicted had absolutely

nothing to do with a computer or the internet.  (Dkt. No. 1 at 13.)  As explained above, special

conditions of parole are subject to judicial challenge if they are not related to a parolee's criminal

history, are arbitrary and capricious, or are not designed to deter recidivism and prevent further

offenses.  *See Trisvan,* 284 F. Supp. 3d at 298-9; *Robinson,* 2010 WL 11507493, at *6.  The

Plaintiff has alleged in his complaint that the crimes for which he was convicted were unrelated

to computers and the internet.  (Dkt. No. 1 at 13.)

**B.    Eleventh Amendment Sovereign Immunity**

The Eleventh Amendment bars claims for money damages and injunctive or declaratory

relief against a state or an arm of the state unless the state has specifically waived, or Congress

has abrogated, its sovereign immunity.  *See Cory v. White*,  457 U.S. 85, 90-91 (1982); *Edelman*

8

*v. Jordan*, 415 U.S. 651, 667-69 (1974). New York State has not waived its sovereign immunity and Congress has not abrogated its sovereign immunity in § 1983 actions. *See Jones v. N.Y. Div. of Military & Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999).

DOCCS, of which the Division of Parole is now a part, is a New York State agency that has immunity under the Eleventh Amendment. *See Rother v. Dep't of Corr. and Community Supervision*, 970 F. Supp. 2d 78, 89-90 (N.D.N.Y. 2013) (DOCCS is a state agency for purposes of the Eleventh Amendment and thus immune from suits for money damages and injunctive relief); *Heba v. New York State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007) (barring § 1983 action against the New York State Division of Parole on Eleventh Amendment immunity grounds). Therefore, the Court finds that Plaintiff's claims against DOCCS are barred by the Eleventh Amendment.

The Court notes that claims for money damages against state officials, including DOCCS officials and parole officers, sued in their official capacities, are also barred under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *Davis v. Jackson*, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *4 (S.D.N.Y. Sept. 30, 2016) (claims for damages against DOCCS officials sued in their official capacity are barred under the Eleventh Amendment). *James v. Suffolk County Correctional Facility*, No. 13-CV-2344 (JFB) (SIL), 2014 WL 4659300, at *4 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred under the Eleventh Amendment). The Eleventh Amendment also bars retroactive injunctive and declaratory relief against state officials sued in their official capacities but generally does not bar claims for prospective injunctive or declaratory relief against those officials. *See Tsirelman v. Daines*, 794 F.3d 310, 313-14 (2d Cir. 2015), *cert.*

*denied*, 136 S.Ct. 811 (2016) (citing *Ex Parte Young*, 209 U.S. 123 (1907)).

### C.    Personal Involvement by State Officials

Suits for money damages against state officials, including DOCCS officials and parole officers in their individual capacities, are not barred by the Eleventh Amendment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)); *Hafer*, 502 U.S. at 31 ("[w]e hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). However, personal involvement of the state official in the alleged violation of constitutional rights is a prerequisite to an award of damages under § 1983. *See Wright v. Smith* , 21 F.3d 496, 501 (2d Cir. 1994).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state

a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged

constitutional violation, (2) the defendant, after being informed of the violation through a report

or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4)

the defendant was grossly negligent in supervising subordinates who committed the wrongful

acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to

act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58

F.3d 865, 873 (2d Cir. 1995).[3]

Courts have found the requisite personal involvement by parole officers who have been

involved in the imposition or enforcement of special conditions of parole. *See, e.g., Farrell v.

Burke*, 449 F.3d. 470, 484 (2d Cir. 2006) (enforcement of special condition of parole by parole

officers "would clearly constitute personal involvement in any violation of [plaintiff's]

constitutional rights"); *Cooper v. Dennison*, No. 08-CV-6238P, 2009 WL 349135, at *2

(W.D.N.Y. Feb. 6, 2009) (Section 1983 claim regarding the imposition of special conditions of

parole found to survive initial review).  Courts have also allowed claims for prospective

injunctive relief as to certain future applications of special parole conditions against the DOCCS

Commissioner in his official capacity. *See, e.g., Doe v. Annucci*, No. 14 Civ. 2953 (PAE), 2015

WL 4393012, at *15 (S.D.N.Y. July 15, 2015).

Thus, while Plaintiff cannot sue the New York State Division of Parole, now merged into

DOCCS, he may be able to allege claims against individuals personally involved in the special

---

[3] The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

conditions of parole being challenged by him.

### D.    Opportunity to Amend

After reviewing the complaint, the Court finds that it alleges facts sufficient to state

claim for violation of Plaintiff's due process rights under the Fourth Amendment for purposes of

surviving initial review under 28 U.S.C. §§ 1915(e).  However, the Court also finds that due to

its sovereign immunity under the Eleventh Amendment,  Plaintiff's claim cannot be asserted

against DOCCS.  The Court therefore recommends that Plaintiff be granted leave to submit an

amended complaint naming those individuals he determines to be proper party defendants for

review by the Court within forty-five days from the date the District Court files its order on this

Court's Report-Recommendation, and that the action be dismissed with prejudice against

DOCCS on Eleventh Amendment grounds when Plaintiff submits an amended complaint, or at

the end of the forty-five days regardless of whether Plaintiff has submitted an amended

complaint.

## VII.    LETTER REQUESTING APPOINTMENT OF COUNSEL

Plaintiff has submitted a letter motion requesting appointment of counsel.  (Dkt. No. 3.)

The Court finds that a more fully developed record would be necessary for an assessment to be

made as to whether counsel should be appointed.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392

(2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in

determining whether to appoint counsel).  Moreover, Plaintiff's letter motion does not include

evidence of an attempt by him to find counsel to represent him on his own as is required before

seeking appointment of counsel from the court.  *See Terminate Control Corp. v. Horowitz*, 28

F.3d 1335 (2d Cir. 1994).  Therefore, the letter motion is denied.  The denial is without prejudice

so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel on in the event he submits an amended complaint that survives initial review.[4]

ACCORDINGLY, it is hereby

ORDERED, that Plaintiff's IFP application (Dkt. No. 2) is GRANTED; and it is

RECOMMENDED, that Plaintiff be granted leave to file an amended complaint naming those individuals he believes to be proper defendants within forty-five days from the filing of an order by the District Court on this Court's Report-Recommendation; and it is further

RECOMMENDED, that the action (Dkt. No. 1) be dismissed with prejudice against DOCCS on Eleventh Amendment grounds when Plaintiff submits an amended complaint or at the end of the forty-five days regardless of whether Plaintiff has submitted an amended complaint; and it is hereby

ORDERED that Plaintiff's letter motion for appointment of counsel (Dkt. No. 3) be DENIED without prejudice; and it is further

ORDERED, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the

---

[4]  A form for use on a motion for appointment of counsel is available on the Northern District of New York website at http:www.nynd.uscourts.gov.  If Plaintiff is unable to obtain the form from the internet, the form may be requested from the Clerk's Office.

[5]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:  June 12, 2018
            Syracuse, New York

_____
Therese Wiley Dancks
United States Magistrate Judge

---

mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed
period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the
end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2009 WL 349135
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Ronald COOPER, Plaintiff,

v.

Robert DENNISON, former chairperson of the NYS Div. of Parole; AMY Cummiskey, Parole Officer in Monroe County; Lewis Hrycko, Parole Officer in Monroe County; Douglas Rusinko, Parole Officer in Monroe County; Mr. Siragusa, Sr. Parole Officer in Monroe County; Gina Pritchett, Former Director of Day Reporting Center; AMY Hornsberger, Menbal Hygiene Coordinator, County Jail; and Judith Cummins, Administrative Law Judge, Defendants.

No. 08–CV–6238P.
|
Feb. 6, 2009.

West KeySummary

1    **Civil Rights**
       🔑 Parole

An inmate's civil rights claim alleging the denial of due process in his parole violation hearings was subject to dismissal. The claim would have rendered a conviction or sentence invalid and could not provide the basis for a civil rights claim. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

Ronald Cooper, Rochester, NY, pro se.

**ORDER**

MICHAEL A. TELESCA, District Judge.

**INTRODUCTION**

**\*1** Plaintiff Ronald Cooper, proceeding *pro se* and *in forma pauperis,* has filed an Amended Complaint in response to the Court's October 2, 2008 Order (Docket No. 5). The Amended Complaint is now the operative pleading in this action, and plaintiff has named the above-listed defendants. He claims that the defendants have violated his Constitutional Rights. For the reasons discussed below, several of plaintiff's claims are dismissed and service is directed on the remaining defendants only.

**PLAINTIFF'S AMENDED COMPLAINT**

Courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *see also Chambers v. United States,* 106 F.3d 472, 475 (2d Cir.1997) ("It is routine for courts to construe prisoner petitions without regard to labeling in determining what, if any, relief the particular petitioner is entitled to."). "A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted).

Broadly interpreting plaintiff's *pro se* pleadings in light of the Court's October 2, 2008 Order, the Court finds that plaintiff is raising several claims that are consistent with his earlier complaint. He claims that Parole Chairman Dennison[1] violated his civil rights by establishing a policy that imposed Special Conditions on parolees regarding "sex offenses" even where the conditions did not relate to the crime of conviction, and failed to remedy the problem even after plaintiff brought it to his attention.

Plaintiff claims that he was denied requisite due process during a number of parole violation hearings because Administrative Law Judge Cummins was biased, and witnesses Cummiskey and Pritchett gave false and perjured testimony. Additionally, he claims that Officer Cummiskey slandered and libeled him.

Plaintiff claims that Cummiskey, Pritchett, and Hrycko joined together to punish him for his complaints regarding the nature and conduct of their parole and Day Reporting supervision. Further, he claims that Siragusa failed to investigate plaintiff's complaints regarding the improper supervision.

Additionally, plaintiff claims that Officers Rusinko, Hrycko and others engaged in excessive force when taking him into custody on August 17, 2005. Finally, plaintiff claims that Mental Hygiene Coordinator Hornsberger misdiagnosed plaintiff, and put false information into his medical records, which led to improper medication and suffering.

## DISCUSSION

Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this Amended Complaint. The Court shall dismiss a complaint if the action (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a); *see also Abbas v. Dixon,* 480 F.3d 636 (2d Cir.2007).

 **\*2** In evaluating the Amended Complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *See Erickson,* 127 S.Ct. at 2200 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ——, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp,* 521 F.3d 202, 213 (2d Cir.2008) (discussing pleading standard in *pro se* cases after *Twombly* ).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *See Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875–76 (2d Cir.1994)). Based on its evaluation of the Amended Complaint, the Court finds that several of plaintiff's claims must be dismissed as barred or pursuant to 28 U.S.C. §§ 1915(e)(2)(B) (ii) and 1915A(b).

### A. Claims That Are Sufficient to Survive This Initial Review

The claims that were previously found to survive this review may go forward including: plaintiff's claims regarding the allegedly unlawful policy to impose the Special Conditions despite the lack of relationship of the conditions to the crime of conviction and Dennison's failure to remedy; claims that the improper imposition of the Special Conditions of Parole violated his constitutional rights; and plaintiff's retaliation claims against the parole officers. Further, plaintiff's claims alleging excessive force at his arrest are sufficient to proceed against Officers Rusinko and Hrycko. Additionally, plaintiff's amended complaint includes the claim that Gina Pritchett joined in the retaliation during her supervision of plaintiff at the Day Reporting Center. This allegation is not so implausible as to be dismissed at this stage in the proceeding.

Further, plaintiff's claims that Mental Hygiene Coordinator Hornsberger violated plaintiff's Eighth Amendment rights through deliberate indifference to his medical condition and putting false information into his medical records are sufficient to set forth a claim of deliberate indifference to his medical condition. It may be that plaintiff may fail to prove his claims, but the Court's uncertainty that plaintiff will ultimately succeed on the merits is no justification for a dismissal at this stage of the case. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

### B. Amended Complaint Claims That Must Be Dismissed

 **\*3** Plaintiff is attempting to re-assert claims regarding the parole violation hearings themselves. For the reasons that the claims were dismissed in the October 2, 2008 Order, the claims are again dismissed. The Supreme Court has made clear that there is no cause of action under 42 U.S.C. § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *See Heck v.*

*Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Moreover, plaintiff's claims regarding false testimony at one or more of the parole hearings could not proceed as independent claims separate from the due process challenges to the hearings themselves, except as they relate to the retaliation claims discussed above. Plaintiff does not have a constitutional right to be free from false accusation. *See Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"); *see also Threat v. Russi,* 784 F.Supp. 65, 68 (W.D.N.Y.1992). "Constitutional allegations that a parole revocation proceeding violated a parolee's right to due process must challenge the proceedings themselves and not solely the testimony of the witness." *See Mitchell v. Mid–Erie Counseling Service,* 2005 WL 1579810 *4 (W.D.N.Y.2005) (citing *Threat v. Russi,* 784 F.Supp. at 65). Therefore, plaintiff's claims challenging the parole violation hearings are dismissed from this action, and Judith Cummins remains terminated as a defendant to this action. [2]

To the extent that plaintiff is raising slander, libel and defamation claims, such claims must be dismissed. These allegations, at best, raise state tort claims. "The averment that a tort was committed under color of state law is not enough." *See Savage v. Snow,* 575 F.Supp. 828, 837 (S.D.N.Y.1983) (dismissing claims for harassment and slander brought under section 1983).

## CONCLUSION

Plaintiff is proceeding *pro se* and *in forma pauperis.* For the reasons discussed above, plaintiff's claims challenging his parole violation hearings, claims alleging state torts, and claims dismissed by the October 2, 2008 Order are dismissed. Judith Cummins is terminated as a party to this action.

The U.S. Marshal is directed to serve the summons and Amended Complaint on former Chairperson of the

New York State Division of Parole Robert Dennison, Parole Officer Amy Cummiskey, Parole Officer Lewis Hrycko, Parole Officer Douglas Rusinko, Senior Parole Officer Siragusa, Former Director of Day Reporting Center Gina Pritchett, and Monroe County Jail Mental Hygiene Coordinator Amy Hornsberger regarding the policy claims challenging the imposition of Special Conditions; the failure to remedy claims; the improper imposition of the Special Conditions of Parole claims; the retaliation claims; the excessive force claims; and the Eighth Amendment medical claim.

## ORDER

**\*4** IT HEREBY IS ORDERED, that plaintiff's Amended Complaint is the operative pleading;

FURTHER, that plaintiff's claims challenging his parole violation hearings, claims alleging state torts, and claims dismissed by the October 2, 2008 Order are dismissed;

FURTHER, that the Clerk of the Court is directed to terminate defendant Judith Cummins as party to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Amended Complaint, and this Order upon Robert Dennison, Amy Cummiskey, Lewis Hrycko, Douglas Rusinko, Senior Parole Officer Siragusa, Gina Pritchett, and Amy Hornsberger without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the Amended Complaint.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 349135

Footnotes

2009 WL 349135

1    Brion Travis is no longer named a defendant in the Amended Complaint. Plaintiff was advised in the October 2, 2008 Order that the Amended Complaint would completely replace his original complaint and that he should include all claims against all defendants against whom he intended to pursue claims.

2    Additionally, as an Administrative Law Judge for the Division of Parole, Cummins would also be entitled to immunity for claims regarding her decision to revoke parole. *See Montero v. Travis,* 171 F.3d 757,760 (2d Cir.1999) (citing *Scotto v. Almenas,* 143 F.3d 105 (2d Cir.1998).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 5720811
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Tiquan Davis, Plaintiff,
v.
Correction Officer Angela Jackson, Corrections
Lieutenant John Doe Donahue, Corrections
Lieutenant George John Doe, Correctional
Sgt. Ginah Shibah, Sgt. Jane Doe O'Cana,
and C.O. Raymond L. Ortiz, in their
individual and official capacities, Defendants.

Case No. 15-CV-5359 (KMK)
|
Signed 09/30/2016

**Attorneys and Law Firms**

Tiquan Davis, Ossining, NY, Pro Se Plaintiff.

Yan Fu, Esq., New York State Attorney General, New York, NY, Counsel for Defendants Correction Officer Angela Jackson, Corrections Lieutenant Donahue, Correctional Sgt. Ginah Shibah, and C.O. Raymond L. Ortiz.

OPINION & ORDER

KENNETH M. KARAS, District Judge

*1  Tiquan Davis ("Plaintiff"), proceeding pro se, brings this Action against Correction Officer Angela Jackson ("Jackson"), Correction Officer Raymond Ortiz ("Ortiz"), Sergeant Ginah Shibah ("Shibah"), Lieutenant "John Doe" Donahue ("Donahue"), Lieutenant "John Doe" George ("George"), and Sergeant "Jane Doe" O'Cana ("O'Cana"), employees of the New York State Department of Correction and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983. (Dkt. No. 2.) [1] Before the Court is Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Dkt. No. 22.) For the reasons explained herein, Defendants' Motion To Dismiss is granted without prejudice.

I. Background

A. Factual Background

The following facts are collected from Plaintiff's Complaint and are, for purposes of this Motion, accepted as true.

1. The September 18, 2011 Incident

Plaintiff is an inmate at Sing Sing Correctional Facility ("Sing Sing") and also has been an inmate at Southport Correctional Facility ("Southport"). (See Compl. 1–2 (Dkt. No. 2).) [2] On September 18, 2011, Correction Officer Bonner ("Bonner") gave Plaintiff authorization to make rounds on R&W Company in HBA-block, but, while he was making "I.L.C. rounds" on R company, Jackson told Plaintiff to show his hands and, after he did so, to put his hands on the gate for a pat frisk. (See id. at 9.) [3] At that time, Bonner yelled to Jackson to "leave [Plaintiff] alone," to which she responded by saying, "tell him to get the fuck off my company." (Id.) Plaintiff then turned to leave the company, but Jackson grabbed him by his sweater, and yelled, "[w]hat's all that you just dropped on the floor[?]" (Id.) Plaintiff, "in an attempt to stop this [correction officer] from grabbing him so roughly," grabbed Jackson's hands and told her to stop playing, at which time Correction Officers Sandiford and Grant grabbed Plaintiff from behind and took him to the ground without resistance. (Id.) While Plaintiff was being handcuffed, Shibah, the area supervisor, came and told Garcia to take Plaintiff to the shower on Q-Company and to take him to the hospital for a use of force examination. (Id.)

*2  While Plaintiff was in the hospital, he met with his I.L.C. staff advisor, Sergeant Williams ("Williams"), who asked Plaintiff, "[h]ow the hell did you let a chick like Jackson catch you with weed[?]" (Id.) Plaintiff at first thought Williams was kidding, but Williams said he was "dead serious," and said that Jackson claimed that Plaintiff came on the company with a handful of loose marijuana. (Id.) Plaintiff said he never had any marijuana on him, let alone loose in his hand, and posited that Jackson set him up because he had complained to the night block sergeant that Jackson had been preventing him from doing rounds on the company a few nights

before. (*Id.* at 9–10.) Photos were taken of Plaintiff, and he provided a written statement. (*Id.* at 10.) Afterwards, he was taken to the disciplinary office to provide a urine sample, which came back negative for drug use. (*See id.*) Plaintiff was then brought to the HBC-SHU, and, while in the special housing unit (the "SHU"), he received a misbehavior report written by Jackson and authorized by Shibah on September 18, 2011 charging him with several rule violations, which he identifies as "106.10 (direct order), 115.10 (frisk), 100.11 (ass[a]ult on staff), [and] 113.25 (drug possession)." (*Id.*) Thereafter, a tier III superintendent's hearing was conducted by Lieutenant Pinker, at which Plaintiff objected to the fact that he was denied Shibah and Correction Officer C. Benjamin ("Benjamin") as witnesses, since they were both involved in the misbehavior report. (*Id.*) Plaintiff was then found guilty of all of the charges except the frisk charge. (*Id.*) Plaintiff was given a penalty of 24 months in the SHU and 24 months' loss of all other privileges, including recommended loss of good time.

### 2. The October 20, 2011 Incident

On October 20, 2011, while in the SHU, Ortiz came to Plaintiff's cell and asked, "[a]re you ready[?]" (*Id.*) Plaintiff responded, "no," and Ortiz then said, "you wanna play games[,] so now [I]'m gonna play games." (*Id.*) Ortiz then told another correction officer to turn off the water in Plaintiff's cell, and Ortiz said, "[I]'m gonna play games this time, let's see you get around this one," and "remember that time when you pissed in the bullpen[?] [R]emember when you wrote my boy [P]erez up[?] [W]e ain['t forget that." (*Id.*) Ortiz then ordered Plaintiff to urinate into two separate bottles, one of which Ortiz placed into his top pocket, and the other of which was placed in a cup with a lid on it. (*Id.*) As Ortiz was leaving, he said, "now [I]'m gonna show you how to play games." (*Id.*) Several hours later, Plaintiff received a misbehavior report written by Ortiz in which it was alleged that Plaintiff tested positive for drugs. (*Id.*)

### 3. Disciplinary Hearing Proceedings

In connection with Plaintiff's discipline hearing, Plaintiff was provided with O'Cana to be his "tier assistance." (*Id.* at 11.)[4] Plaintiff asked O'Cana to view the SHU video and audio from the HBC 2 gallery from October 20, 2011,

for the hours of 11:45 AM to 1:26 PM, and to report the results back to Plaintiff because Plaintiff wanted the footage as evidence at his hearing so that he could "prove everything ... Ortiz did and said during the urine collection process." (*Id.*) Despite Plaintiff's request, O'Cana never viewed the footage. (*Id.*)

Subsequently, a tier III hearing was held, and George— who, according to Plaintiff, works in the disciplinary office with Ortiz and who approved Plaintiff's urine test—served as hearing officer. (*Id.*) During the proceedings, Plaintiff requested, but was denied, access to certain witnesses and materials, including the SHU video and audio footage, his urologist, his kidney specialist, the nurse administrator the mental health chief unit (who both provided e-mails prior to the hearing), and the drug-testing manual. (*Id.*) Plaintiff was then found guilty and given as punishment 24 months in the SHU and 24 months' loss of all other privileges, including recommended loss of good time. (*Id.*) In December 2011, Plaintiff was transferred from Sing Sing to Southport, with a total of 48 months in the SHU and 48 months' loss of all other privileges, including recommended loss of good time. (*Id.*)

### 4. Plaintiff's Appeal and Rehearing

Plaintiff filed an administrative appeal challenging both proceedings and at least partially succeeded on each. (*See id.* at 11–12.) On February 3, 2012, the Director of Special Housing (the "Director") modified the penalty imposed for Ortiz's misbehavior report and the hearing that resulted from it. (*Id.* at 11.) In so doing, he reduced the penalty from 24 months' time in the SHU to 18 months, but kept the remaining penalties in place. (*Id.*) Additionally, on February 7, 2012, the Director reversed the hearing for the September 18, 2011 incident due to the absence of two witnesses and ordered a rehearing, which was conducted by Donahue and concluded on March 7, 2012. (*Id.*) The rehearing was conducted at Southport and concluded on March 7, 2012. (*Id.* at 12.) Plaintiff was then found guilty of all four charges, including the frisk charge, of which he had earlier been found not guilty. (*Id.*) Plaintiff was then given 36 months in the SHU and 36 months' loss of all other privileges, a 12-month increase on both fronts from his earlier penalty. (*See id.* 10, 12.)

**\*3** In response to this heightened penalty, Plaintiff filed an administrative appeal to the Director on March 17,

2012, and his SHU time was modified from 36 months back to 24. (*Id.* at 12.) Plaintiff then filed an unsuccessful Article 78 proceeding challenging both tier III hearings. (*Id.*) Plaintiff filed an appeal, but it was dismissed because he could not afford the filing fee. (*Id.* at 12.) In the end, Plaintiff served a total of 30 months in the SHU. (*Id.*; *see also* Pl.'s Mem. of Law in Supp. of Pl's Reply ("Pl.'s Opp'n") 3 (Dkt. No. 33) ("After being in solitary confinement for 910 days [,] [P]laintiff was transferred directly back to Sing Sing ...."). [5]

### B. Procedural Background

On July 7, 2015, Plaintiff filed his Complaint, (*see* Dkt. No. 2), and sought leave to proceed in forma pauperis, (*see* Dkt. No. 1), which was granted on July 15, 2015, (*see* Dkt. No. 4). On November 24, 2015, Defendants sought permission to move to dismiss, (*see* Dkt. No. 19), and, on December 28, 2015, they filed their Motion and accompanying papers, (*see* Dkt. Nos. 22–27). After several extensions, Plaintiff filed his Opposition on June 7, 2016, (*see* Dkt. No. 33), and, on June 29, 2016, Defendants submitted their Reply, (*see* Dkt. No. 37). Plaintiff submitted a surreply on July 22, 2016. (*See* Dkt. No. 41.) Defendants filed their own surreply and accompanying papers on September 13, 2016. (*See* Dkt. Nos. 48–50.)

### II. Discussion

### A. Standard of Review

In order to determine what standard applies to Defendants' Motion, the Court must first decide whether it will, consistent with Defendants' proposal, (*see generally* Mem. of Law in Supp. of Defs.' Mot. To Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") (Dkt. No. 23) (presenting Motion as one brought under Rule 12(b)(6) or Rule 56)), convert the Motion to one for summary judgment so that the Court can consider additional material beyond that presented in Plaintiff's submissions. *Cf.* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). "Federal courts have complete discretion in determining whether to exclude material beyond the pleadings or to

convert a motion to dismiss into a motion for summary judgment." *Mason Tenders Dist. Council of Greater N.Y. v. W. Sur. Co.*, No. 15-CV-9600, 2016 WL 4098568, at *3 n.1 (S.D.N.Y. July 28, 2016) (internal quotation marks omitted). Given that "notice is 'particularly important' for a pro se litigant, who must be 'unequivocal[ly]' informed 'of the meaning and consequences of conversion to summary judgment," *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (quoting *Hernández v. Coffey*, 582 F.3d 303, 307–08 (2d Cir. 2009)), and given the factual disputes underlying the allegations in this case, the Court is not persuaded that conversion is appropriate here.

Turning to the standard under Federal Rule of Civil Procedure 12(b)(6), "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.' " (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

**\*4** In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt ... draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835618, at \*2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his or her complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at \*12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 Fed.Appx. 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at \*4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his [or her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at \*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B. Analysis

#### 1. Sovereign Immunity

Plaintiff has brought claims against Defendants in both their individual and official capacities. (*See* Compl. 1.) Defendants argue that "the Eleventh Amendment bars Plaintiff's [claims against Defendants in their official capacities] and request for monetary damages." (Defs.' Mem. 7.) The Eleventh Amendment prohibits suits against a state or its agency in federal court unless the state consents or there has been a valid abrogation of its sovereign immunity by an act of Congress. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984). Section 1983 does not constitute such an abrogation. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of § 1983 claims for damages against state, department, prison, and prison officials in their official capacities on Eleventh Amendment grounds); *see also Moreau v. Peterson*, No. 14-CV-201, 2015 WL 4272024, at \*5 (S.D.N.Y. July 13, 2015) ("[The] [d]efendants are employees of DOCCS and, as such, officials of the State of New York. [The] [p]laintiff's claims against [the] [d]efendants in their official capacities are therefore considered to be claims against the State, and are barred by the Eleventh Amendment."), *appeal filed*, No. 15-2534 (Aug. 11, 2015); *Leer v. Fisher*, No. 13-CV-8529, 2015 WL 413253, at \*6 (S.D.N.Y. Feb. 2, 2015) (dismissing § 1983 claims against prison officials in their official capacities); *Shannon v. Venettozzi*, No. 13-CV-4530, 2015 WL 114179, at \*3 (S.D.N.Y. Jan. 8, 2015) (dismissing claims against prison officials in their official capacities), *appeal filed*, No. 15-2484 (Aug. 6, 2015). Accordingly, all claims against Defendants in their official capacities are dismissed on the grounds of Eleventh Amendment sovereign immunity.

#### 2. Timeliness

**\*5** Defendants also argue that Plaintiff's retaliation claims against Jackson and Ortiz and his due process

claims against Jackson and Shibah are time-barred. (*See* Defs.' Mem. 5–7.) Defendants are correct that, on the facts pleaded, Plaintiff's claims are untimely. The claims are therefore dismissed, but without prejudice.

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove," a statute of limitations defense may be "raise [d] ... in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Zhongwei Zhou v. Wu*, No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alteration and internal quotation marks omitted)).

When a plaintiff brings an action under § 1983, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions.' " (alterations omitted) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989))). The statute of limitations for personal injury actions in New York is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see also* N.Y. C.P.L.R. § 214(5). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Hogan*, 738 F.3d at 517 (citing, inter alia, *Pearl*, 296 F.3d at 79); *see also Staten v. Village of Monticello*, No. 14-CV-4766, 2015 WL 6473041, at *5 (S.D.N.Y. Oct. 26, 2015) (same). Federal law determines when a § 1983 cause of action accrues, and the Second Circuit has ruled that "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl*, 296 F.3d at 80 (internal quotation marks omitted); *see also MacFarlane v. Ewald*, No. 10-CV-2877, 2016 WL 4076585, at *3 (E.D.N.Y. Aug. 1, 2016) (same); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 539 (S.D.N.Y. 2014) (same). Accrual does not wait "until the [plaintiff] has received judicial verification that the defendants' acts were wrongful." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir.

1994). Nevertheless, "claims brought by an inmate under the Prison Litigation Reform Act ... 42 U.S.C. § 1997e(a), are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies." *Gonzalez v. Hasty*, 651 F.3d 318, 319 (2d Cir. 2011). However, such tolling is limited to the "time period in which the inmate is *actively exhausting* his administrative remedies." *Id.* at 322 n.2 (emphasis in original).

a. Has the Statute of Limitations Lapsed?

In order to determine whether Plaintiff's claims are timely, it is, of course, incumbent upon the Court to determine when they accrued. Here, as Defendants rightly note, (*see* Defs.' Mem. 5–7), Plaintiff alleges two types of claims, specifically (1) First Amendment retaliation and (2) procedural due process.

**\*6** With respect to the former, the claim accrues once "all of the elements necessary to state the claim are present." *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015); *see also Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *10 (S.D.N.Y. Mar. 30, 2016) (same); *Turner v. Boyle*, 116 F. Supp. 3d 58, 83–84 (D. Conn. 2015) ("Under federal law, a claim for ... First Amendment retaliation[ ] accrues at the time that the allegedly wrongful conduct took place.").

Plaintiff's retaliation claim against Jackson arose on September 18, 2011, when Jackson wrote the allegedly false misbehavior report, (*see* Compl. 9), and thus needed to be filed by September 18, 2014 in order to be timely. Plaintiff's retaliation claim against Ortiz arose on October 20, 2011, when Ortiz charged Plaintiff with marijuana use, (*see id.* at 10, 14), and thus needed to be filed by October 20, 2014 in order to be timely. Because Plaintiff did not file his Complaint until June 29, 2015, Plaintiff's retaliation claims are untimely, absent any applicable tolling doctrines.

With respect to the due process claims, determining the accrual date is a difficult enterprise. On the one hand, some cases posit that "if the length of a plaintiff's confinement is affected by the result of a disciplinary hearing, the plaintiff's cause of action does not accrue until the guilty determination is reversed." *Mohamed v. Powers*, No. 14-CV-1389, 2015 WL 8492472, at *3 (N.D.N.Y. Dec. 10, 2015) (internal quotation marks omitted); *see*

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

*also McEachin v. Drefus*, No. 06-CV-1489, 2008 WL 686812, at *2 (N.D.N.Y. Mar. 10, 2008) (noting same (citing *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996))). The logic behind this line of analysis appears traceable to the Second Circuit's decision in *Black v. Coughlin*, which applied the so-called favorable termination rule from *Heck v. Humphry*, 512 U.S. 477 (1994) to conclude that a due process claim accrued upon the date of a state court reversal of disciplinary proceedings. *See* 76 F.3d 72, 75 (2d Cir. 1996). However, *Black* was decided two years before the Supreme Court again weighed in on the question in *Edwards v. Balisok*, 520 U.S. 641 (1997), in which it applied the *Heck* rule in the context of a complaint where the inmate alleged procedural defects that "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646. However, the import of *Edwards* was arguably obscured by a concurrence that suggested that not all procedural due process violations in cases bearing upon an inmate's good-time credits would imply the invalidity of the deprivation, *see id.* at 649–50 (Ginsburg, J., concurring); *see also Bonty v. Stevenson*, No. 09-CV-3838, 2011 WL 2112432, at *1 (N.D. Cal. May 24, 2011) (distinguishing the plaintiff's case requesting "damages ... based on the allegation that [the] [d]efendant denied him the opportunity to present witnesses at his disciplinary hearing," and noting that "[the] case [was] not like *Edwards,* in which the prisoner there alleged deceit and bias"). *But see Burnell v. Coughlin*, 975 F. Supp. 473, 478 (W.D.N.Y. 1997) (declining to conclude on the basis of the *Edwards* concurrence that "the ... majority intended to limit its application only to those procedural errors which are so egregious as essentially to constitute 'reversible error' regardless of any other factors").

*7 Added to this analysis, there is case law suggesting that the time a due process claim accrues depends on when the infirm proceedings actually deprived the plaintiff of liberty. *Cf. Victory v. Pataki*, 814 F.3d 47, 63 n.14 (2d Cir. 2016) ("A claim for denial of procedural due process accrues once an inmate is deprived of his constitutional procedural rights and is deprived of liberty as a result."). Other law posits that when an inmate claims to be aware of due process violations during a disciplinary proceeding and has challenged the suit in an Article 78 proceeding, his claim accrues no later than the date of the disciplinary proceeding's disposition. *See Baez v. Pinker*, No. 13-CV-9165, 2015 WL 3457277, at *4 (S.D.N.Y. June 1, 2015) (citing *Baez v. Bezio*, 908 N.Y.S.2d 608 (App. Div. 2010)),

*appeal filed*, No. 15-1932 (June 16, 2015). The complexity of the case law, perhaps, makes a compelling argument in favor of legal agnosticism. *Cf. Tafari v. Rock*, No. 11-CV-57, 2012 WL 1424725, at *2 (W.D.N.Y. Apr. 24, 2012) (noting that certain "[c]ourts ... have generally set the accrual date for procedural Due Process claims related to disciplinary hearings either at the date of the disciplinary hearing or at the date the prisoner's final administrative appeal is decided" and collecting cases (internal quotation marks omitted)); *see also Williams v. Roberts*, No. 11-CV-29, 2011 WL 7468636, at *5 (N.D.N.Y. Dec. 15, 2011) ("In this case, [the] [p]laintiff's [h]earings were held on October 25 and November 14, 2007, and those are the relevant dates when [the] [p]laintiff was, or should have been, aware of any Due Process violations that ensued."), *adopted by* 2012 WL 760777 (N.D.N.Y. Mar. 7, 2012). But that, of course, is not an option.

Hard though this question may be, the Court concludes that the best answer for this case is that Plaintiff's claims accrued on the last day of the final disciplinary hearing, as that is when he "ha[d] reason to know of the injury which is the basis of his action," *Pearl*, 296 F.3d at 80, and because, at that point, the "inmate [was] deprived of his constitutional procedural rights and ... deprived of liberty as a result," *Victory*, 814 F.3d at 63 n.14, in light of the fact that both proceedings resulted in "recommended loss of good time" and over a year in the SHU, (Compl. 11). [6] While *Heck* and *Edwards* certainly seem instructive for accrual purposes in this context, they have not, in the time since they were decided, established a bright-line approach to when due process claims accrue in prison as one might expect. *Cf. Burnell*, 975 F. Supp. at 478. Shorn of this reason to conclude that Plaintiff's hearing accrued upon reversal, the Court concludes that Plaintiff's due process claim accrued no later than March 7, 2012, and thus needed to be filed by March 7, 2015, absent any applicable tolling doctrines. [7]

### b. Tolling for Exhaustion of Administrative Remedies

As noted, however, Plaintiff's claim will be tolled for the portion of time during which he was actively exhausting his administrative remedies. With respect to the two retaliation claims, those claims were not tolled during the time Plaintiff was pursuing administrative remedies because the Complaint indicates only that Plaintiff's efforts to exhaust consisted of "filing an

administrative appeal" from the underlying disciplinary proceedings, (Compl. 4), and such a course of conduct is an inappropriate means of exhaustion for Plaintiff's retaliation claims, *see, e.g.*, *Toliver v. Fischer*, No. 12-CV-77, 2016 WL 3351974, at *2 (N.D.N.Y. Mar. 22, 2016) (dismissing, inter alia, First Amendment retaliation claim for failure to exhaust, but not dismissing due process claims relating to disciplinary proceedings, because they must "be exhausted by administrative appeals of the sanctions imposed"), *adopted sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Bennett v. Fischer*, No. 09-CV-1236, 2010 WL 5525368, at *6 (N.D.N.Y. Aug. 17, 2010) ("To the extent [the] plaintiff contends that he exhausted his administrative remedies with respect to his First and Eighth Amendment claims by pursuing his disciplinary appeal, the argument is unavailing."), *adopted by* 2011 WL 13826 (N.D.N.Y. Jan. 4, 2011); *cf. also Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004) (discussing the plaintiff's failure to "exhaust available administrative remedies before filing suit," where the plaintiff believed that he had to pursue his retaliation grievance through disciplinary appeals), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016).[8] However, the filing of an administrative appeal from his disciplinary proceedings would likely toll the statute of limitations with respect to Plaintiff's due process claims because such an appeals process is the proper mode of exhaustion. *See Henson v. Gagnon*, No. 13-CV-590, 2015 WL 9809874, at *9 (N.D.N.Y. Dec. 10, 2015) ("[W]here an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." (ellipses and internal quotation marks omitted)), *adopted by* 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016); *see also Khalid v. Reda*, No. 00-CV-7691, 2003 WL 42145, at *4 (S.D.N.Y. Jan. 23, 2003) ("When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." (internal quotation marks omitted)); *Samuels v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002) ("Disputes stemming from a disciplinary hearing are properly appealed directly and not through the Inmate Grievance Program.").

*8 Nevertheless, with respect to Plaintiff's due process challenge relating to the October 20, 2011 incident, even if it accrued after the punishment was modified on appeal, more than three years elapsed between that date (February 3, 2012) and the filing of the Complaint (June 29, 2015). Likewise, Plaintiff's due process complaint stemming from the September 18, 2011 incident would also be untimely because Plaintiff does not indicate when his appeal ended, and, hence, when the tolling ended. This matters because the burden to establish entitlement to equitable tolling falls on the plaintiff, *see, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." (internal quotation marks omitted)), and, without an indication that the plaintiff was actively exhausting during that time, *see Gonzalez*, 651 F.3d at 322 n.2, his burden will go unmet.[9] Therefore, the Court concludes that tolling during the period of time when Plaintiff was exhausting his administrative remedies cannot make his claim timely.

### c. Article 78 Proceedings

As noted, Plaintiff also contends that the statute of limitations for his claims was tolled pending the resolution of his Article 78 proceedings. (*See* Pl.'s Opp'n 1–2.) But "a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to [§] 1983." *Abbas*, 480 F.3d at 641; *see also Brant v. City of Syracuse*, No. 15-CV-1382, 2015 WL 9598888, at *3 n.1 (N.D.N.Y. Dec. 7, 2015) (same), *adopted by* 2016 WL 67718 (N.D.N.Y. Jan. 5, 2016); *Williams v. Roberts*, No. 11-CV-29, 2011 WL 7468636, at *5 n.12 (N.D.N.Y. Dec. 15, 2011), *adopted by* 2012 WL 760777 (N.D.N.Y. Mar. 7, 2012) ("[T]he filing of an Article 78 petition does not toll the limitations period."). Thus, the statute of limitations in connection with Plaintiff's claims were unaffected by his Article 78 proceedings.

### d. Equitable Tolling

Finally, Plaintiff contends that he was in "fear of retaliation by ... [D]efendants [which] prevented him from

filing his [claims] in a timely fashion," which he argues "is an extraordinary circumstance which warrants equitable tolling." (Pl.'s Opp'n 2.) [10]

**\*9** Under federal law, equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where ... 'extraordinary circumstances' prevented a party from timely performing a required act." *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at \*11 (S.D.N.Y. Mar. 30, 2016) (alteration in original) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)), *appeal filed*, No. 16-2369 (July 7, 2016); *see also Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 ("[C]ourts in th[e] [Second] Circuit deciding [§] 1983 claims have applied the federal equitable tolling standard, which allows tolling where extraordinary circumstances prevented a party from timely performing a required act." (internal quotation marks omitted)). "Equitable tolling is generally not available where the circumstances that a plaintiff claims prevented him from timely filing were within the plaintiff's control." *Myers v. New York*, No. 14-CV-1492, 2016 WL 2636295, at \*5 (N.D.N.Y. May 9, 2016) (citing *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001)); *see also Walker*, 430 F.3d at 564 (finding that equitable tolling was not available where pro se litigant's delay in filing his § 1983 action appeared to be entirely within his control). Furthermore, "[t]he party asserting that equitable tolling applies must have 'acted with reasonable diligence throughout the period he [sought] to toll.' " *Myers*, 2016 WL 2636295, at \*5 (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). "[A] plaintiff bears the burden of establishing that equitable tolling of [his] claims is appropriate." *Id.* However, "[t]o secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *see also Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. Mar. 26, 2015) ("[T]o benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner." (internal quotation marks omitted)).

Plaintiff alleges that his " 'fear of retaliation' is an extraordinary circumstance which warrants equitable tolling ... [which] prevented him from filing his 1983 in a timely fashion." (Pl's Opp'n 2.) As a preliminary matter, although the Second Circuit has not weighed in on the issue, the balance of the case law suggests that fear of retaliation is not a valid ground for equitable tolling. *See Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 136 n.14 (E.D.N.Y. 2013) (concluding, in a Title VII employment case, that "[f]ear of retaliation is not a basis for equitable tolling" and collecting cases); *see also Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) ("Even if there were admissible evidence that [the defendant] had threatened the plaintiff with firing her if she sued, this would not make out a defense of equitable estoppel [to the defendant's statute of limitations argument]."); *Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000) ("[The] [p]laintiffs' purported fear of retaliation, however, is not a ground for equitable tolling [in an employment discrimination case]. Otherwise, the doctrine ... would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation." (citation omitted)); *Krooks v. Haverford Coll.*, No. 14-CV-4205, 2015 WL 221082, at \*5 (E.D. Pa. Jan. 14, 2015) (noting that "[i]n the employment context, 'purported fear of employer retaliation is not a ground for equitable tolling' "); *Pratt v. Stop & Shop Supermarket Co., LLC*, No. 09-CV-5417, 2011 WL 579152, at \*4 (E.D.N.Y. Feb. 9, 2011) (concluding, in a Title VII employment case, that "fear of retaliation is not grounds for equitable tolling"). These cases, however, all involve equitable tolling in the Title VII employment or the ADA context. *See Beckel*, 301 F.3d 621 (Title VII); *Carter*, 225 F.3d 1258 (Title VII); *Krooks*, 2015 WL 221082 (ADA); *Pietri*, 936 F. Supp. 2d 120 (Title VII); *Pratt*, 2011 WL 579152 (Title VII). And in analyzing the viability of a threat of retaliation excuse, these courts noted the unique statutory structure of Title VII. *See, e.g., Beckel*, 301 F.3d at 624 (reasoning that a threat of retaliation "would be a form of anticipatory retaliation, actionable as retaliation under Title VII," and concluding that "[r]ather than deterring a reasonable person from suing, it would increase her incentive to sue by giving her a second claim, in this case a claim for retaliation on top of her original claim of sexual harassment"); *Carter*, 225 F.3d at 1266 ("Title VII specifically protects employees against retaliation for filing a discrimination complaint."); *see also Krooks*, 2015 WL 221082, at \*5 ("The various courts held that it would defeat the purpose of Congress's intent to add a statute of limitation if a [p]laintiff could defer filing so long as he feared retaliation, particularly where Congress had already instituted the

failsafe mechanism of a retaliation cause of action."). By contrast, there is no First Amendment cause of action for anticipatory retaliation, *see Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (noting that one element of a First Amendment retaliation claim is that "the defendant took adverse action against the plaintiff"); *cf.* James E. Robertson, *"One of the Dirty Secrets of American Corrections": Retaliation, Surplus Power, and Whistleblowing Inmates*, 42 U. Mich. J.L. Reform 611, 614 (2009) ("[W]hen inmates abstain from filing grievances for fear of retaliation, they cannot bring the underlying complaint to federal court ...."), and Plaintiff's claim for past retaliation is one of the very claims that is under scrutiny for timeliness. The case law thus does not answer whether fear of retaliation is a valid basis for invoking equitable tolling in the context of an inmate's § 1983 suit.

**\*10** Additionally, in the prison context, it is already settled that fear of retaliation can excuse an inmate's failure to exhaust administrative remedies. *See Ross*, 136 S. Ct. at 1860 (holding that administrative exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); *see also Williams v. Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (same). But this exception is not derived from principles of equitable tolling; it is instead based on the Prison Litigation Reform Act, 42 U.S.C. § 1997 et seq., which requires only exhaustion of "such administrative remedies as are available," *id.* § 1997e(a); *see also Ross*, 136 S. Ct. at 1856–57. Because the Prison Litigation Reform Act does not control the question of whether threat of retaliation is a valid ground for equitable tolling, the case law discussing the exhaustion of administrative remedies is of little help.

Instead, the Court turns to the underlying principles of equitable tolling and the realities that inmates like Plaintiff face in seeking to assert their rights. The chief impediment for invoking equitable tolling in this situation is that extraordinary circumstances will exist only where "the 'exceptional circumstances' giving rise to equitable tolling [were] 'beyond [the] control' of the party who seeks to benefit from it." *Walker*, 430 F.3d at 564 (first alteration in original) (quoting *Smaldone*, 273 F.3d at 138). The failure to file a timely complaint out of fear of retaliation is, at least as a theoretical matter, an impediment that is within a plaintiff's control. It makes some sense, then, in the

employment context, to exclude fear of retaliation as a basis for equitable tolling.

But plaintiffs arguing for equitable tolling in the employment context are situated much differently than plaintiffs filing lawsuits from prison. "Nowhere in our society is more forceful and sustained control over persons exercised than in its prisons ...." Craig Haney, *Psychology and the Limits to Prison Pain Confronting the Coming Crisis in Eighth Amendment Law*, 3 Psychol. Pub. Pol'y & L. 499, 499 (1997). Such sustained control tends to result in "adverse psychological effects" that invariably have "behavioral consequences." Jason J. Ben, *America's Need to Explore Alternatives to Incarceration: Can America Purport to Be the "Land of the Free" When It Currently Is the World's Leading Incarcerator?*, 30 S.U. L. Rev. 349, 356 (2003). When these "negative psychological effects of imprisonment" become "chronic and deeply internalized," inmates experience:

> dependence on the external constraints of institutional structure and contingencies; hypervigilance, interpersonal distrust and suspicion of threat or personal risk; emotional over-control, alienation and psychological distancing as a defense against exploitation and awareness of the riskiness and unpredictability of emotional investments in relationships; social withdrawal and isolation; incorporation of exploitative informal rules and norms of prison culture; diminished sense of self-worth and personal value; and posttraumatic stress reactions to the pains of imprisonment.

Zieva Dauber Konvisser, *Psychological Consequences of Wrongful Conviction in Women and the Possibility of Positive Change*, 5 DePaul J. for Soc. Just. 221, 241 (2012) (internal quotation marks omitted).

Retaliation and fear of retaliation are natural consequences of this unique psychological environment. And that fear of retaliation is not merely speculative or conjectural, as "it is clear that the level of actual retaliation, as well

as the perception of likely retaliation among ... inmates ... constitutes the single most important and difficult obstacle to inmates' use of the [grievance] system." Vincent M. Nathan, *Evaluation of the Inmate Grievance System Ohio*, Ohio Dep't of Rehab. & Corr. 28 (Feb. 13, 2001), https://www.law.umich.edu/facultyhome/margoschlanger/Documents/Resources/Prison_and_Jail_Grievance_Policies/Ohio_Nathan_Evaluation_Grievance_System.pdf. Unlike employees in the Title VII or ADA context, who have meaningful access to remedies for retaliation and anticipated retaliation, "[p]risons invest in correctional officers rule enforcement powers that readily mask retaliatory intent," Robertson, *supra*, at 615–16 (noting that "the frequent vagueness of disciplinary rules provides correctional officers ample leeway in deciding when and where to enforce these rules" (footnote omitted)), thereby subverting the mechanisms designed to protect plaintiffs from retaliatory conduct.

**\*11** Given this unique context and the substantial control that correction officers exert over inmates, *see* M. Jackson Jones, *Power, Control, Cigarettes, and Gum: Whether an Inmate's Consent to Engage in a Relationship with a Correctional Officer Can Be a Defense to the Inmate's Allegation of a Civil Rights Violation Under the Eighth Amendment*, 19 Suffolk J. Trial & App. Advoc. 275, 306 (2014) ("Basically, a correctional officer controls an inmate's life inside of prison."), the specter of retaliation, a real and ever-present force in an inmate's life, can reasonably be said to be outside of an inmate-plaintiff's control. Thus, the Court concludes that in the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant.

But that is not to say that every inmate is entitled to equitable tolling merely because he resides in an environment that intrinsically works to his disadvantage. After all, "most inmates perceive that they will expose themselves to retaliation if they use the grievance system," Nathan, *supra*, at 25, but certainly not all inmates are entitled to equitable tolling. Generalized allegations of fear of retaliation, therefore, are not sufficient to establish "extraordinary circumstances" warranting application of

equitable tolling. *See Nicoloudakis v. Bocchini*, No. 13-CV-2009, 2016 WL 3617959, at \*3 (D.N.J. July 1, 2016) ("Generalized fear of reprisal is not enough to warrant equitable tolling ...."), *appeal filed*, No. 16-3372 (Aug. 15, 2016); *Rosenblum v. Yates*, No. 09-CV-3302, 2011 WL 590750, at \*3 (E.D. Cal. Feb. 10, 2011) (finding that the plaintiff's "generalized allegation ... [of] fear of retaliation" was "insufficient to meet his high burden"). Here, however, Plaintiff has not offered merely generalized assertions of fear of retaliation. Rather, Plaintiff has alleged specific facts that gave rise to his fear upon his return to Sing Sing from Southport, including: (1) that one Defendant told Plaintiff not to "get comfortable" upon his return to Sing Sing; (2) that a false misbehavior report was filed against Plaintiff (and subsequently dismissed) upon his return to Sing Sing; (3) that one correction officer frisked Plaintiff and told him, "I hope your [sic] not gonna write me up for this because I know about you"; and (4) that following a search of Plaintiff's cell, another correction officer told Plaintiff not to "be writing a bunch of shit up around here," and told Plaintiff that "you know weapons can be found in your cell." (Pl.'s Decl. in Supp. of Pl.'s Reply 1–2 (Dkt. No. 33).) And Plaintiff explains that the reason he ultimately felt safe in filing the Complaint was that the superintendent of the facility and the captain of security assured him he would not be retaliated against. (*See id.* at 2–3.)

Accordingly, because the Court concludes that inmates may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation prevented them from filing a timely complaint, and because Plaintiff has alleged such facts, the Court is satisfied that Plaintiff has met the first prong of the equitable tolling inquiry.

Less clear, however, is whether Plaintiff has alleged facts showing that he exercised reasonable diligence during the time he felt threatened by officers at Sing Sing. Plaintiff does not explain, for example, when he contacted the superintendent seeking protection from retaliation. (*See id.*) The timing of that request is relevant because the Court would be hard pressed to conclude that Plaintiff exercised reasonable diligence in pursuing his rights if, for the entire time Plaintiff alleges he faced a threat of retaliation, he did nothing to seek protection from that threat of retaliation. And, assuming Plaintiff promptly sought the support of the superintendent, the Court needs to know when that support was given so that the Court

can determine when the tolling of Plaintiff's claims started and stopped. The timing is especially sensitive here, as Plaintiff's claims, if untimely, are untimely by less than a year. (*See* Defs.' Mem. 5–7.) There are, accordingly, insufficient facts for the Court to conclude that Plaintiff acted with reasonable diligence during the time he was facing a threat of retaliation. At this juncture, the Court cannot say that equitable tolling is warranted in Plaintiff's case.

**\*12** However, given Plaintiff's pro se status and the Court's obligation to liberally construe pro se pleadings, the Court is hesitant to dismiss Plaintiff's claims at this point without providing Plaintiff an opportunity to amend his complaint at least once. *See Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-8297, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) (noting that, in general, "a court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice" (internal quotation marks omitted)); *Horace v. Gibbs*, No. 14-CV-655S, 2015 WL 1033089, at *2 (W.D.N.Y. Mar. 9, 2015) ("Generally, the Court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.") (italics and internal quotation marks omitted) (quoting *Abbas*, 480 F.3d at 639); *Ogunbayo v. Montego Med. Consulting*, Nos. 11-CV-4047, 12-CV-428, 2012 WL 6625921, at *7 (E.D.N.Y. Dec. 19, 2012) (adopting magistrate judge's recommendation that the "[p]laintiff, proceeding pro se, should be afforded an opportunity to amend the

[dismissed] [c]omplaint"). Therefore, Plaintiff is granted leave to amend his Complaint in order to allege sufficient facts to show that he pursued his claims with reasonable diligence during the time he faced the threat of retaliation. Specifically, Plaintiff must allege what steps he took to secure the superintendent's assurance that he would not be retaliated against, when he took those steps, when the superintendent offered his support, and any other facts showing that Plaintiff exercised reasonable diligence in pursuing his claims. Plaintiff must also amend his Complaint to include the allegations of retaliation raised in his motion papers—the facts supporting Plaintiff's assertion that correction officers threatened to retaliate against him if he filed his lawsuit must be included in the amended complaint. Plaintiff must file his amended complaint within 30 days of the date of this Opinion.

### III. Conclusion

Plaintiff is granted leave to file an amended complaint within 30 days of the date of this Opinion. The Clerk of Court is respectfully directed to terminate the pending Motion. (*See* Okt. No. 22.)

SO ORDERED.

Dated: September 30, 2016.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 5720811

---

Footnotes

1   A review of the docket reveals that Defendants George and O'Cana have not been served, nor are they represented by the New York State Attorney General. (Defs.' Mem. of Law in Supp. of Defs.' Mot. To Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") 1 n.1 (Dkt. No. 23).) Thus, these Defendants are not considered movants for purpose of the Motion.

2   Because the Complaint comprises both a filled-out § 1983 complaint form and a statement of facts, each with its own numbering system, the Court's citations refer to the ECF-generated page numbers in the upper right-hand corner of the document.

3   The term "I.L.C." likely refers to the Inmate Liaison Committee program. *See Dolan v. Connolly*, 794 F.3d 290, 292, 294 (2d Cir. 2015) (discussing the inmate liaison committee at another correctional facility and indicating that "the ILC is a group of inmates elected to communicate grievances to officials" (internal quotation marks omitted)); *see also* New York State DOCCS Directive 4002 (July 21, 2015), http://www.doccs.ny.gov/Directives/4002.pdf.

4   The Court surmises that O'Cana was assigned to Plaintiff as an assistant in his disciplinary proceeding. *Cf.* N.Y. Comp. Codes R. & Regs. tit. 7, § 251-4.1 (providing that "[a]n inmate shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a misbehavior report has been issued against the inmate if," among other things, "the inmate is charged with drug use as a result of a urinalysis test").

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

5    Plaintiff's memorandum in support of his reply is included in a single docket entry along with his "reply motion" and declaration in support of his reply. (*See* Dkt. No. 33.)

6    "[I]nmates have a liberty interest in good time credit they have already earned." *Abed v. Armstrong*, 209 F.3d 63, 66–67 (2d Cir. 2000); *see also Hill v. Laird*, No. 06-CV-126, 2016 WL 3248332, at *10 (E.D.N.Y. June 13, 2016) (same); *Hidalgo v. Hopin*, No. 01-CV-57, 2009 WL 4803689, at *8 (W.D.N.Y. Dec. 9, 2009) (finding protected liberty interest implicated where the punishment was one year in SHU; one year loss of commissary, packages, and phone; and one year loss of good time, but later reduced to nine months).

7    In their brief, Defendants reach the same conclusions about the accrual date for the First Amendment retaliation, but they conclude that the due process claims accrued on March 7, 2012 for the first incident and October 20, 2011 for the second. (*See* Defs.' Mem. 5–6.)

8    Because Defendants have not briefed or otherwise argued the issue, the Court expresses no opinion on whether Plaintiff has exhausted his administrative remedies with respect to the retaliation claims.

9    It bears noting that, here, Defendants have submitted an affidavit to show when the appeals decision was handed down. (*See* Decl. of Donald Venettozzi Ex. D (Dkt. No. 24).) Because, however, as noted, "a district court [adjudicating a Rule 12(b)(6) motion] must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken," *Leonard F.*, 199 F.3d at 107 (internal quotation marks omitted), and the Court has already declined to convert the motion to one for summary judgment, the Court will not consider this evidence. Here, one wrinkle exists because Defendants also incorporated this fact into a Local Rule 56.1 Statement in the event that the Court converted the Motion into one for summary judgment, (*see* Local 56.1 Statement ¶ 8), and Plaintiff "admitt[ed]" to it in his opposition, (*see* Pl.'s Pro Se Reply Mot. ¶ 2 (Dkt. No. 33)). Although "the mandate to liberally construe pro se pleadings makes it appropriate to consider the facts set forth in [a] plaintiff's opposition papers," *Falso v. Gates Chili Cent. Sch. Dist.*, 680 F. Supp. 2d 465, 466 (W.D.N.Y. 2010) (italics omitted), *aff'd*, 408 Fed.Appx. 494 (2d Cir. 2011), that is not to be done without an eye on the policy underlying that proposition, *see McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *3 n.5 (S.D.N.Y. Mar. 31, 2016) ("[T]he policy reasons favoring liberal construction of pro se complaints permit a court to consider allegations of a pro se plaintiff in opposition papers on a motion where consistent with the complaint." (alterations and internal quotation marks omitted)). Here, the Court does not think that the policy favoring liberal construction of pro se submissions requires the Court to surmise a new fact from Plaintiff's decision to admit to a fact contained in a document that he did not realize was procedurally premature.

10   To be sure, the tolling provision discussed in connection with Plaintiff's pursuit of administrative remedies is a form of equitable tolling. *See Gonzalez*, 651 F.3d at 319 ("[C]laims brought by an inmate under the Prison Litigation Reform Act ... are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies ...."). However, because the analysis, as a practical matter, unfolds differently in that specialized context than with Plaintiff's other equitable tolling arguments, the Court breaks them out separately.

---

**End of Document**                                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4393012
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

John DOE and Jane Doe, Individually and on
behalf of M.S. an Infant, as Next Friends, Plaintiffs,
v.
Anthony ANNUCCI, Acting Commissioner of the
New York State Department of Corrections and
Community Supervision; Joseph Lima, Bureau Chief
of the Manhattan VI Area Office of the New York
State Division of Parole; Parole Officer Emily Scott;
Parole Officer Simon Valerio; Parole Officer Rebecca
Rodriguez; Parole Officer Rennie Rodriguez;
Senior Parole Officer Richard; ROsado; and Senior
Parole Officer James Cappiello, Defendants.

No. 14 Civ. 2953(PAE).
|
Signed July 15, 2015.

*OPINION & ORDER*

PAUL A. ENGELMAYER, District Judge.

**\*1**  Plaintiff John Doe was convicted of sexual offenses
against a teenage girl and served more than eight years
in prison. After Doe was released on parole, Doe's wife,
Jane Doe, gave birth to a son, M .S. In the years that
followed, the Department of Corrections and Community
Supervision ("DOCCS") applied one of Doe's special
parole conditions to bar him, during two distinct time
periods, from having any contact with his infant son.
These periods totaled more than one year.

John Doe, Jane Doe, and M.S. bring suit against eight
state personnel associated with DOCCS, claiming that
DOCCS's actions violated their rights to substantive
due process, intimate association, and procedural due
process, and that each individual defendant personally
participated in these actions. Seven of the eight defendants
now move to dismiss, asserting mootness, immunity, and
failure to state a claim. For the following reasons, the
motions to dismiss are granted as to defendants Rebecca
and Rennie Rodriguez for lack of personal involvement in

the alleged constitutional violations, but are denied as to
all other defendants.

**I. Background**

**A. Factual Background** [1]
John Doe, age 50, resides in the Bronx, New York. FAC
¶¶ 10, 22. He works for a company that provides foliage
for special events and film shoots. *Id.* ¶ 34.

In the early 2000s, Doe lived with his then-wife, Beverly
Martin; their four children, who are now between the ages
of 15 and 28; and Martin's niece, now 26. *Id.* ¶¶ 22, 24.
Doe was accused of engaging in oral and vaginal sex with
Martin's niece in 2002 and 2003, when she was 13 and 14
years old. *Id.* ¶ 24. On May 11, 2005, a jury convicted Doe
of one count of seconddegree rape, one count of second-
degree criminal sexual acts, and one count of endangering
the welfare of a child. *Id.* Doe maintains his innocence; his
conviction is still on appeal. *Id.*

On November 9, 2005, Doe and Martin divorced. *Id.* ¶ 25.
On September 22, 2007, while incarcerated, Doe married
Jane Doe, a woman he had known for 25 years. *Id.*

On November 2, 2011, after serving more than eight years
in prison, Doe was released on parole supervision. *Id.* ¶¶
24, 27. He will be on parole until March 2, 2016. *Id.* ¶ 28.
Upon release, Doe moved into an apartment with his wife,
Jane Doe. *See id.* 37.

The conditions of Doe's parole include that he "will have
no contact with any person under the age of eighteen,
without the written permission of the supervising parole
officer." *Id.* ¶ 29, Exs. B–C. To obtain permission to have
contact with his youngest daughter, L.S., who was 12
years old at the time of his release, Doe filed a petition
in Bronx Family Court. *Id.* ¶ 31, Ex. D. Martin, L.S.'s
mother, consented to this request. *Id.* On February 1,
2012, the Bronx Family Court granted Doe's petition and
authorized unsupervised visitation with L.S. *Id.*

In September 2012, Jane Doe gave birth to a son, M.S.
*Id.* ¶ 36. Soon after, John Doe successfully completed
substance-abuse and sex-offender treatment programs at
the New York Center for Addiction Treatment Services
("NYCATS"), as required by DOCCS. *Id.* ¶¶ 32–33. His
attendance rate in that program was 100%; the Assistant
Director found that he presented a low risk of recidivism;

and, upon completion, he was invited to be a peer mentor. *Id.* ¶¶ 33, 39.

**\*2** Notwithstanding those facts, on October 4, 2012, DOCCS Parole Officers Emily Scott, Richard Rosado, and James Cappiello informed Doe that he was not permitted to reside with minor children, was therefore required to move out of his family's apartment immediately, and was not allowed to have any contact with his month-old son, M.S., until such visitation had been approved by the family court and by Officer Scott. *Id.* ¶¶ 37–38, Ex. E. That day, Doe moved into a homeless shelter. *Id.* ¶ 38.

On October 5, 2012, Doe filed a petition for visitation with M.S. in Bronx Family Court. *Id.* ¶ 40, Ex. F. Jane Doe consented to the petition. *Id.* However, on March 12, 2013, the Bronx Family Court dismissed Doe's petition without prejudice because "the conditions of [his parole] indicate that he is not to live in the same home as a child under the age of 18." *Id.* ¶ 41, Ex. F.

On January 24, 2013, Scott called Mary Osborne, Deputy Director of the Sex Offender Management Unit, to discuss Doe's parole conditions. *Id.* ¶ 44. Osborne recommended that John and Jane Doe both be evaluated by NYCATS, and that Scott discuss the results with Capiello and Bureau Chief Joseph Lima. *Id.* On January 29 and February 2, 2013, a NYCATS social worker met with Doe "to assess his suitability to return to the home of his wife." *Id.* ¶ 45, Ex. G. The social worker recommended that Doe "be permitted to reside with his wife," explaining that "[c]ohabitation with a partner of the opposite sex" is "conducive to the principles of relapse prevention" because it is "a protective factor for those who commit sexual offenses" and ensures that Doe has "someone who can offer support if needed." *Id.*

On February 7, 2013, based on the social worker's recommendation and on Doe's "extremely low risk of reoffending," Scott notified Doe that he could return to his family's apartment. *Id.* ¶ 46. While living there, Doe "was an active husband and father" and "complied with all of his parole conditions." *Id.* ¶¶ 47–48.

In June and July 2013, Rosado instructed Scott to review Doe's case and confirm that he was permitted to reside with his family. *Id.* ¶¶ 51–52. On August 6, 2013, Lima, in a change of course, instructed Rosado to ensure that

Doe left his family's apartment. *Id.* 53. On August 22, 2013, Scott notified Doe that he was not authorized to reside with his son, M.S., who was then 11 months old, and "would have to move back to a homeless shelter." *Id.* ¶ 54. On September 5, 2013, another officer informed Doe that he would be arrested for a parole violation if he did not move out of his family's apartment immediately. *Id.* ¶ 55. Doe returned to the homeless shelter that day. *Id.* Doe was later permitted to move into a studio apartment. *Id.* ¶ 73. To enable the family to manage rent for two apartments, however, Jane Doe and M.S. moved into a one-bedroom apartment with Jane Doe's mother. *See id.* ¶¶ 73–74.

**\*3** On October 2, 2013, in response to a letter from an attorney representing Doe, Lima commenced an investigation to address Doe's request to have contact with M.S. *Id.* 61–62. Pursuant to a Protocol that DOCCS adopted in August 2013,[2] the agency had 45 days to complete the investigation. *Id.* ¶ 62, Ex. H. The officers involved in the investigation included Lima, Rosado, Scott, Rennie Rodriguez, Rebecca Rodriguez, and Simon Valerio, who was assigned to be Doe's primary parole officer in September 2013. *See id.* ¶¶ 56, 63–72. In support of Doe's request to return to his family's apartment, Jane Doe "express [ed] her strong desire to live with her husband" and told the officers that she "fe[lt] completely safe with [Doe] residing with their son." *Id.* ¶ 72. Martin also provided both oral and written statements expressing no objection to Doe's living with M.S., and L.S. told the officers that "she has never had a problem with her father." *Id* . Further, a clinical evaluation based on extensive psychological testing reported that Doe "did not make the criteria for pedophilia" and presented "a low or very low risk of sexual recidivism." *Id.* ¶ 75, Ex. J. The clinician therefore recommended that Doe be allowed to reside with his wife and infant child. *Id.* ¶ 77. The sex-offense victim, however, asked Officer Rebecca Rodriguez why Doe should "live happy and comfortable when he took something from [her] that [she] can't get back." *Id.* ¶ 72.

On February 21, 2014, following a lengthy and unexplained delay, Lima issued a oneparagraph order denying Doe's request to have contact with M.S. *See id.* ¶¶ 78–82, Exs. L–M. Noting that "[t]he victim's perspective is always important," the determination observed that Doe's "crimes occurred within the family constellation" and stated that Doe "was extremely manipulative and engaged in behaviors that involved extensive grooming,

intimidation and coercion of the 13 year old victim." *Id.* ¶ 82. Lima's determination also expressed doubt as to whether Doe "has shown true progress in treatment" and concern about Doe's "daughter who is the same age as the victim in the instant offense." *Id.* Lima therefore concluded that authorizing any contact between Doe and M.S. would present "an unreasonable risk" and "would not be in the best interest of the child." *Id.* ¶¶ 82–83.

On April 3, 2014, Doe notified William Hogan, a Regional Director of DOCCS, of his intention to appeal Lima's decision. *Id.* ¶ 85. Pursuant to the Protocol, Hogan scheduled a parental case conference with John and Jane Doe for May 5, 2014. *Id.* ¶ 86.

On April 25, 2014, the Does filed the lawsuit now pending before this Court. *See* Dkt. 1. The Does also sought emergency relief, Dkt. 6–9; that application was the subject of a series of hearings before this Court, and the Court expressed an interest in obtaining Hogan's decision before ruling on the Does' application, *see* Dkt. 48, at 4–5.

**\*4** On May 22, 2014, Hogan issued an order reversing Lima's decision and "allow[ing][Doe] contact with [M.S.]." FAC ¶ 87, Ex. O. The order stated that it "may result in possible reunification with his son in the marital household," but that Doe "is still subject to the original condition of his release." *Id.* Ex. O. Further, Hogan stated that the "decision does not preclude any future decision to bar [Doe's] contact with his son based on emerging issues, conditions or circumstances which would indicate to a parole officer that he is likely to or has sexually reoffended any child." *Id.*

In response to an email from Doe's counsel, Hogan later clarified that his decision did not define the "nature and type of contact" Doe could have with M.S. *Id.* ¶ 88, Ex. P.

On June 4, 2014, Doe's parole officer modified his parole conditions to "allow [ ] unrestricted contact" between Doe and his minor children, M.S. and L.S. *Id.* ¶ 89, Ex. Q. Since then, John Doe has resided with Jane Doe and M.S. without incident. *Id.*

### B. Procedural History

On April 25, 2014, plaintiffs commenced this case by filing a complaint, anonymously and under seal, in this District. *See* Dkt. 1–5. On May 2, 2014, plaintiffs moved for a temporary restraining order and preliminary injunction.

Dkt. 6–9. That motion was withdrawn after DOCCS authorized contact between Doe and M.S. on May 22, 2014, *see* Dkt. 45, and revised Doe's parole conditions to allow unrestricted contact on June 4, 2014, *see* Dkt. 52, 56–58.

On June 26 and August 15, 2014, defendants Rosado and Scott each filed an answer to the complaint. Dkt. 68, 94. On July 2 and July 30, 2014, the remaining defendants filed motions to dismiss. Dkt. 73, 82, 86.

On September 4, 2014, plaintiffs, with leave of the Court, filed the FAC. Dkt. 100. The FAC asserts three claims: violation of the Does' substantive due process rights, *see* FAC ¶¶ 90–97, freedom of association, *see id.* ¶¶ 98–104, and procedural due process, *see id.* ¶¶ 105–12. It seeks relief including a declaration that the "restriction on John Doe's contact with M.S. was unconstitutional," a "permanent injunction barring enforcement of the challenged parole condition as applied to John Doe," monetary damages, and attorneys' fees and costs. *Id.* at 30. As defendants, the FAC names Anthony Annucci, the Acting Commissioner of DOCCS; Lima, Bureau Chief of the Manhattan VI Area Office of the New York State Division of Parole; and Parole Officers Cappiello, Rebecca Rodriguez, Rennie Rodriguez, Rosado, Scott, and Valerio. *Id.* ¶¶ 13–21. Shortly thereafter, on September 8, 2014, plaintiffs voluntarily dismissed their claims against Flogan, Milza Mercedes, Tina Stanford, and Terrence Tracy, who had been named as defendants in the original complaint. *See* Dkt. 104.

Of the eight defendants named in the FAC, seven moved to dismiss in four separate motions, and one, Scott, filed an answer.

**\*5** Specifically, on September 18, 2014, Annucci filed a motion to dismiss, Dkt. 112, and a supporting memorandum of law, Dkt. 114 ("Annucci Br."). The same day, Rosado separately moved to dismiss. Dkt. 116, 124 ("Rosado Br."). Also on September 18, 2014, Lima, Rebecca Rodriguez, Rennie Rodriguez, and Valerio (collectively, the "Lima defendants") jointly moved to dismiss. Dkt. 119, 121 ("Lima Br."). Around the same time, on September 26, 2014, Scott filed her answer. Dkt. 127. On October 2, 2014, plaintiffs filed a memorandum of law in opposition to the three motions to dismiss that had been filed on behalf of six defendants. Dkt. 130 ("Doe Br."). On October 9, 2014, Annucci and the Lima

Doe v. Annucci, Not Reported in F.Supp.3d (2015)
Case 5:18-cv-00501-GTS-TWD    Document 5    Filed 06/12/18    Page 34 of 79
2015 WL 4393012

defendants submitted their replies. Dkt. 131 ("Annucci Reply Br."), 133 ("Lima Reply Br.").

On December 23, 2014, after receiving multiple extensions of time, Cappiello filed a motion to dismiss, Dkt. 141, and a supporting memorandum of law, Dkt. 143 ("Cappiello Br."). Finally, on January 20, 2015, plaintiffs filed their opposition to Cappiello's motion. Dkt. 145.

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. Although a district court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.,* 741 F.3d 365, 368 (2d Cir.2014), that tenet "is inapplicable to legal conclusions," *Iqbal,* 556 U.S. at 678.

## III. Discussion

The four motions to dismiss assert a total of seven bases on which the moving defendants argue that the Court should dismiss the FAC: (1) mootness, (2) absolute immunity, (3) qualified immunity, (4) sovereign immunity,[3] (5) preclusion, (6) abstention, and (7) failure to state a claim. The Court addresses these claims in turn.

### A. Mootness

All moving defendants argue that this case is moot because plaintiffs challenge a restriction on Doe's contact with M.S. that is no longer in effect. Defendants acknowledge that Doe was twice barred from living with his family or visiting his son: between October 4, 2012 and February 7, 2013, and again between September 5, 2013 and May 22, 2014—for a total of more than one year. *See* FAC ¶¶ 37–38, 46, 55, 87. Defendants argue, however, that plaintiffs' claims were rendered moot on May 22, 2014, when DOCCS issued an order authorizing Doe to have contact with M.S., *id.* ¶ 87, and/or on June 4, 2014, when

Doe's parole officer modified his parole conditions to allow unrestricted contact between Doe and M.S., *id.* ¶ 89.

**\*6** "It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Dean v. Blumenthal,* 577 F.3d 60, 64 (2d Cir.2009) (quoting *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992)). Accordingly, "[t]he requisite dispute must persist throughout the litigation." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet,* 260 F.3d 114, 118 (2d Cir.2001). "If the dispute should dissolve at any time due to a change in circumstances, the case becomes moot," and the Court must dismiss the suit for lack of subject matter jurisdiction. *Id.* at 118–19.

However, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000,* 132 S.Ct. 2277, 2287 (2012); *see also Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,* 561 U.S. 661, 724 n. 3 (2010) (Alito, J., dissenting) (collecting cases). Rather, "[v]oluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 719 (2007) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)) (second alteration in original).

Concretely, voluntary cessation of a challenged activity renders a case moot only "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York,* 594 F.3d 94, 110 (2d Cir.2010) (quoting *Campbell v. Greisberger,* 80 F.3d 703, 706 (2d Cir.1996)). This is a "formidable burden." *Seidemann v. Bowen,* 499 F.3d 119, 128 (2d Cir.2007) (quoting *N.Y. Pub. Interest Research Grp. v. Whitman,* 321 F.3d 316, 327 (2d Cir.2003)).

Here, the pleadings and materials cognizable on a motion to dismiss do not indicate that DOCCS's decision to permit Doe to have contact with M.S. is "unconditional and irrevocable." *Already, LLC v. Nike, Inc.,* 133 S.Ct. 721, 728 (2013). Quite to the contrary, in the May 22, 2014 order authorizing such contact, Regional Director Hogan stated that his "decision does not preclude any future decision to bar [Doe's] contact with his son based on emerging issues, conditions or circumstances which would indicate to a parole officer that he is likely to or has sexually reoffended any child." FAC Ex. O. Hogan's order also failed to define the "nature and type of contact" Doe and M.S. are permitted to have. *Id.* Ex. P. The parole officers thus retain substantial discretion over Doe's contact with his son. Doe's parole conditions were later modified to permit unrestricted contact with M.S., *id.* ¶ 89, but the order that did so contains no representations or assurances about future modifications, *id.* Ex. Q.

**\*7** It is plausible that the parole officers will later exercise their discretion to prevent Doe from living with or visiting M.S. As pled, DOCCS has changed course no fewer than four times, and has twice forbidden Doe from having any contact with his infant son: First, after allowing Doe to have unsupervised visits with his 12–year–old daughter and overseeing his successful completion of a sex-offender treatment program, parole officers abruptly required Doe to move out of his family's apartment and forbade all contact with M.S. FAC ¶¶ 31–33, 37–38. Second, after separating Doe from M.S. for four months, the officers abruptly allowed Doe to resume contact with M.S. and return to his family's apartment. *See id.* ¶ 46. Third, after Doe had lived with his wife and son without incident for nearly seven months, the officers inexplicably required him to vacate the marital home and once again cease contact with M.S. *Id.* ¶¶ 54–55. After a four-month investigation, Bureau Chief Lima affirmed the no-contact order. *Id.* ¶¶ 78–82, Exs. L–M. Based on the crimes Doe committed against a teenage girl more than a decade earlier, personal doubts as to whether Doe "ha[d] shown true progress in treatment," and concerns about Doe's 12–year–old daughter, Lima stated, in a one-paragraph determination, that "it would not be in the best interest of the child" to authorize contact between Doe and M.S. *Id.* ¶ 82, Ex. L. Fourth, after another eight months of separation and the filing of this lawsuit, and after proceedings for emergency relief had commenced before this Court, Regional Director Hogan issued a two-

page order reversing Lima's decision and "allow[ing][Doe] contact with [M.S.]." *Id.* ¶ 87, Ex. O.

To be sure, DOCCS has now permitted Doe to live with M.S. since May 22, 2014, a period of more than a year. But that period has coincided with the pendency of this lawsuit, which may have served to deter DOCCS from reversing course and reinstating terms that would separate Doe from his son. Further, because "the [defendants] continue[] to defend the legality of [their actions], it is not clear why the[y] would necessarily refrain from [resuming such actions] in the future." *Knox,* 132 S.Ct. at 2287. Until Doe is released from parole in March 2016, he faces the risk of another reversal from the DOCCS. The defendants therefore have not demonstrated that "there is no reasonable expectation that the alleged violation will recur," and the case is not moot. *Clear Channel Outdoor, Inc.,* 594 F.3d at 110.

Furthermore, even if discovery reveals that DOCCS is precluded from changing course yet again, Doe will retain a claim for damages for past injuries. And as the Second Circuit has repeatedly held, a defendant's "withdrawal of [a] challenged policy does not render moot [a plaintiff's] requested relief for past constitutional violations." *Dean,* 577 F.3d at 66 (citing, *inter alia, Stokes v. Village of Wurtsboro,* 818 F.2d 4, 6 (2d Cir.1987) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable.")). And even if the "actual damages are speculative, '[i]t is clear that nominal damages are available in actions alleging violations of constitutionally protected rights.' " *Id.* (quoting *Fox v. Bd. of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 141 (2d Cir.1994)). The Court therefore rejects defendants' claims of mootness.

### B. Absolute Immunity

**\*8** Six moving defendants (all but Annucci) argue that they are entitled to absolute immunity. They contend that determining special parole conditions is a quasi-judicial, adjudicatory function. The Court holds otherwise.

"A limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts." *Scotto v.. Almenas,* 143 F.3d 105, 110 (2d Cir.1998). "However, because absolute immunity 'detracts from section 1983's broadly remedial purpose,' " *id.* (quoting *Spear v. Town of W. Hartford,* 954 F.2d 63, 66 (2d Cir.1992)), " '[t]he presumption is that qualified

rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," ' *id.* (quoting *Burns v. Reed,* 500 U.S. 478, 486 (1991)) (alteration in original); *Dorman v. Higgins,* 821 F.2d 133, 136 (2d Cir.1987) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)) ("Absolute immunity is rarely granted; qualified immunity is the norm."). "Absolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy." *Scotto,* 143 F.3d at 110.

In resolving whether an official is entitled to absolute immunity, the Court must consider two factors: "the need for absolute immunity in order to permit the effective performance of the function, and the existence of safeguards against improper performance." *Dorman,* 821 F.2d at 136. "[A]bsolute immunity protects officials in their adjudicative or prosecutorial functions only." *Farrell v. Burke,* No. 97 Civ. 5708(DAB), 1998 WL 751695, at *4 (S.D.N.Y. Oct. 28, 1998) (citing *Scotto,* 143 F.3d at 110); *see also Dorman,* 821 F.2d at 136 ("Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process."). But absolute immunity "does not protect those same officials in the performance of administrative or investigative functions." *Farrell,* 1998 WL 751695, at *4. This distinction reflects a " 'functional approach' '; "the level of immunity 'flows not from rank or title or location within the Government, but from the nature of the [official's] responsibilities.' " *Scotto,* 143 F.3d at 110 (quoting *Cleavinger v. Saxrter,* 474 U.S. 193, 201 (1985)).

Applying these principles, the Second Circuit, and several other courts of appeals, have held that "a parole board official is absolutely immune from liability for damages when he 'decide[s] to grant, deny, or revoke parole,' because this task is functionally comparable to that of a judge." *Scotto,* 143 F.3d at 111 (quoting *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.1981)) (alteration in original); *see also Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999) (collecting cases); *Davis v. N.Y. State Div. of Parole,* No. 07 Civ. 5544(NRB), 2008 WL 3891524, at *12 (S.D.N.Y. Aug. 20, 2008); *LaBounty v. Coombe,* No. 95 Civ. 5592(MBM), 1999 WL 177438, at *5 (S.D.N.Y. Mar. 30, 1999), *aff'd,* 208 F.3d 203 (2d Cir.2000). For similar reasons, courts in this District have held that the imposition of special parole conditions can be an adjudicative act that merits absolute immunity. *See*

*Farrell,* 1998 WL 751695, at *4; *Stewart v. Smallwood,* No. 92 Civ. 4043(SS), 1993 WL 77381, at *1 (S.D.N.Y. Mar. 15, 1993) (collecting cases).

**\*9** By contrast, the Second Circuit has twice held that "a New York State parole officer who had recommended that a warrant be issued for a specific parole violation, but did not otherwise 'prosecute' the parole revocation, was not entitled to absolute immunity." *Taylor v. Sullivan,* 166 F.3d 1201, 1201 (2d Cir.1998) (unpublished opinion). The Circuit reasoned that such actions are not "integrally related to the judicial process." *Scotto,* 143 F.3d at 111 (quoting *Dorman,* 821 F.2d at 136). Nor did the officer "have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought." *Id.* at 112 (quoting *Butz v. Economou,* 438 U.S. 478, 515(1978)).

Here, the parole officers are clearly not entitled to absolute immunity for the allegedly wrongful actions they took in the course of *implementing* the decisions to separate Doe from M.S. *See Farrell,* 1998 WL 751695, at *4. The more difficult question is whether the officers should be accorded absolute immunity for *making* those decisions. The parties have not identified, and the Court has not found, any cases from this Circuit that resolve whether parole officers are entitled to absolute immunity for discretionary decisions applying parole conditions. For the following four reasons, the Court's considered judgment is that they are not.

First, the application of parole conditions is not "integrally related to the judicial process." *Dorman,* 821 F.2d at 136. As to this point, the Ninth Circuit's reasoning in *Thornton v. Brown,* 757 F.3d 834 (9th Cir.2013), is persuasive. The Ninth Circuit distinguished there between the *imposition* of parole conditions and the *enforcement* of such conditions. The imposition of parole conditions is " 'integrally related to an official's decision to grant or revoke parole,' which is a 'quasi-judicial' function' " entitled to absolute immunity. *Id.* at 840 (quoting *Swift v. California,* 384 F.3d 1184, 1189 (9th Cir.2004)). And, as noted, the Second Circuit similarly affords absolute immunity to a decision "to grant, deny, or revoke parole." *Scotto,* 143 F.3d at 111 (citation omitted). On the other hand, the Ninth Circuit reasoned, "the manner in which [parole officers] implement[ ][a] condition" is "an element of their supervisory function" and therefore merits only qualified

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

immunity. *Thornton,* 757 F.3d at 840 (citing *Anderson v. Boyd,* 714 F.2d 906, 910 (9th Cir.1983)). This conclusion accords with Second Circuit precedent holding that certain supervisory functions—including investigating parole violations and recommending revocation of parole—receive only qualified, not absolute, immunity. *See Scotto,* 143 F.3d at 112–13.

Here, the series of decisions regarding Doe's contact with M.S. had no relation to the decision to grant his parole, but were in the nature of applying a preexisting condition, and the officers were not acting "as an arm of the court." *Dorman,* 821 F.2d at 137. Because these actions were supervisory, not judicial or quasi-judicial, the officers are not entitled to absolute immunity.

**\*10** Second, assessing the policy considerations the Second Circuit has identified as relevant, absolute immunity is not necessary for "the effective performance of the function" at issue. *Id.* at 136. The decision in *Robison v. Via,* 821 F.2d 913 (2d Cir.1987), although arising in a different factual context, is instructive. At issue there was a decision by an assistant state attorney and a state trooper to remove two children from their parents' custody based on a report of sexual abuse. *Id.* at 915. The Second Circuit rejected the claim that the "investigation of alleged child abuse is a function so sensitive as to require a total shield from judicial review." *Id.* at 919. Although recognizing that such investigation "is obviously vital to interests of the child and of society as a whole," the Court concluded that the officials' ability to investigate complaints of abuse would not be undermined "by according them qualified rather than absolute immunity." *Id.* at 920.

The parole officers here were forced to engage in a similarly difficult balancing of Doe's fundamental right to have contact with his own young child and the need to protect M.S. from abuse. However, there is no indication that the officers' duties "cannot be performed properly unless all scrutiny is denied." *Id.* at 919. Indeed, tellingly, no moving defendant argues that a grant of absolute immunity is essential to properly supervising parolees and applying parole conditions.

Third, at least as pled, there are not adequate alternative "safeguards against improper performance" of the duties in question. *Dorman,* 821 F.2d at 136. As a point of contrast, the Second Circuit has held that "federal

probation officers [are] to be accorded absolute immunity in connection with their preparation and presentation of presentence reports," in significant part because "the presentence report is subject to a number of procedural safeguards"; these include the parties' opportunity to object to inaccuracies in the report and to appeal a sentence to a federal appellate court. *Id.* at 138. Here, by contrast, Doe alleges that the decisions to terminate his contact with his son were not made pursuant to a formal adversarial process that affords such opportunities. Indeed, as pled, Doe did not receive notice that the officers were deciding whether to terminate his contact with M.S ., *see* FAC ¶¶ 37, 53–55; was not afforded an opportunity to be heard, *see id.;* and was unable to appeal the decision to an independent tribunal, *see id.* ¶¶ 40–41, Ex. F (alleging that Bronx Family Court deferred to the existing parole conditions and dismissed Doe's petition for visitation without ruling on its merits).[4] Moreover, although the appeal to Regional Director Hogan led to a favorable outcome, Hogan's decision was issued while an application for emergency relief was pending with this Court; it is by no means clear that Doe's bid for review would otherwise have received a comparably fresh review. *See* FAC ¶¶ 85–88, Ex. O. In light of these procedural shortcomings, the important fundamental rights at stake "strongly [favor] the granting of only a qualified immunity, in which the objective reasonableness of a removal of the child from the parents' custody would be subject to judicial review." *Robison,* 821 F.2d at 920.

**\*11** Fourth, extending absolute immunity to parole officers applying parole conditions would significantly expand the scope of such immunity. Like many convicted sex offenders, Doe is subject to several dozen parole conditions, more than 30 of which vest the parole officers with discretion similar to that at issue here. FAC Ex. B–C. In addition to the power to decide whether Doe may have contact with any person under age 18, a parole officer has authority to grant or deny permission for Doe to own a camera, computer, scanner, or cell phone; possess "any children's products" or photos of minors; rent a post office box; obtain a driver's license; "rent, operate or be a passenger in any vehicle"; travel outside of New York City; visit an arcade, bowling alley, beach, or swimming pool; or have visitors at his approved residence. *See id.* Particularly given the presumption against absolute immunity, *see, e.g., Scotto,* 143 F.3d at 110, there are sound reasons not to give parole officers discretion,

unreviewable in a subsequent court action, over so many aspects of a parolee's life.

Finally, as a practical matter, the Court notes that absolute immunity does not bar suits for injunctive or declaratory relief. *Shmueli v. City of New York,* 424 F.3d 231, 239 (2d Cir.2005) (citing, *inter alia, Pulliam v. Allen,* 466 U.S. 522, 536–37 (1984)). Accordingly, Doe's claims for such relief would persist regardless of its resolution of the immunity claim, and the affected defendants would remain parties to this case.

### C. Qualified Immunity

The same six defendants alternatively claim that they are entitled to qualified immunity. They argue, in essence, that in deciding to terminate Doe's parental rights, they engaged in a difficult balancing between Doe's parental rights and his family's need for protection, and that their ensuing decisions, erroneous or not, were reasonable under the law and made in good faith.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes,* 135 S.Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012)); *see also, e.g., City & County of San Francisco v. Sheehan,* 135 S.Ct. 1765, 1774 (2015); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lore v. City of Syracuse,* 670 F.3d 127, 162 (2d Cir.2012) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)). Accordingly, for an action to lie, "existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor,* 135 S.Ct. at 2044 (quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.' " *Sheehan,* 135 S.Ct. at 1774 (quoting *al-Kidd,* 131 S.Ct. at 2085) (alteration in original).

**\*12** Significant here, defendants pursue qualified immunity on a motion to dismiss. And "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept

the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004). Specifically, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* "[T]he motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *Id.* (quoting *Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992)). The defendants therefore face a "formidable hurdle." *Id.* at 434.

As to the decisions made here for which the defendants seek immunity, at the time the defendants acted, "[i]t [wa]s well-established that a parent's interest in maintaining a relationship with his or her child is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Myers,* 426 F.3d 117, 125 (2d Cir.2005). Indeed, the Supreme Court had described "the interest of parents in the care, custody, and control of their children" as "the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel v. Granville,* 530 U.S. 57, 65 (2000) (plurality opinion); *see also, e.g., Quilloin v. Walcott,* 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Santosky v. Kramer,* 455 U.S. 745, 753 (1982) ( "The fundamental liberty interest of natural parents in the care, custody, and management of their children does not evaporate simply because they have not been model parents."). Further, it was established that "[c]hildren have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association." *Southerland v. City of New York,* 680 F.3d 127, 142 (2d Cir.2012) (quoting *Kia P. v. McIntyre,* 235 F.3d 749, 759 (2d Cir.2000)); *see also Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977) ("Th[e] right to the preservation of family integrity encompasses the reciprocal rights of both parent and children.").

In two previous cases, the Second Circuit has applied these well-established principles to analogous parole conditions. First, in *United States v. Myers,* 426 F.3d 117 (2d Cir.2005), the defendant faced a "special condition prohibiting him from spending time alone with his child absent advance authorization from the U.S. Probation Office." *Id.* at 120. Writing for the panel, then-Judge Sotomayor noted that the "conditions of supervised release must 'involve[ ] no greater deprivation of liberty

than is reasonably necessary.' ' *Id.* at 124 (quoting 18 U.S.C. § 3583(d)) (alteration in original). Where "the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest." *Id.* at 126 (citing *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)). On the record before the Circuit, however, the panel could not resolve whether the challenged parole condition satisfied strict scrutiny. *Id.* at 127–30. The Circuit thus remanded to the district court to balance "the intended purpose of the challenged condition" against the defendant's interest, if any, "as the parent of a child in foster care born out of wedlock." *Id.*

 **\*13** Second, in *United States v. McGeoch,* 546 F. App'x 44 (2d Cir.2013) (summary order), the parole conditions imposed at sentencing provided that, upon release, the defendant "shall not have any direct contact ... with a person under the age of 18 unless it is supervised by a person approved of by the probation officer." *Id.* at 46. This broadly worded condition, by its terms, would restrict the defendant's contact with his sons, who were to be 12 and 14 on the anticipated date of his release. *Id.* at 47–48. Significant here, the Second Circuit, applying extant precedent, held that "[a] condition of supervised release that prevents a father from seeing his children outside the presence of an approved monitor is a severe one subject to careful scrutiny." *Id.* at 48. "Absent an individualized inquiry into whether [the defendant's] sexual proclivities pose a threat to his sons," the "imposition of a harsh condition of supervised release that either prohibits interaction with his children or makes such interaction subject to supervision by a person approved of by the probation officer violates [his] due process rights." *Id.* at 49. Because the district court had not "articulate [d] why such a severe intrusion on the fundamental right to familial association was necessary under the circumstances," the Second Circuit remanded. *Id.*

To be sure, these two cases involved the imposition of parole conditions by a district court judge rather than application of such conditions by parole officers, but they are germane to the reasonableness of the defendants' actions here because denial of qualified immunity "do[es] not require a case directly on point." *Taylor,* 135 S.Ct. at 2044 (quoting *al-Kidd,* 131 S.Ct. at 2083). It is sufficient

that "existing precedent ... have placed the statutory or constitutional question beyond debate." *Id.*

Here, it is beyond dispute that both Doe and M.S. had a fundamental liberty interest in their familial relationship, and so constraints imposed by parole officers were required to have been "narrowly tailored to serve a compelling government interest." *Myers,* 426 F.3d at 126. Although the state has a compelling interest in preventing child abuse, a reasonable parole officer could not conclude that the deprivation of literally all contact between Doe and M.S., absent factual justification, was a narrowly tailored restriction. And on the facts pled, such justification was lacking. Doe had successfully completed sex offender treatment, FAC ¶¶ 26, 32–33; presented an extremely low risk of recidivism, *id.* ¶¶ 39, 46, 75–77; had unsupervised visits with his teenage daughter, *id.* 31, 72; and lived with his son without incident for significant periods of time, *id.* ¶¶ 46, 72, 89. To be sure, Bureau Chief Lima, in explaining his determination, expressed concerns about Doe's past sexual offense against a teenage girl. *See id.* ¶ 82. But it does not follow that Doe's "sexual proclivities pose a threat to his son[ ]," *McGeoch,* 546 F. App'x at 49; on the contrary, a clinical evaluation found that he "did not make the criteria for pedophilia" and was "exclusively heterosexual." *Id.* ¶ 75. Accordingly, considering the facts pled, the balance of interests favored either family reunification or, at the least, an intermediate step such as supervised visitation. Viewing the pleadings in the light most favorable to the plaintiffs, the denial of all contact between Doe and his newborn and later infant son therefore violated clearly established law. [5]

 **\*14** Further, on the facts pled, it was unreasonable for a parole officer to deprive Doe of all contact with his son without any process. As the Supreme Court has long instructed, "[t]he essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' " *Mathews v. Eldridge,* 424 U.S. 319, 348–49 (1976) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). Under the familiar *Mathews* test:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by

the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335 (citing *Goldberg v. Kelly,* 397 U.S. 254, 263–71 (1970)).

As of the time the defendants here acted, the Second Circuit, "in a substantial line of cases, ha[d] addressed the standards by which a state actor is measured for due process purposes when he or she removes a child from a parent's custody in the interests of the safety of the child." *Kia P.,* 235 F.3d at 759. As to the first *Mathews* factor, the Second Circuit had recognized "the very great importance of the private liberty interest ... of a parent in the companionship, care, custody and management of his or her child." *Duchesne,* 566 F.2d at 828 n. 26 (citation omitted); *see also, e.g., Rivera v. Marcus,* 696 F.2d 1016, 1027 (2d Cir.1982) ("[Plaintiffs] seek protection from state action which threatens the integrity and stability of their familial relationship. This important interest has consistently been recognized and afforded far-reaching due process protection."). And it had observed that "the 'fact specific' nature of the determination of the fitness of a parent presents a grave risk of erroneous deprivation when the action of the state is not promptly reviewed." *Duchesne,* 566 F.2d at 828 n. 26. In light of these factors, even if a parent and child must be separated on an "emergency basis," the Second Circuit had held, "the state has the duty to initiate a 'prompt' post-deprivation hearing." *Kia P.,* 235 F.3d at 754, 760 (citation omitted).

Measured against these standards, the facts pled support a claim that the defendants' decision to deny Doe access to his son was unreasonable—and a clear violation of procedural due process. As alleged in the FAC, the parole officers first informed Doe that he was not allowed to have any contact with M.S. on October 4, 2012. FAC ¶¶ 37–38. Before that date, Doe had not received any notice that DOCCS was considering making such a decision, nor was he given a pre- or post-deprivation opportunity to be heard. *See id.* On August 22, 2013, after authorizing family reunification for some months, the officers again told Doe that he could not reside or have contact with his infant son, M.S. *Id.* 54. Although DOCCS commenced an investigation shortly after Doe moved out of his family's apartment, Doe did not receive an opportunity to be heard until May 5, 2014, months after he was separated from M.S. *Id.* ¶ 86. To be sure, at this early stage, the Court cannot resolve precisely what procedures were required in this context, and the facts established in discovery or at trial may diverge materially from those pled. But, as alleged, the procedural safeguards available to Doe— or, more accurately, the lack thereof—were sufficiently plainly unconstitutional as to counsel against a finding of qualified immunity.

**\*15** Finally, again as a practical matter, qualified immunity, like absolute immunity, "only bars monetary damages-it does not bar declaratory or injunctive relief." *Robinson v. New York,* 486 F. App'x 905, 907 (2d Cir.2012) (summary order) (citing *Adler v. Pataki,* 185 F.3d 35, 48 (2d Cir.1999)). Therefore, a grant of qualified immunity would not result in any defendant's dismissal from this case, but only from the portion of plaintiffs' claims directed at money damages.

### D. Sovereign Immunity

Annucci, who is sued only in his official capacity, argues that the Court must dismiss all claims against him on the basis of sovereign immunity.

The Eleventh Amendment bars suits in federal courts against states and state officials acting in their official capacities by their own citizens, citizens of another state, and foreign sovereigns. *City of Shelton v. Hughes,* 578 F. App'x 53, 54–55 (2d Cir.2014) (summary order) (citing, *inter alia, W. Mohegan Tribe & Nation v. Orange County,* 395 F.3d 18, 20 (2d Cir.2004)). However, "[u]nder the well-known exception to this rule first set forth in *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007). "[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart,*

131 S.Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002)) (second alteration in original).

Doe's requests for monetary and declaratory relief are retrospective. His claim for injunctive relief against Annucci, by contrast, is prospective-Doe seeks to bar certain future applications of the special parole condition. Doe's claim for injunctive relief therefore falls within the *Young* exception so long as the complaint alleges an "ongoing violation of federal law." *Stewart,* 131 S.Ct. at 1639; *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281 (1997) ("An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction .").

The violation alleged here cannot be properly characterized as "ongoing" if that term requires a continuous violation. That is because Doe presently lives with his family and is permitted to have unrestricted contact with his minor children. FAC ¶ 89. But the alleged violation can be construed as "ongoing" in that, until Doe is released from parole in March 2016, the parole officers appear to be able, at any time, to reverse course and terminate Doe's contact with M.S. *See* pp. 10–12, *supra.* Accordingly, the decisive legal question as to Annucci's bid for sovereign immunity is whether the possibility of a future violation suffices to render that violation "ongoing."

**\*16** Neither the Supreme Court nor the Second Circuit has squarely addressed this question. But other courts of appeals have held that the challenged action need not literally "be in progress" to defeat a claim of sovereign immunity; rather, "where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1338 (11th Cir.1999); *see also* Charles Alan Wright et al., 13D Fed. Prac. & Proc. § 3566, at 292 (3d ed. 2008) ("[T]he best explanation of *Ex parte Young* and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution and laws.") (quoted in *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor,* 107 F.3d 1000, 1006 (2d Cir.1997)); *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 330 (4th Cir.2001) ("The requirement that the

violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."); *Vickery v. Jones,* 100 F.3d 1334, 1346 (7th Cir.1996) ("[T]he *Young* exception permits relief against state officials only when there is an ongoing or threatened violation of federal law."); *Han v. U.S. Dep't of Justice,* 45 F .3d 333, 338 (9th Cir.1995) (Eleventh Amendment bars suits where "[t]here is no allegation that the state defendants are likely to approve third party agreements in the future or that plaintiffs otherwise face a threat of harm from the state defendants' future actions."). Consistent with these cases, the Second Circuit has stated that "alleged injuries stemming only from past conduct *with no plausible threat of future violations* ... do not fall within the *Young* exception to Eleventh Amendment immunity." *Clark v. DiNapoli,* 510 F . App'x 49, 51 (2d Cir.2013) (summary order) (emphasis added).

This conclusion is, furthermore, consistent with the Supreme Court's admonition that *Young* distinguishes between cases "in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation." *Papasan v. Allain,* 478 U.S. 265, 277–78 (1986); *see also Green v. Mansour,* 474 U.S. 64, 68 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.") (citation omitted). In other words, the requirements that a complaint allege an "ongoing violation" and seek "prospective relief," although sometimes enumerated as separate elements, *see, e.g., In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir.2007), are closely interrelated. And the nature of the relief requested can shed light on whether the violation is ongoing. See *Rowland,* 494 F.3d at 96 ("[I]t is relevant—in considering the existence *vel non* of an ongoing violation —to ask whether the claimed remedy is still available."); *Summit Med. Assocs.,* 180 F.3d at 1338 ("[T]he ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.,* designed to prevent injury that will occur in the future, and cases where relief is retrospective.").

**\*17** Here, as noted, the requested injunctive relief is prospective. It does not relate to conduct that occurred in the past. *Cf. Nat'l R.R. Passenger Corp. v. McDonald,* 779 F.3d 97, 102 (2d Cir.2015) ("[T]akings are not an 'ongoing violation' of federal law.... What Amtrak considers an 'ongoing violation'—New York's entry onto and use of the land—is not even a violation of the law, because New York has legal title to it."). Nor is it an attempt to obtain "compensation for past injuries." *Eng v. Coughlin,* 858 F.2d 889, 896 (2d Cir.1988); *cf. Ward v. Thomas,* 207 F.3d 114, 122 (2d Cir.2000) ("[T]he ongoing ability of the subclass to recover for past underpayment does not change the retrospective nature of such relief."). Rather, anticipating the "threat of future enforcement," it aims to "prevent injury that will occur in the future." *Summit Med. Assocs.,* 180 F.3d at 1338.

The Court therefore holds that the FAC states a claim for an ongoing violation, such that, as pled, sovereign immunity does not bar Doe's claim for injunctive relief against Annucci.

Related, the Court notes that the parties dispute whether the June 4, 2014 modifications to Doe's parole conditions were final and irrevocable. Drawing all reasonable inferences in favor of the plaintiffs, as the Court must at this stage, the Court concludes that, much as they hope not to, plaintiffs could face adverse changes to Doe's parole conditions in the future. The possibility that DOCCS may again reverse course and impose a new separation order, to the detriment of Doe and his family, is particularly plausible given DOCCS's history, as pled, of arbitrarily enforcing, and changing, Doe's parole conditions. *See* pp. 10–12, *supra.* That said, if discovery reveals that the parole condition granting Doe unrestricted access to M.S. cannot be altered—that there is "no plausible threat of future violations," *Clark,* 510 F. App'x at 51—the factual underpinning of this holding will no longer apply, and the Court would then invite Annucci to move for summary judgment on the basis of sovereign immunity.

### E. Preclusion

Federal courts recognize two types of preclusion: claim preclusion and issue preclusion. Under the doctrine of res judicata, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999) (quoting *Rivet v. Regions Bank of*

*La.,* 522 U.S. 470, 476 (1998)) (emphasis omitted). Res judicata bars a later action when three conditions are met: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.,* 758 F.3d 493, 499 (2d Cir.2014) (quoting *Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000)) (alteration in original). Collateral estoppel, or issue preclusion, applies when an issue raised in a subsequent suit was "actually and necessarily determined" in a prior litigation; this precludes a party from relitigating the same issue based on a different cause of action. *Montana v. United States,* 440 U.S. 147, 153 (1979). To determine whether a party is collaterally estopped from raising an issue, a court considers whether "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.' " *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 91 (2d Cir.1997) (quoting *Cent. Hudson Gas & Elec. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995)).

**\*18** Annucci argues that Doe's claims are barred by claim preclusion and issue preclusion because Doe "is a member of the class in *Doe v. Overfield,*" a class-action lawsuit filed in the Western District of New York. Annucci Br. 18. That is factually wrong. The complaint in *Overfield* defined the class as "all parents who are now or will be in the future on parole for a criminal offense *unrelated to sexual misconduct,* and who are prohibited by defendants from contact with their children, when both parents of these children support parental contact." No. 08 Civ. 6294, Dkt. 70, at ¶ 35 (emphasis added). Because Doe was convicted of rape and criminal sexual acts, FAC ¶ 24, he is, by definition, not "on parole for a criminal offense unrelated to sexual misconduct" and is therefore not a member of the *Overfield* class. Further, the *Overfield* class plainly does not include Jane Doe and M.S., who are also named as plaintiffs in this case. Annucci's motion to dismiss based on a claim of preclusion is therefore unavailing.

### F. Abstention

Following the decision in *Younger v. Harris,* 401 U.S. 37 (1971), federal courts may not enjoin "state criminal prosecutions," "civil enforcement proceedings," and "civil

proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs,* 134 S.Ct. 584, 588 (2013) (quoting *New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of City of New Orleans,* 491 U.S. 350, 367–68 (1989)). *Younger* abstention, however, is merited only in "exceptional" circumstances. *Id.* "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.' " *Id.* (quoting *NOPSI,* 491 U.S. at 368).

Here, there is simply no ongoing state proceeding. Doe's criminal prosecution concluded in May 2005, FAC ¶ 24, and his administrative appeal was resolved shortly after Doe's suit was filed in this Court in April 2014, *id.* ¶ 87. Annucci may be correct that Doe could have brought his claims through an Article 78 proceeding in state court, *see* Annucci Br. 17–18, but the availability of that alternative forum does not provide a basis for dismissing or staying Doe's claims here. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 124 (1990) (" 'The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.' Thus, overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983.") (citation omitted); *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 516 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.").

### G. Failure to State a Claim

**\*19** For the reasons discussed in Section III.C, *supra,* the Court holds that the FAC states a claim for violations of plaintiffs' substantive and procedural due process rights. The remaining question is whether the FAC adequately alleges the personal involvement of each moving defendant in those violations, so as to state a claim against that individual.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010) (quoting *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006)). "A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). A defendant is "personally involved" if he "directly

participated in the infraction." *Id.* (collecting cases). "Direct participation" means "personal participation by one who has knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001) (citing *Gaston v. Coughlin,* 249 F.3d 156, 165–66 (2d Cir.2001)). The personal involvement requirement is also satisfied where a parole officer is alleged to have "actually enforced" a parole condition, such as by arresting the parolee for a violation. *Farrell,* 449 F.3d at 484.

### 1. Defendant Lima

As pled, Bureau Chief Lima was the primary driving force behind the constitutional violations. On August 6, 2013, "Lima instructed Senior Parole Officer Rosado to ensure that Mr. Doe immediately left [his family's] residence." FAC ¶ 53. Subordinate parole officers then carried out Lima's orders. *Id.* 54–55. Next, on October 2, 2013, Lima commenced an investigation regarding Doe's request to have contact with his son. *Id.* 62. On at least one occasion, October 7, 2013, Lima met with parole officers to discuss the investigation and give them instructions. *Id.* ¶ 63. Finally, on February 21, 2014, "Lima issued a one-paragraph determination denying Mr. Doe's request for contact with M.S." *Id* . ¶ 82, Ex. L.

These factual allegations, taken as true, are amply sufficient to establish that Lima was personally involved in the alleged constitutional deprivations.

### 2. Defendants Cappiello, Rosado, and Valerio

Like Lima, Senior Parole Officers Cappiello and Rosado were central participants in the constitutional violations alleged here. On October 4, 2012, they "told Mr. Doe that, despite his completion of the NYCATS program, his release conditions barred him from residing with children under the age of 18, and that he therefore needed to move out of his family's apartment immediately." *Id.* ¶ 37. Whether Cappiello and Rosado made the decision to enforce Doe's parole condition in this manner or simply enforced a decision made by someone else, this allegation adequately pleads that these two officers were personally involved in the alleged constitutional violation. *See Farrell,* 449 F.3d at 484.

**\*20** In addition, the FAC alleges that Officer Cappiello directed Doe to inform the Bronx Family Court of his parole condition, *id.* ¶ 41; and "oversaw"

Scott's supervision of Doe from October 2012 to April 2013, during which time Cappiello periodically met with Scott "to discuss Mr. Doe's case, including his living situation," *id.* 42, 49. Based on these allegations, the Court can reasonably infer that Cappiello "contributed to" the decision to keep Doe and M.S. separated from October 2012 to February 2013, and the decision to again deprive Doe of contact with M.S. in August 2013. *See Barnes v. Ross,* 926 F.Supp.2d 499, 508 (S.D.N.Y.2013) ("[Defendant] was aware of, and contributed to, [the alleged constitutional violation]. This direct, personal involvement is sufficient to allege personal involvement.").

Further, the FAC alleges that by mid–2013, Officer Rosado "had taken over supervision of Mr. Doe['s] case" from Cappiello. *Id.* ¶ 51. In that capacity, on June 17, 2013, Rosado "instructed Scott to review the case to confirm that Mr. Doe was properly residing with his family." *Id.* On August 6, 2013, "Rosado informed Bureau Chief Lima that Mr. Doe was residing with his wife and child" and received instructions "to ensure that Mr. Doe immediately left the residence." *Id.* ¶ 53. Rosado also "oversaw the investigation," met with Valerio to "determin[e] whether the [parental contact] request should be approved," and "issued a report to [Lima] summarizing the results of the investigation." FAC ¶¶ 71, 79–80. In light of these allegations, Rosado was, even more than Cappiello, actively personally involved in the alleged constitutional violations.

As to Officer Valerio, the FAC alleges that he replaced Scott as Doe's primary parole officer on September 10, 2013. FAC 156. At that time, Doe was barred from living with his family and having any contact with M.S. *See id.* ¶¶ 53–55. In his capacity as Doe's parole officer, Valerio had significant authority, including to approve Doe's request "to reside alone in a studio apartment." *Id.* ¶ 73. He also participated in the investigation. *Id.* ¶¶ 68–72. And, critically, he met with Rosado on December 9, 2013 to "determin[e] whether the [parental contact] request should be approved." *Id.* ¶ 79. Accordingly, as alleged, Valerio had power over Doe's living situation and was one of the relevant decision makers assessing the no-contact order; he was therefore personally involved in the constitutional violations.

### 3. Defendants Rennie Rodriguez and Rebecca Rodriguez

In contrast to the other parole officers, Officers Rennie and Rebecca Rodriguez were involved only in the investigation. *See id .* ¶¶ 17–18, 71–72. Concretely, they contacted and interviewed witnesses, searched for and reviewed records, and received information. *See id.*

72. But the FAC does not allege that the investigation itself was somehow improper. Nor does it allege that Rennie or Rebecca Rodriguez made a recommendation regarding Doe's contact with M.S., participated in a meeting in which a decision as to that issue was made, enforced the decision to separate Doe and M.S., or otherwise contributed to the constitutional violations. Accordingly, Rennie Rodriguez and Rebecca Rodriguez were not personally involved in the violations alleged. *Compare Barnes,* 926 F.Supp.2d at 508 (finding personal involvement where defendant "was aware of, and contributed to" the allegedly unconstitutional treatment), *and Pugh v. Goord,* 571 F.Supp.2d 477, 514–15 (S.D.N.Y.2008) (finding personal involvement where defendant "was consulted" and "espoused views" that led to the creation of the allegedly unconstitutional policy), *with Vogelfang v. Capra,* 889 F.Supp.2d 489, 503 (S.D.N.Y.2012) (finding no personal involvement where defendants were not "involve[d] in any event which constituted a violation of [plaintiff's] rights"), *and Odom v. Calero,* No. 06 Civ. 15527(LAK)(GWG), 2008 WL 2735868, at * 6–7 (S.D.N.Y. July 10, 2008) (finding no personal involvement where defendant reviewed an administrative determination). The claims against these two defendants therefore must be dismissed.

### 4. Defendant Annucci

**\*21** Defendant Annucci is sued only in his official capacity, as Acting Commissioner of DOCCS, and plaintiffs seek only injunctive relief against him. Accordingly, plaintiffs are not required to establish that Annucci was personally involved in the alleged constitutional violations. *See Farid,* 593 F.3d at 249 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to *an award of damages* under § 1983.") (citation omitted) (emphasis added). Instead, the relevant question is whether Annucci "has the authority to perform the required act." *Zappulla v. Fischer,* No. 11 Civ. 6733(JMF), 2013 WL 1387033, at \*10 (S.D.N.Y. Apr. 5, 2013) (quoting *Briscoe v. Rice,* No. 11 Civ. 578(JFB)(ETB), 2012 WL 253874, at \*4 (E.D.N.Y. Jan. 27, 2012)). As the "head" and "chief executive officer" of DOCCS, N.Y. Corr. Law §§ (1)-(2),

Annucci has authority to enforce an injunction issued against that Department.

Annucci objects that the New York State Board of Parole is independent from DOCCS. *See* N.Y. Exec. Law §§ 259–b, 259–c. This argument is unavailing. Plaintiffs do not challenge the imposition of the special parole condition by the Board of Parole; rather, they challenge the application and enforcement of that condition by the individual parole officers discussed above. Annucci thus "has the authority to perform the required act," *Zappulla,* 2013 WL 1387033, at *10, namely, to prevent the unconstitutional implementation of a parole condition by the parole officers who work under him.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted as to Rennie Rodriguez and Rebecca Rodriguez, and denied as to all other defendants. The Clerk of Court is respectfully directed to terminate Rennie Rodriguez and Rebecca Rodriguez as defendants in this case, and to terminate the motions pending at docket numbers 112, 116, 119, and 141. An order as to next steps in this case will issue shortly.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4393012

Footnotes

1   These facts are drawn from the First Amended Complaint and the exhibits attached thereto.
    Dkt. 100 ("FAC"). In resolving the motions to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiffs. *See Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir.2012).

2   DOCCS created the Protocol during settlement negotiations in *Doe v. Overfield,* No. 08 Civ. 6294, a class-action lawsuit filed in the Western District of New York. *Id.* ¶ 58. As explained at page 30, *infra,* the plaintiffs here were not members of that class.

3   Defendant Annucci is sued only in his official capacity and relies on a sovereign immunity defense. The other six moving defendants are sued in both official and individual capacities; they assert absolute and qualified immunity defenses.

4   On paper, the Protocol created in 2013 appears to address some of these shortcomings. *See id.* ¶¶ 57–60, Ex. H. In Doe's case, however, as alleged, DOCCS did not comply with the Protocol.
    *See id.* ¶¶ 78–82.

5   Defendants argue that Doe has "no inherent constitutional right to parole," Annucci Br. 21, or to "be[ ] free from special conditions of release," Rosado Br. 9, Lima Br. 9, Capiello Br. 9. But that argument misses the point. As defendants concede, parole conditions must be "reasonably related to past conduct," "not arbitrary and capricious," and "designed to deter recidivism and prevent further offenses." *Id.; see also Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 428 (S.D.N.Y.2003). As pled in the FAC, the application of Doe's parole conditions to deny him access to his son was arbitrary and cannot satisfy this standard.

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

Attorneys and Law Firms

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### MEMORANDUM DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.

(Dkt.Nos.2, 3, 4.)[1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are
*sua sponte* dismissed without prejudice and with leave to

amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

## I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.)[2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See
generally* Dkt. No. 1.) For a more detailed description of
Plaintiff's claims, and the factual allegations giving rise to
those claims, the reader is referred to Part III.B of this
Decision and Order.

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this
action *in forma pauperis.* (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,* "(2) ... the court shall
dismiss the case at any time if the court determines that
—... (B) the action ... (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

### A. Governing Legal Standard

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–

61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the

Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009).[7]

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that

Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily

committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible

connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at \*9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court— to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that*

*may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at \*2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary

award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at \*2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at \*2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future

wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995)* ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992)* ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case,

the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis,

Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

Footnotes

1    This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).

The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

**2**  At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

**3**  The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

**4**  *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**5**  *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**6**  It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**7**  *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

**8**  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

**9**  Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

**10**  The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not

an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

11    *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12    *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13    *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

14    For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4659300
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Travis JAMES, Plaintiff,

v.

SUFFOLK COUNTY CORRECTIONAL
FACILITY, et al., Defendants.

No. 13–CV–2344 (JFB)(SIL).
|
Signed Sept. 17, 2014.

**Attorneys and Law Firms**

Travis James, pro se.

Eric T. Shniederman, Attorney General of the State of
New York, by Lori Pack, Assistant Attorney General,
Hauppauge, NY, for Defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

*1 *Pro se* plaintiff Travis James ("plaintiff") brings
this 42 U.S.C. § 1983 action against defendants Suffolk
County Correctional Facility ("SCCF"), the Division of
Parole, Parole Officer Bill Henderson ("Henderson"),
Parole Officer Murphy ("Murphy"), Parole Officer T.
Mangiaracina ("Mangiaracina"), Suffolk County Sheriff
Vincent DeMarco ("DeMarco"), and several John Doe
Officers. As relevant at this juncture, plaintiff seeks
damages against Henderson, Murphy, and Mangiaracina
(collectively, "the parole officers") for issuing a warrant
against plaintiff for violating the conditions of his
parole. [1] (*See* Amended Complaint ("AC"), p. 6.) The
parole officers move to dismiss under Federal Rule
of Civil Procedure 12(b)(6) on the basis of qualified
and sovereign immunity. For the following reasons, the
Court dismisses any claims against the parole officers in
their official capacities, because those claims are barred
under the Eleventh Amendment. The Court denies the
motion to dismiss the individual defendants, in their
individual capacities, on qualified immunity grounds.
In their motion papers, defendants argue that qualified
immunity is warranted because, at a minimum, arguable
probable cause existed for the arrest on the parole

violation. However, defendants submitted no documents
to support that assertion and, in any event, the Court
could not consider evidence of that nature (outside the
pleadings) on a motion to dismiss. The denial of the
motion to dismiss on qualified immunity grounds as to
the individual defendants in their individual capacities is
without prejudice to a future summary judgment motion
on that issue.

**I. APPOINTMENT OF COUNSEL**

As a threshold matter, plaintiff's application for
appointment of counsel is denied.

Pursuant to 28 U.S.C. § 1915(e)(1), courts may appoint an
attorney to represent someone unable to afford counsel.
Courts possess broad discretion when determining
whether appointment is appropriate, "subject to the
requirement that it be 'guided by sound legal principle.'
" *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 171–72
(2d Cir.1989) (quoting *Jenkins v. Chem. Bank,* 721 F.2d
876, 879 (2d Cir.1983)). The Second Circuit set forth the
principle as follows:

> [T]he district judge should first
> determine whether the indigent's
> position seems likely to be of
> substance. If the claim meets
> this threshold requirement, the
> court should then consider the
> indigent's ability to investigate the
> crucial facts, whether conflicting
> evidence implicating the need for
> crossexamination will be the major
> proof presented to the fact finder,
> the indigent's ability to present the
> case, the complexity of the legal
> issues and any special reason in that
> case why appointment of counsel
> would be more likely to lead to a just
> determination.

*Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997)
(quoting *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d
Cir.1986)).

The Second Circuit also held that these factors are not
restrictive and that "[e]ach case must be decided on its
own facts." *Hodge,* 802 F.2d at 61. A developed record

assists the court in this regard. *See, e.g., Brooks v. New York,* No. 92–CV–1508, 1992 WL 320402, at *3 (S.D.N.Y. Oct. 29, 1992)* (denying, without prejudice, appointment of counsel based on pleadings' failure to satisfy *Hodge's* required threshold showing of likely merit).

**\*2** Plaintiff commenced this action for deprivation of his constitutional rights under the color of state law by defendants. The Court has reviewed plaintiff's application and finds that the appointment of counsel is not warranted at this stage of the litigation, because plaintiff has not satisfied the threshold requirement of *Hodge,* 802 F.2d at 61. Moreover, even apart from the threshold requirement, the Court is unable to conclude, after considering the above referenced *Hodge* factors in the context of the plaintiff's application and complaint, at this juncture in the litigation, that the appointment of counsel is warranted. Specifically, the appointment of counsel is unnecessary for the issues raised in the complaint and the motion to dismiss. Accordingly, plaintiff's application for appointment of counsel is denied without prejudice to plaintiff renewing the application at a later stage of these proceedings, if circumstances warrant such an application.

## II. BACKGROUND

### A. *Factual Allegations*

The Court takes the following facts from the amended complaint. These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motion and construes them in a light most favorable to plaintiff, the non-moving party.

Plaintiff was incarcerated from November 9, 2011 through July 9, 2012. (AC, p. 6.) After his release, he reported as directed to a parole officer within 24 hours. (*Id.*) After a few weeks, plaintiff was told to report to Riverhead to see Mangiaracina. (*Id.*) Sometime later, plaintiff was arrested for a parole violation while at an address where officers had made home visits. (*Id.*) Plaintiff claims that he was arrested for being at that address even though the Division of Parole-specifically, Mangiaracina-had approved his presence there. (*Id.*) Plaintiff appears to allege claims of false arrest and malicious prosecution. [2]

### B. *Procedural Background*

Plaintiff filed the complaint on April 4, 2013. On June 20, 2013, the Court *sua sponte* dismissed the complaint against SCCF and the Division of Parole with prejudice, and dismissed the claims against Henderson, Murphy, and DeMarco without prejudice. On June 9, 2013, the Court dismissed the case for failure to prosecute, but after receiving a letter from plaintiff on August 19, 2013, the Court reopened the case on August 27, 2013. Plaintiff filed the amended complaint on September 4, 2013. The parole officers were served on October 23, 2013. The parole officers requested a pre-motion conference in anticipation of moving to dismiss on November 25, 2013. They filed their motion on December 2, 2013. Plaintiff opposed on January 15, 2014. The parole officers did not reply. On April 3, 2014, plaintiff moved for appointment of counsel. On September 10, 2014, plaintiff submitted a letter to the Court containing additional information about medical claims. The matter is fully submitted.

## III. STANDARD OF REVIEW

**\*3** In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' " *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F .3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal

Case 5:18-cv-00501-GTS-TWD Document 5 Filed 06/12/18 Page 58 of 79
James v. Suffolk County Correctional Facility, Not Reported in F.Supp.3d (2014)
2014 WL 4659300

conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly,* 550 U.S. at 556–57 (internal citation omitted)).

Where, as here, a plaintiff proceeds *pro se,* the Court must construe the complaint liberally in the plaintiff's favor. *See, e .g., McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *McCluskey v. N.Y. State Unified Court Sys.,* No. 10–CV–2144 (JFB) (ETB), 2010 WL 2558624, at *8 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008)). Nonetheless, even though the Court construes a *pro se* complaint liberally, the complaint must still "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Mancuso v. Hynes,* 379 F. App'x 60, 61 (2d Cir.2010) (summary order) (quoting *Iqbal,* 556 U.S. at 678); *see, e.g., Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir.2009) (applying *Iqbal* and *Twombly* standard to *pro se* complaint).

## IV. DISCUSSION

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979). To prevail on a claim under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citation omitted).

**\*4** The parole officers argue that the claims are barred by the doctrine of qualified immunity and the Eleventh Amendment. Plaintiff opposes, and he notes that the

parole officers' motion was untimely. The Court addresses each issue in turn.

### A. *Untimely Motion*

Plaintiff argues that the motion should be denied because the parole officers untimely submitted their motion to dismiss. The summons was executed on October 17, 2013, and the pre-motion conference was belatedly requested on November 25, 2013. "When deciding whether to relieve a party from default ..., [a court will] consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.comLtd.,* 249 F.3d 167, 171 (2d Cir.2001). Although the parole officers have offered no plausible explanation for their delayed response, there is no evidence that it was willful, and they have raised potentially meritorious defenses in their motion. In addition, discovery has not yet begun, and the delay was not significant. Thus, there is no prejudice. Finally, the Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995). Accordingly, in its discretion, the Court shall excuse the untimely filing.

### B. *Sovereign Immunity*

The parole officers argue that the claims against them in their official capacities are barred under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states,

by their own citizens or by foreign sovereigns....." *State Emps. Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (quoting *Mohegan Tribe & Nation v. Orange Cnty.,* 395 F.3d 18, 20 (2d Cir.2004)) (alterations in original). Thus, absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989). Eleventh Amendment immunity also extends to suits for damages against state officers in their official capacities. *See id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)); *McNamara v. Kaye,* No. 06–CV–5169 (DLI)(CLP), 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the state.").

**\*5** New York State has not waived its immunity and there has been no statutory waiver. *See, e.g., Marmot v. Bd. of Regents,* 367 F. App'x 191, 192 (2d Cir.2010) ("New York has not consented to § 1983 suits in federal court...."). Moreover, the Division of Parole is a state agency entitled to Eleventh Amendment immunity. *See Chapman v. New York,* No. 11–CV–1814 (ENV)(LB), 2011 WL 4244209, at *2 (E.D.N.Y Sept. 14, 2011) (dismissing claims against New York and New York State Division of Parole on Eleventh Amendment immunity grounds (citing *McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001))). Plaintiff's lawsuit is brought against individual state parole officers. Thus, to the extent plaintiff is suing the officers for damages in their official capacity, the claims must be dismissed with prejudice because defendants are entitled to Eleventh Amendment immunity. *Will,* 491 U.S. at 71.

## C. *Qualified Immunity*

The parole officers argue that they are entitled to dismissal of the claims against them in their individual capacities on the grounds of qualified immunity.

### 1. Legal Standard

Government actors may be shielded from liability for civil damages by qualified immunity, *i.e.,* if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003); *see also Fielding v. Tollaksen,* 257 F. App'x 400, 401 (2d Cir.2007) ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *McClellan v. Smith,* 439 F.3d 137, 147 (2d Cir.2006) (quoting *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999)). Thus, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should similarly be decided by a court "[a]t the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

Nonetheless, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004); *see also McCray v. City of New York,* Nos. 03–CV–9685, 03–CV–9974, 03–CV–10080, 2007 WL 4352748, at *18 (S.D.N.Y. Dec. 11, 2007) ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage ... faces a formidable hurdle. Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." (internal citations and quotation marks omitted)). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

## 2. Application

**\*6** The parole officers argue that the claims must be dismissed under the objective reasonableness standard because "it can hardly be in dispute that sufficient evidence existed to charge Plaintiff with violating the conditions of his parole, or that no officer of reasonable competence could believe that probable cause existed to charge the Plaintiff with violating his parole after he had been arrested by the State Police and charged with two felonies, a misdemeanor and a violation for crimes unrelated to his [post release supervision]." (Motion Br., at 4–5.)

The fundamental shortcoming with the motion is that the Court cannot credit the above assertion at this juncture. In adjudicating this motion under Rule 12(b)(6), the Court may consider the following: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference; (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference; (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint; (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission; and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *E.g. Jones v. Nickens,* 961 F.Supp.2d 475, 483 (E.D.N.Y.2013); *David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co.,* 934 F.Supp.2d 533, 539 (E.D.N.Y.2013), *aff'd,* 542 F. App'x 89 (2d Cir.2013); *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.,* 934 F.Supp.2d 516, 524 (E.D.N.Y.2013), *aff'd,* 548 F. App'x 741 (2d Cir.2014). Here, no judicially noticeable documents or facts support the parole officers' assertion regarding plaintiff's current status and why he was arrested for the parole violation. Thus, the Court denies the motion to dismiss on qualified immunity grounds, without prejudice to defendants raising this issue in a summary judgment motion.

## V. CONCLUSION

For the foregoing reasons, the Court dismisses the claims against the parole officers in their official capacities, and denies the motion to dismiss the claims against them in their individual capacities. The Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

The Court requests that Magistrate Judge Locke supervise the discovery process with respect to the medical indifference claims against Suffolk County Sheriff Vincent DeMarco[3] and the claims relating to the parole violation as to the individual defendants.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4659300

Footnotes

1    Plaintiff brings different claims against DeMarco, who filed an answer on November 6, 2013. The Court dismissed SCCF and the Division of Parole with prejudice in an Order dated June 20, 2013.

2    It appears that plaintiff is being held on local charges and for parole violations. (*See* Motion Br., at 1.) According to the parole officers, the final parole revocation hearing on plaintiff's "most recent" parole violation charges was scheduled for December 25, 2013. (*Id.*) The exact circumstances are unclear; the movants have submitted no documentary evidence, and plaintiff's opposition is sparse.

3    Plaintiff submitted a letter, dated September 10, 2014, containing additional information regarding his medical claims. parole violation as to the individual defendants.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                           5

Maldonado v. Fischer, Not Reported in F.Supp.2d (2012)

2012 WL 4461647

KeyCite Yellow Flag - Negative Treatment

Distinguished by Singleton v. Doe, E.D.N.Y., September 28, 2016

2012 WL 4461647
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Angel MALDONADO, Plaintiff,

v.

Brian FISCHER, Commissioner New York State
Department of Correctional Services, Andrea
Evans, Chairwoman CEO New York State Division
of Parole, and Grant Scriven, Bureau Chief,
New York State Division of Parole, Defendants.

No. 11–CV–1091Sr.
|
Sept. 24, 2012.

**Attorneys and Law Firms**

Angel Maldonado, Alden, NY, pro se.

ORDER

JOHN T. CURTIN, District Judge.

## INTRODUCTION

**\*1** Plaintiff, Angel Maldonado, has commenced this
action *pro se* (Docket No. 1), and has moved for
permission to proceed *in forma pauperis*, and has filed
a Signed Authorization (Docket No. 2). Subsequent to
filing the complaint, plaintiff filed motions for preliminary
injunctive relief (Docket No. 3), and for the appointment
of counsel (Docket No.4). The Court grants the Plaintiff
leave to proceed as a poor person and, for the reasons
set forth below, determines that several of the claims set
forth in the complaint must be dismissed pursuant to 28 U.S.C.
§§ 1915(e)(2)(B) and 1915A, and that his applications for
preliminary injunctive relief and for the appointment of
counsel must be denied.

## STANDARD OF REVIEW

Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court
shall dismiss a case in which *in forma pauperis* status has

been granted if the Court determines that the action (i) is
frivolous or malicious; (ii) fails to state a claim upon which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief. In addition,
28 U.S.C. § 1915A(a) requires the Court to conduct
an initial screening of "a complaint in a civil action in
which a prisoner seeks redress from a governmental entity
or officer or employee of a governmental entity," *id.,*
regardless of whether or not the inmate has sought *in
forma pauperis* status under 28 U.S.C. § 1915. of the factual

In evaluating the complaint, the Court must accept as true
all allegations and must draw all inferences in plaintiffs
favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d
Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284,
287 (2d Cir.1999). "Specific facts are not necessary," and
the plaintiff "need only 'give the defendant fair notice
of what the ... claim is and the grounds upon which it
rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct.
2197, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic
Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167
L.Ed.2d 929 (2007) (internal quotation marks and citation
omitted); see also *Boykin v. Keycorp,* 521 F.3d 202, 213
(2d Cir.2008) (discussing pleading standard in *pro se* cases
after *Twombly* ). "A document filed *pro se* is to be liberally
construed, ..., and a *pro se* complaint, however inartfully
pleaded, must be held to less stringent standards than
formal pleadings drafted by lawyers." *Erikson,* 551 U.S.
at 94 (internal quotation marks and citations omitted).
Generally, the Court will afford a *pro se* plaintiff an
opportunity to amend or to be heard prior to dismissal
" 'unless the court can rule out any possibility, however
unlikely it might be, that an amended complaint would
succeed in stating a claim.' " *Abbas,* 480 F.3d at 639
(quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d
794, 796 (2d Cir.1999) (per curiam)).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.
"To state a valid claim under 42 U.S.C. § 1983, the
plaintiff must allege that the challenged conduct (1) was
attributable to a person acting under color of state law,
and (2) deprived the plaintiff of a right, privilege, or
immunity secured by the Constitution or laws of the
United States." *Whalen v. County of Fulton,* 126 F.3d 400,
405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865,
875–76 (2d Cir.1994)).

2012 WL 4461647

### *PLAINTIFF'S ALLEGATIONS*

 **\*2** Plaintiff's claims against the defendants-the Commissioner of the New York State Department of Corrections and two officials of the Division of Parolestem from the conditions of parole from a New York State conviction, which was granted in May, 2009. Plaintiff states that he is on parole from 2003 convictions for fraud, grand larceny, petit larceny, compounding a crime, harassment, tampering with physical evidence, bribing a witness and criminal impersonation. Plaintiff alleges that upon his release on parole he was given a series of special conditions that are given to sex offenders, conditions which were renewed after plaintiff's subsequent release from prison following incarceration for parole violations in February and September, 2010, despite the fact that none of his 2003 convictions constituted or related to a sex offense. Plaintiff states that what he refers to as the "sex offender conditions" of his parole ((Docket No. 1, p. 8, ¶ 7) were imposed on him because of a prior 1997 conviction for sexual misconduct, pursuant to § 130.20(2) of the New York State Penal Law, for which he was sentenced to three years probation in March 1997 and from which he was discharged in March, 1999. He further alleges that it was never recommended nor ordered by the Court at the time of his 1997 sentencing on the sexual misconduct conviction that he attend sex offender counseling or that he register under the state Sex Offender Registration Act (SORA), N.Y. Corr. Law § 168 *et seq.* He states that at the time of his 1997 conviction, the definition of "sex offense" found in SORA did not include the offense of sexual misconduct under N.Y. Penal Law § 130.20(2). However, in 2002, § 168–a of the Correction Law was amended to include sexual misconduct under N.Y. Penal Law § 130.20(2), thereby making anyone convicted of sexual misconduct susceptible to being labeled a sex offender and thereby subjected to SORA. Plaintiff therefore alleges that fourteen years after his conviction for sexual misconduct, the Division of Parole determined that he should be "labeled a sex offender based on the definition pursuant to Correction Law § 168–a and therefore [be supervised] as a sex offender case." (Docket No. 1, p. 9, ¶ 10).

It is not clear whether plaintiff is alleging that all of the "sex offender conditions" of parole were attributable to his having been determined to be a sex offender within the meaning of SORA, or whether some of the conditions to

which he objects were attached to his parole as ordinary conditions of parole to be applied by the Division of Parole at its discretion.

Plaintiff argues that the retroactive reclassification of his 1997 sexual misconduct conviction as a sex offense, and the corresponding imposition of sex offender conditions to his parole on his 2003 conviction (1) violates the Ex Post Facto Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3, (2) deprives him of due process under the Fourteenth Amendment, and (3) constitutes cruel and unusual punishment within the meaning of the Eighth Amendment. Plaintiff's complaint seeks injunctive relief, *i.e.,* that the Court direct that all sex offender conditions be removed from the conditions of his parole. Each of the three bases asserted by plaintiff will be treated as a separate claim below.

### *DISCUSSION*

 **\*3** Parole is an "established variation on imprisonment of convicted criminals," *Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which is partof a " 'continuum' of state-imposed punishments." *Samson v. California,* 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (citing *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)). "[T]he practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system." *Morrissey,* 408 U.S. at 477 (citation omitted). The twofold purpose behind parole is "to help individuals reintegrate into society as constructive individuals as soon as they are able ... [while] alleviat[ing] the costs to society of keeping an individual in prison." *Id.*

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). "The essence of parole is release from prison, before the completion of sentence, *on the condition that the prisoner abide by certain rules during the balance of the sentence." Morrissey,* 408 U.S. at 477 (emphasis added). To ensure the security and effectiveness of release, "those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms ... [which] restrict their activities substantially beyond the ordinary restrictions imposed by law on an

individual citizen." *Id.* at 478. "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Id.* at 478–79.

As a general matter, it is well-established that "the [New York] Parole Board's discretionary imposition of special conditions is not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner. Review of conditions of parole are generally matters for state courts." *Walker v. Mattingly,* 09–CV–845–JTC, 2012 U.S. Dist, LEXIS 48547, at *18, 2012 WL 1160772 (W.D.N.Y. Apr. 5, 2012) (internal quotation and citations omitted). Moreover, as explained below, the courts in the Second Circuit have addressed and generally rejected constitutional objections to the application of the provisions of SORA to parolees, including the objections asserted by plaintiff.

*Ex Post Facto Clause and Eighth Amendment Claims*
Article I, § 9 of the Constitution prohibits the States from passing any laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). The Ex Post Facto Clause of the Constitution "applies only to penal statutes which disadvantage the offender affected by them." *Id.* (emphasis added). In *Doe v. Pataki,* 120 F.3d 1263, 1284–1285 (2d Cir.1997), the Second Circuit held that the SORA's registration and community notification provisions were not "punishments" within the meaning of the Ex Post Facto Clause. See *also Smith v. Doe,* 538 U.S. 84, 105–06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding that retroactive application of Alaska's sex offender registry statute did not violate the Ex Post Facto clause). *Accord, e.g., Manzullo v. New York,* No. 07 CV 744(SJF), 2010 U.S. Dist. LEXIS 32089, at *22, 2010 WL 1292302 (E.D.N.Y. Mar. 29, 2010) (denying habeas relief to petitioner claiming that both the registration and notification provisions of the SORA constitute punishment for purposes of the Ex Post Facto clause) (citations omitted). Accordingly, to the extent that plaintiff is challenging any conditions of parole which were attributable to his having been determined to be subject to SORA, his allegations fail to state a claim that the imposition of the conditions violated the Ex Post Facto Clause or, by parity of reasoning, the

Eighth Amendment's proscription of cruel and unusual punishments.

**\*4** To the extent that the sex offender conditions of parole to which plaintiff objects were or may have been imposed not incident to SORA but rather as special conditions of release falling within the range of conditions that the Division of Parole customarily imposes, *see M.G. v. Travis,* 236 A.D.2d 163, 167–68, 667 N.Y.S.2d 11 (N.Y.App. Div. 1st Dep't 1997) (discussing discretionary authority of New York State Division of Parole to impose special conditions of release), the Court likewise determines that such conditions do not constitute cruel and unusual punishment within the meaning of the Eighth Amendment or the Ex Post Facto clause. *See Blake v. Fischer,* 09–CV–266, 2010 U.S. Dist. LEXIS 68224, at *29 (N.D.N.Y. May 5, 2010) (rejecting claim that placement in sex offender training programs or setting special conditions of parole amounted to an infliction of cruel and unusual punishment); *Robinson v. N.Y. State,* 09–CV– 455, 2010 U.S. Dist. LEXIS 144553, at *19–20 (rejecting Eighth Amendment objections to prerelease and special conditions of parole). Accordingly, the Court concludes that plaintiff's objections to the special conditions of parole to which he was subjected do not constitute punishment and thus fail to state a claim under the Eighth Amendment or the Ex Post Facto Clause.

*Due Process Claims*
"To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law." *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). There is no dispute in this case that the defendants acted under color of state law. "What remains is a two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Id.* at 351–52 (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460–61, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). The courts have also consistently held that a parolee has no constitutionally protected interest in being free from special conditions of release. *Bod die v. Chung,* 2011 U.S. Dist. LEXIS 48256, at *4–5, 2011 WL 1697965 (E.D.N.Y. May 4, 2011) (rejecting section 1983 challenge to special conditions); *Cooper v. Dennison,* 08–CV–6238, 2011 U.S. Dist. LEXIS 31221, at *32, 2011 WL 1118685 (W.D.N.Y. Mar. 24,

Case 5:18-cv-00501-GTS-TWD    Document 5    Filed 06/12/18    Page 64 of 79

2011) (quoting *Pena v. Travis,* 01–CV–8534 2002 U.S. Dist LEXIS 24709, 2002 WL 31886175 (S.D.N.Y. Dec. 27, 2002) ("Because the imposition of special conditions is left to the discretion of the Board of Parole and parole officers, plaintiff does not have a protected liberty interest in being free from special conditions.")); *see also* 9 N.Y. Comp.Codes R. & Regs. ("N.Y.C.R.R."), tit. 9, § 8003.3 ("A special condition may be imposed upon a releasee either prior or subsequent to release. The releasee shall be provided with a written copy of each special condition imposed. Each special condition may be imposed by a member or members of the Board of Parole, an authorized representative of the Division of Parole, or a parole officer."). In addition, "the Parole Board's discretionary imposition of special conditions is not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner. Review of conditions of parole are generally matters for state courts." *Walker v. Mattingly,* 09–CV–845–JTC, 2012 U.S. Dist. LEXIS 48547, at *18, 2012 WL 1160772 (W.D.N.Y. Apr. 5, 2012) (internal quotation and citation omitted). "However, where the condition is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation." *Robinson,* 2010 U.S. Dist. LEXIS 144553, at *23 (citing cases invalidating conditions of parole not reasonably related to parolee's offense).

**\*5** Accordingly, to the extent that plaintiff is alleging a protected liberty interest to be free from the special conditions of parole to which he objects, such an "interest" is not protected and is therefore not a sufficient basis for a Fourteenth Amendment due process violation. *See McCloud v. Kane,* 491 F.Supp.2d 312, 317 (E.D.N.Y.2007). However, liberally construing the complaint as the Court is obligated to do, the Court concludes that Maldonado's allegations concerning the restrictions and resulting hardships that the conditions imposed on him have had (see Docket No. 1, p. 10, ¶ 20 [enumerating restrictions upon plaintiff's relationship with his family allegedly caused by conditions of parole] ) "sufficiently allege[ ] a due process claim regarding the *substance* of the special conditions at issue here and the basis for their imposition." *Robinson,* 2010 U.S. Dist. LEXIS 144, at *26 (citing *Bod die v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 428–29 (S.D.N.Y.2003)) (emphasis in quotation added). Accordingly, at this early stage of the proceeding, the Court will allow plaintiff's due process claim against the defendants to go forward,

to the extent that it can be construed as objecting to the *substance, i.e.,* the nature and extent of, the conditions imposed upon him and their relation to his offenses.

### PLAINTIFF'S MOTIONS

*Preliminary Injunctive Relief*
Plaintiff requests preliminary injunctive relief with respect to the sexual offender-related conditions that have been included in his conditions of parole. (Docket No. 3). While acknowledging that he was incarcerated for a parole violation at the time he filed the motion (*Id.,* p. 2, ¶ 6), he maintains that a temporary restraining order is appropriate because he "risks being violated for one of the unconstitutional conditions imposed upon **him** once released." (*Id.,* p. 6, ¶ 32).

A party seeking a preliminary injunction must demonstrate "(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991)); *PSC, Inc. v. Reiss,* 111 F.Supp.2d 252, 254 (W.D.N.Y.2000). The " 'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." *N.A.A.C.P., Inc. v. Town East Haven,* 70 F.3d at 223.

Here, the Court determines that plaintiff satisfies neither prong of the preliminary injunction standard. As noted, plaintiff was incarcerated at the time he filed the motion seeking preliminary injunctive relief and he remains incarcerated, and therefore is not presently subject to the conditions of parole that he seeks to have the Court enjoin. Moreover, while the Court is allowing his due process claim against defendants to proceed, plaintiff has not, at this juncture, demonstrated sufficient likelihood of success on the merits of his complaint, or "sufficiently serious questions going to the merits" and a balance of hardships in his favor to warrant the granting of his request for a temporary restraining order. Plaintiff's motion for preliminary injunctive relief is therefore denied.

*Appointment of Counsel*

**\*6** Plaintiff has also moved for the appointment of counsel (Docket No. 4). A more fully developed record will be necessary before the Court can determine whether plaintiffs chances of success warrant the appointment of counsel. Therefore, plaintiffs motion is denied without prejudice to its renewal at such time as the existence of a potentially meritorious claim may be demonstrated. *See Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

### CONCLUSION AND ORDER

In accordance with the foregoing,

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* (Docket No. 2) is granted;

FURTHER, that plaintiff's motion for preliminary injunctive relief (Docket No. 3) is denied;

FURTHER, that plaintiff's motion for the appointment of counsel (Docket No. 4) is denied without prejudice;

FURTHER, that plaintiff's Ex Post Facto Clause claims against the defendants are dismissed with prejudice;

FURTHER, that plaintiff's Eighth Amendment claims against the defendants are dismissed with prejudice;

FURTHER, that plaintiff's Due Process claims against the defendants which seek to challenge the substance of the conditions of parole imposed upon plaintiff may go forward;

FURTHER, the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint and this Order upon the defendants without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the Complaint.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4461647

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 11507493
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David ROBINSON, Jr., Plaintiff,
v.
NEW YORK State; George Alexander, Chairman,
New York State Division of Parole; Michael Fork,
Bureau Chief; Ms. Benjamin, Senior Parole Officer;
Mr. Fernandez, Parole Officer, Defendants.

1:09-cv-0455 (GLS\RFT)
|
Signed 03/26/2010

**Attorneys and Law Firms**

David Robinson, Jr., 47 S. Montgomery Street, Valley
Stream, NY 11580, pro se.

FOR THE DEFENDANTS: HON. ANDREW M.
CUOMO, New York State Attorney General, OF
COUNSEL: C. HARRIS DAGUE, Assistant Attorney
General, Albany Office, The Capitol, Albany, NY 12224.

### MEMORANDUM-DECISION AND ORDER

Gary L. Sharpe, District Court Judge

### I. Introduction

**\*1** Pro se plaintiff David Robinson, Jr. brings this
action under 42 U.S.C. §§ 1983, 1985, 1986, 1987, and
1988, alleging that the imposition of parole conditions by
defendants, New York State, George Alexander, Michael
Fork, Ms. Benjamin, and Mr. Fernandez, violated his
Fifth, Sixth, Eighth, and Fourteenth Amendment rights.
(Compl., Dkt. No. 1.) Pending are defendants' motion for
judgment on the pleadings, (Dkt. No. 28), and Robinson's
motion for summary judgment, (Dkt. No. 36). For the
reasons that follow, defendants' motion is granted in part
and denied in part, and Robinson's summary judgment
motion is denied.

### II. Background

### A. Facts

On May 13, 2005, plaintiff David Robinson, Jr.
was sentenced to a five-year determinate term and a
concurrent one-year determinate term of incarceration
pursuant to a conviction for criminal possession of a
weapon in the second degree, N.Y. PENAL LAW §
265.03, and assault in the third degree, N.Y. PENAL
LAW § 120.00. (*See* Compl. ¶ 10, Dkt. No. 1.) Robinson
was additionally sentenced by the trial court to a five-
year period of post-release supervision. (*See id.*) On
October 24, 2008, Robinson was released on parole from
the custody of the New York State Department of
Correctional Services (DOCS). (*See* Pl. Ex., Dkt. No. 1:1.)

Upon his release, Robinson began serving his five-year
term of post-release supervision under the supervision
of the New York State Division of Parole. (*See id.*)
Robinson's release to parole supervision was subject to
various conditions requiring him to regularly report to
his parole officer, submit to home visits and searches,
abide by a curfew, undergo drug testing, stay away from
certain individuals, and refrain from owning, possessing,
or purchasing any deadly weapon. (*See id.*; *see also*
Compl. ¶ 13, Dkt. No. 1.) In acknowledgment of these
conditions, Robinson signed a Certificate of Release to
Parole Supervision on October 21, 2008. (*See* Pl. Ex., Dkt.
No. 1:1.)

On March 19, 2009, Robinson met with his parole officer,
defendant Jeffrey Fernandez of the Queens III Area
Office of the Division of Parole, who imposed additional
conditions on Robinson's release. (*See* Compl. ¶ 14, Dkt.
No. 1.) These "special conditions" required Robinson
to obtain Fernandez's permission before he could obtain
or acquire a driver's license, purchase, rent, or operate
a motor vehicle, or possess or operate a computer with
access to the internet. (*See id.*; *see also* Pl. Ex., Dkt. No.
1:1.) Robinson alleges that he initially refused to submit
to these conditions but was "accosted, threatened" by
Fernandez and defendant Ms. Benjamin, a senior parole
officer, who allegedly told Robinson that the conditions
were exclusive to Queens III parolees. (Compl. ¶ 14, Dkt.
No. 1.) Robinson ultimately agreed to these conditions
and signed a Special Conditions of Release to Parole
Supervision form. (*See* Pl. Ex., Dkt. No. 1:1.) During the
March 19 meeting, Fernandez also searched Robinson
and confiscated his New York State driver's license. (*See
id.*)

## B. Procedural History

**\*2** On September 19, 2008, Robinson filed a notice of request with defendant George Alexander, Chairman of the Division of Parole, and subsequently filed a grievance with the Division of Parole on March 26, 2009. (*See id.*) In both the notice and the grievance, Robinson claimed that his parole conditions were unconstitutionally and unlawfully imposed on him. Shortly thereafter, on April 16, 2009, Robinson commenced the present action under 42 U.S.C. §§ 1983, 1985, 1986, 1987, and 1988,[1] alleging that defendants, New York State, George Alexander, Michael Fork, Ms. Benjamin, and Mr. Fernandez, violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by imposing conditions on his release to parole supervision. (*See generally* Compl., Dkt. No. 1.) Specifically, Robinson claims that the defendants acted individually and in concert to impose and execute the release conditions in violation of: (1) the Double Jeopardy Clause of the Fifth Amendment; (2) the Confrontation Clause of the Sixth Amendment; (3) the Eighth Amendment right to be free from cruel and unusual punishment; (4) the Equal Protection Clause of the Fourteenth Amendment; and (5) substantive and procedural due process.[2] (*See id.* at ¶¶ 14, 26-28, 30, 35, 39-46.) Robinson additionally contends that the authority of the Division of Parole to impose conditions on parole derives from an unlawful delegation of power. (*See id.* at ¶¶ 15, 18-25, 30.) As a result, Robinson seeks compensatory and punitive damages, fees and costs, and several declarations and injunctions. (*See id.* at ¶¶ 38, 47-62.)

Defendants moved for judgment on the pleadings, (*see* Dkt. No. 28), to which Robinson cross-moved for summary judgment, (*see* Dkt. No. 36).

### III. Standards of Review

## A. Judgment on the Pleadings

In deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court applies the same standard as is used in deciding a motion to dismiss pursuant to Rule 12(b)(6). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted). Therefore, in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor." *Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted). As relevant to the current motion, "courts must construe pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest," especially where civil rights violations are alleged. *See Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks, citations, and italics omitted).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotation marks and citations omitted). Rather, the claim must be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ——U.S. ——, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Thus, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* but "does not impose a probability requirement," *Twombly,* 550 U.S. at 556.

## B. Summary Judgment

**\*3** Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986) (citing FED. R. CIV. P. 56(c)); *see also Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170

(2d Cir. 2006). In considering a motion for summary judgment, the court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor...." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). The initial burden is on the moving party to inform the court of the basis for its motion, and identify those portions of the pleadings, affidavits, and discovery and disclosure materials on file that it believes "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also SEC v. Kern*, 425 F.3d 143, 147 (2d Cir. 2005). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). And while the court remains obliged to read a pro se movant's supporting papers liberally and "interpret them to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

## IV. Discussion

### A. Parole Conditions: Background and Framework

Parole is an "established variation on imprisonment of convicted criminals," *Morrissey v. Brewer*, 408 U.S 471, 477 (1972), which is part of a " 'continuum' of state-imposed punishments," *Samson v. California*, 547 U.S. 843, 850 (2006) (citing *United States v. Knights*, 534 U.S. 112, 119 (2001)). "[T]he practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system." *Morrissey*, 408 U.S. at 477 (citation omitted). The twofold purpose behind parole is "to help individuals reintegrate into society as constructive individuals as soon as they are able ... [while] alleviat[ing] the costs to society of keeping an individual in prison." *Id.*

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence."

*Morrissey*, 408 U.S. at 477. To ensure the security and effectiveness of release, "those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms ... [which] restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen." *Id.* at 478. "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Id.* at 478-79.

In general, "the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998); *see also United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) ("[S]upervised release, ... in contrast to probation, is meted out in addition to, not in lieu of, incarceration." (internal quotation marks and citation omitted)). "[T]o insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Greenholtz*, 442 U.S. at 7-8. And while the restrictions placed on a parolee's liberty are not unqualified, parolees "have severely diminished [liberty] expectations...." *Samson*, 547 U.S. at 852; *see also United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) ("[P]arolees enjoy even less of the average citizen's absolute liberty than do probationers." (internal quotation marks and citation omitted)). Thus, a parolee "possess[es] fewer constitutional rights" than ordinary citizens. *United States v. Polito*, 583 F.2d 48, 54 (2d Cir. 1978). Typically, "[s]upervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive." *Morrissey*, 408 U.S. at 480. New York has established a comprehensive system for granting parole, according to which the Division of Parole is charged with the duty and discretion of setting conditions for an inmate on parole release. *See* N.Y. EXEC. LAW §§ 259-c, 259-g, 259-i(2); N.Y. PENAL LAW § 70.40; N.Y. COMP. CODES R. & REGS. tit. 9, §§ 8003.2, 8003.3. Under New York Executive Law, "[a]ny action by the board or by a hearing officer ... shall be deemed a judicial function and shall not be reviewable if done in accordance with law." N.Y. EXEC. LAW § 259-i(5); *see also Bell v. Oswald*, 305 F. Supp. 878, 879 (S.D.N.Y. 1969) ("[T]he Parole Board's action ... is not reviewable unless its

action contravenes statutory requirements or the New York State or United States Constitutions." (citations omitted)). Accordingly, the Board of Parole's authority "to impose special conditions upon the release of an inmate is not subject to the supervision of a court, but ... is, instead, 'under active *administrative* supervision of trained officials whose discretionary determination' is absolute and beyond review in the courts as long as no positive statutory requirement is violated." *M.G. v. Travis*, 236 A.D.2d 163, 167 (1st Dep't 1997) (quoting *Briguglio v. N.Y. State Bd. of Parole*, 24 N.Y.2d 21, 28 (N.Y. 1969)), *leave denied*, 91 N.Y. 2d 814 (N.Y. 1998). And pursuant to its rule-making authority, *see* N.Y. EXEC. LAW § 259-c(11), the Board of Parole authorizes parole officers, among others, to impose conditions on a parolee. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 8003.1(b) ("The releasee is expected to comply faithfully with all conditions specified in writing at the time of his release and with all other conditions and instructions ... given him by ... a parole officer."); *see also New York ex rel. Frisbie v. Hammock*, 112 A.D.2d 721, 721 (4th Dep't 1985). However, while the Board must set forth in writing its reasons for denying parole, *see* N.Y. EXEC. LAW § 259-i(2), there is no analog requiring that the Board or a parole officer provide the basis for imposing special conditions. Thus, the imposition of conditions —whether imposed prior to or subsequent to release, by the parole board or a field parole officer—must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses. *See Travis*, 236 A.D.2d at 167; *see also Gerena v. Rodriguez*, 192 A.D.2d 606, 607 (2d Dep't 1993) (reversing trial court's order directing Division of Parole to delete special conditions imposed on parolee because the parole office's determination was "made in the lawful exercise of official discretion" and the court "erred in substituting its view of the [parolee]'s case for that of the ... parole officer and his supervisor").

**B. Delegation of Judicial Authority**

**\*4** States are not constrained by Article III of the Constitution of the United States. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). Thus, while it is indisputable that under our federal constitutional system the authority to try offenses and impose punishment rests in the judiciary, *see Ex Parte United States*, 242 U.S. 27, 41 (1916), it is equally undeniable that the manner in which "power shall be distributed by a state among

its governmental organs is commonly, if not always, a question for the state itself," *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 612 (1937). Therefore, insofar as Robinson alleges an unconstitutional delegation of judicial authority under Article III of the United States Constitution, it is dismissed for failure to state a claim upon which relief can be granted.

In the alternative, any claims brought under the New York State Constitution are similarly subject to dismissal. The New York Court of Appeals has expressly recognized that the State Legislature—and not the courts—is empowered to determine whether and to what extent the Division of Parole has authority to, among other things, set conditions of a parolee's release. *See Briguglio*, 24 N.Y.2d at 28-29 (interpreting section 212 of the New York Correction Law, the applicable statute at the time, to find that the Board of Parole's discretion is absolute and beyond court review as long as it does not violate a positive statutory requirement); *see also Hines v. State Bd. of Parole*, 293 N.Y. 254, 257 (N.Y. 1944) (same). Thus, under the New York Constitution, the discretionary authority granted to the Division of Parole under N.Y. EXEC. LAW § 259-c and N.Y. PENAL LAW § 70.40 is not susceptible to an attack for improper delegation of authority. *See Travis*, 236 A.D.2d at 167-68; *see also Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000) ("It is undisputed that under New York law the Board of Parole is entitled to impose conditions on the conditional release of an inmate...."). Accordingly, Robinson's claims based on an unlawful delegation of judicial authority are dismissed in their entirety.

**C. Double Jeopardy**
Under the Double Jeopardy Clause of the Fifth Amendment, no person may be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V, cl. 2. The Supreme Court has interpreted this Clause to prevent "both successive punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 704 (1993). There is no question, however, that imposition of parole conditions—like the decision to deny or revoke parole—does not implicate the Double Jeopardy Clause because they are not additional to but rather are part of the original sentence. *See United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) ("Supervised release is not an enhancement of the original sentence."); *Kell v. U.S. Parole Comm'n*, 26 F.3d 1016, 1020 (10th Cir. 1994) ("Parole determinations

are not viewed as criminal punishment subject to the Double Jeopardy Clause." (citation omitted)); *cf. United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002) ("[A] violation of the conditions of supervised release does not constitute a new crime, and the revocation of supervised release is not properly considered a new punishment."); *New York v. Vasquez*, 89 N.Y.2d 521, 532-33 (N.Y. 1997) ("Disciplinary sanctions imposed upon [inmates] ... aimed at exclusively deterring conduct within the prison setting ... do not constitute criminal punishment triggering double jeopardy protections."). More importantly, because parole conditions are remedial in nature and are aimed at facilitating parolees' reintegration into society while protecting the community and deterring recidivism, they do not trigger double jeopardy concerns. *See McNeil*, 415 F.3d at 277 ("[T]he supervised release scheme serves purposes distinct from the goals of the original punishment."); *see also Travis*, 236 A.D.2d at 166-67 ("[T]he promulgation of conditions for inmates who have been released before the expiration of their sentences does not constitute a violation of [the Double Jeopardy Clause].... [I]t is not even implicated, since we are *not* dealing with punishment at all, but prevention and deterrence."); *Pettus*, 303 F.3d at 486 ("[Supervised release] is primarily intended to protect the public from further crimes by easing the re-entry of a convicted defendant into society...."). [3] Accordingly, any claim asserted by Robinson that is premised on the Fifth Amendment's prohibition of double punishment is dismissed.

**D. Sixth Amendment Rights**

**\*5** The Sixth Amendment applies to "all criminal prosecutions." U.S. CONST. IV, amend. VI, cl. 1. However, because determinations made regarding the imposition of parole conditions are not part of a criminal or quasi-criminal prosecution, Robinson's claim based on the Sixth Amendment, or the Confrontation Clause specifically, is dismissed. *See Morrissey*, 408 U.S. at 480; *see also McNeil*, 415 F.3d at 276-77; *United States v. Work*, 409 F.3d 484, 491 (1st Cir. 2005); *see, e.g., Cusamano v. Alexander*, No. 1:08-CV-781, 2009 WL 4724606, at \*5 (N.D.N.Y. Dec. 8, 2009); *Bell*, 305 F. Supp. at 879-80.

**E. Cruel and Unusual Punishment**

To maintain a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must make two showings: "one subjective, focusing on the defendant's

motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). Under the subjective prong, the plaintiff must allege facts demonstrating that the defendant's actions "had the necessary level of culpability, shown by actions characterized by 'wantonness,' in light of the particular circumstances surrounding the challenged conduct." *Id.* (internal quotation marks and citation omitted). Wantonness normally turns on whether the actions were taken in good faith or maliciously. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Second, the objective component "focuses on the harm done, in light of 'contemporary standards of decency.' " *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8). In other words, the alleged misconduct must be objectively "harmful enough" to establish a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

Robinson has failed to allege facts to satisfy either the subjective or objective elements of an Eighth Amendment claim. There is nothing in the complaint to suggest that the imposition of prerelease and special conditions by defendants, and the execution and enforcement thereof, may have been wanton, malicious, or in bad faith. Moreover, Robinson has not adequately alleged that by being required to report to the parole office, submit to drug testing, a curfew, and home visits, surrender his driver's license, and not operate an internet-accessible computer or a motor vehicle without permission, he suffered a harm sufficient to establish a constitutional violation. Therefore, because Robinson has failed to allege a "deprivation[ ] denying the minimal civilized measure of life's necessities ... sufficiently grave to form the basis of an Eighth Amendment violation," *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted), his claim for cruel and unusual punishment is dismissed.

**F. Due Process**

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). "Whether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss." *Morrissey*, 408 U.S. at 481 (internal quotation marks and citation omitted). This assessment turns on both the weight of the interest

and "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Id.* (citation omitted). If due process does apply, the court must determine the "precise nature of the government function involved as well as the private interest that has been affected by governmental action." *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961).

**\*6** A parolee has "diminished due process rights during supervised release." *United States v. Cabot*, 325 F.3d 384, 385 (2d Cir. 2003) (per curiam) (citations omitted). Conditional release, like supervised release under the federal framework, which operates under a similar set of legal standards, "requires a defendant to alter his or her behavior, but compared to imprisonment, the conditions ... impose a very minor infringement on a defendant's liberty." *United States v. Crea*, 968 F. Supp. 826, 829 (E.D.N.Y. 1997). For instance, a condition seeking to prevent a parolee from associating with other felons is not susceptible to a challenge under the First Amendment right of freedom of association even though it precludes otherwise legal activities. *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (citation omitted); *see also Birzon v. King*, 469 F.2d 1241, 1242-42 (2d Cir. 1972). Or where a parole officer performs a suspicionless search pursuant to a parole condition and in accordance with state requirements, the parolee has no legitimate expectation of privacy if he has submitted in writing to a clear and unambiguous search condition. *See Samson*, 547 U.S. at 852. However, where the condition is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation. *See, e.g.*, *United States v. Bello*, 310 F.3d 56, 61-62 (2d Cir. 2002) (finding condition prohibiting parolee from watching television not reasonably related to offense of using stolen credit cards where condition was designed to force "deprivation and self-reflection"); *United States v. Peterson*, 248 F.3d 79, 82-83 (2d Cir. 2001) (finding condition prohibiting parolee from owning a computer and accessing the internet not reasonably related to nature of offense of bank larceny and where criminal history of incest had no connection to computers or the internet); *United States v. Loy*, 237 F.3d 251, 267 (3d Cir. 2001) (vacating condition prohibiting parolee from possessing all forms of pornography on due process grounds for vagueness and for chilling his First Amendment rights); *United States v. Abrar*, 58 F.3d 43, 46 (2d Cir. 1995) (finding condition requiring repayment of personal debts

not reasonably related to nature of offense of falsifying immigration documents); *United States v. Prendergast*, 979 F.2d 1289, 1292-93 (8th Cir. 1992) (finding condition requiring parolee convicted of wire fraud to abstain from consuming alcohol not reasonably related to goals of rehabilitation and protection where no "evidence indicating that [parolee] suffer[ed] from alcoholism or that the use of alcohol in any way contributed to the commission of the offense"); *see also Peterson*, 248 F.3d at 83 ("Although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones."). Thus, courts must "carefully scrutinize unusual and severe conditions...." *United States v. Cutler*, 58 F.3d 825, 838 (2d Cir. 1995) (internal quotation marks and citation omitted).

Here, it is undeniable that the State has several compelling interests in imposing effective and adequate parole conditions, particularly based on the significant risk it assumes in releasing inmates on parole. The parolee has been found guilty of a crime against the people which "justifies imposing extensive restrictions on [his] liberty." *Morrissey*, 408 U.S. at 483. Moreover, there is no question that the State has the discretion to place conditions on parole release and that a parolee is not entitled to a hearing before the imposition of those conditions. *See Travis*, 236 A.D.2d at 167; *see also Menechino v. Oswald*, 430 F.2d 403, 409-10 (2d Cir. 1970). And all parties have a vital interest in preserving an apparatus that is both robust and efficient, for "[i]f parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole." *Greenholtz*, 1 U.S. at 13; *see also Zurak v. Regan*, 550 F.2d 86, 95 (2d Cir. 1977) ("Unlike a parole revocation proceeding, the process used in the conditional release program are not adversary in nature; rather, both the Board and the inmate have an interest in obtaining the inmate's release.").

Insofar as Robinson is alleging a protected liberty interest to be free from special conditions of parole, such an "interest" is not protected and is therefore not a sufficient basis for a Fourteenth Amendment due process violation. *See McCloud v. Kane*, 491 F. Supp.2d 312, 317 (E.D.N.Y. 2007). Nonetheless, giving Robinson's complaint a liberal construction, the court concludes that Robinson has sufficiently alleged a due process claim regarding the substance of the special conditions at issue here and the

basis for their imposition. *See, e.g., Boddie v. N.Y. State Div. of Parole*, 285 F. Supp.2d 421, 428-29 (S.D.N.Y. 2003). Accordingly, at this preliminary stage, the court denies defendants' motion for judgment on the pleadings as to Robinson's due process claim. And Robinson's motion for summary judgment on his due process claim is likewise denied.

### G. Equal Protection

"To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination ... [and] that the disparity in treatment cannot survive the appropriate level of scrutiny...." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Where a disparate classification neither implicates fundamental rights nor proceeds along suspect lines, the classification is afforded a "strong presumption of validity ... [which] cannot run afoul of the Equal Protections Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (citations omitted); *see also Romer v. Evans*, 517 U.S. 620, 631 (1996). "Parolees do not constitute a suspect or quasi-suspect class, requiring heightened scrutiny for the purpose of equal protection analysis." *Bratton v. N.Y. State Div. of Parole*, No. 05-CV-950, 2008 WL 1766744, at *11 (N.D.N.Y. April 14, 2008). Thus, in the context of parole, disparate treatment is evaluated under rational basis review, whether a plaintiff alleges that as a member of a subclass of parolees he has been treated disparately from the general class, *see Lee v. Governor of State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996); *Baker v. Cuomo*, 58 F.3d 814, 820 (2d Cir. 1995), *vacated on other grounds*, *Baker v. Pataki*, 85 F.3d 919 (2d Cir. 1996), or alleges that, as a "class of one," he has "been intentionally treated differently from others similarly situated," *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). The rational basis test is satisfied where:

> **\*7** [T]here is a plausible policy reason for the classification, the ... facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is

not so attenuated as to render the distinction arbitrary or irrational.

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (internal citations omitted). Consequently, the rational basis review test sets a "minimal threshold." *Collier v. Barnhart*, 473 F.3d 444, 449 (2d Cir. 2007).

Upon a liberal reading of the complaint, Robinson's allegations that as a parolee under the supervision of the Queens III Office he has been unreasonably treated differently from other similarly situated parolees, (*see* Compl. ¶ 14, Dkt. No. 1), are sufficient to withstand defendants' motion. Therefore, because Robinson has sufficiently alleged an equal protection violation, and because the court is not presently in a position to evaluate whether the special conditions imposed upon him are rationally related to his offenses, his criminal history, and the State's interests, the court denies defendants' motion for judgment on the pleadings of Robinson's equal protection claim. *Cf. Gordon v. Alexander*, 592 F. Supp.2d 644, 653 n.57 (S.D.N.Y. 2009) ("It is worth noting that an arbitrary or irrational decision to [impose conditions on] a particular category of [parolees]—such as those whose names begin with the letter S—would not survive even rational basis review under the Equal Protection Clause."). In addition, insofar as Robinson moves for summary judgment on his equal protection claim, that motion is denied.

### H. New York Executive Law

At this point in the proceedings, the court is unable to conclude that defendants acted in accordance with their statutory obligations under N.Y. EXEC. LAW §§ 259-c and 259-i to impose special conditions that were reasonably related to Robinson's past conduct and to do so in a manner that was not arbitrary and capricious. Therefore, defendants' motion for judgment on the pleadings is denied as to this claim.

### I. Conspiracy

To maintain an action for conspiracy under 42 U.S.C. § 1983, "a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (internal quotation marks and

citation omitted); *see also Duvall v. Sharp*, 905 F.2d 1188, 1189 (8th Cir. 1990) ("To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." (citation omitted)). "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).

Here, aside from a series of conclusory and general allegations that the defendants conspired to unconstitutionally impose parole conditions, Robinson has failed to plead any facts demonstrating that any of the defendants entered into an agreement or reached an understanding to willfully deprive Robinson of his constitutionally protected rights. *See, e.g., Duff v. Coughlin*, 794 F. Supp. 521, 525 (S.D.N.Y. 1992). Nor has Robinson alleged facts sufficient to enable the court to infer a conspiracy. Therefore, Robinson's claims of conspiracy are dismissed. For like reasons, Robinson's claims under 42 U.S.C. § 1985, and derivatively under § 1986, are dismissed. *See Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978); *see also Levy v. City of New York*, 726 F. Supp. 1446, 1454-55 (S.D.N.Y. 1989).

**J. Applicable Immunity Defenses**

**1. Eleventh Amendment Immunity**

**\*8** Liability pursuant to § 1983 attaches solely to municipalities, and not to the State or its individual officers.[4] Therefore, to the extent that Robinson asserts claims for damages under §§ 1983, 1985, 1986, 1987, and 1988 against New York State and the individual defendants in their official capacities, those claims are dismissed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006); *Gowins v. Greiner*, No. 01 Civ. 6933, 2002 WL 1770772, at \*3 (S.D.N.Y. July 31, 2002). However, because the Eleventh Amendment "does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law," defendants' motion is denied to the extent Robinson's claims for injunctive relief are asserted against defendants Alexander, Fork, Benjamin, and Fernandez. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003); *see also Ex parte Young*,

209 U.S. 123 (1908). Still, Robinson's claims against New York State are dismissed in their entirety. *See Santiago v. N.Y. State Dep't Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding *Ex parte Young* applies only to state official, not state or state agency).

**2. Qualified Immunity**

The defense of qualified immunity "strike[s] a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir. 1997) (internal quotation marks and citation omitted). Where an official engages in duties that are administrative in nature, he or she may be entitled to qualified immunity if the "conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stewart v. Lattanzi*, 832 F.2d 12, 13 (per curiam) (internal quotation marks and citation omitted); *see also Morrissey*, 408 U.S. at 478 (describing parole officers' duties as largely administrative). Even if an official violates a clearly established statutory or constitutional right, "qualified immunity is nonetheless a defense if the officers' unlawful actions were *objectively reasonable* as measured by reference to clearly established law, and the information the officers possessed." *Lee*, 136 F.3d at 101 (internal quotation marks and citations omitted). In evaluating whether a particular right was clearly established when the defendants acted, a court should consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable official would have understood that his or her acts were unlawful." *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991).

**\*9** Here, while the individual defendants may ultimately be entitled to qualified immunity on Robinson's remaining claims, the court is unable at this time to evaluate whether their actions were objectively reasonable under clearly established law.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for judgment on the pleadings (Dkt. No. 28) is **GRANTED** in part as follows:

1. Robinson's claims for unconstitutional delegation of judicial authority are **DISMISSED**;

2. Robinson's Fifth, Sixth, Eighth, Ninth, and Tenth Amendment claims are **DISMISSED**;

3. Robinson's claims under 18 U.S.C. §§ 241, 242, 371, and 1503, and N.Y. PENAL LAW § 105.15 are **DISMISSED**;

4. Robinson's claims of conspiracy under 42 U.S.C. §§ 1983 and 1985 are **DISMISSED**;

5. Robinson's claims under 42 U.S.C. §§ 1986 and 1987 are **DISMISSED**;

6. Robinson's claims against New York State are **DISMISSED** in their entirety; and

7. Robinson's claims for money damages against George Alexander, Michael Fork, Ms. Benjamin, and Mr. Fernandez in their official capacities are **DISMISSED**; and it is further

**ORDERED** that defendants' motion for judgment on the pleadings is **DENIED** in part as to Robinson's claims under the Fourteenth Amendment Equal Protection and Due Process Clauses and New York Executive Law; and it is further

**ORDERED** that Robinson's motion for summary judgment (Dkt. No. 36) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2010 WL 11507493

### Footnotes

1  Robinson also asserts claims based on alleged violations of the federal criminal code, 18 U.S.C. §§ 241, 242, 371, and 1503. However, "these claims are not cognizable, as federal criminal statutes do not provide private causes of action." *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009) (unpublished) (citation omitted). These claims, along with Robinson's claim under 42 U.S.C. § 1987, must therefore be dismissed. And because a private cause of action under N.Y. PENAL LAW § 105.15 was not intended to apply to the present circumstances, Robinson's claim under that section of the New York Penal Law is also dismissed. *See Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 325 (N.Y. 1983).

2  While Robinson additionally relies on the Ninth and Tenth Amendments of the United States Constitution, the court is at a loss as to what exactly his claims could be, due to the dearth of legal or factual support contained in his submissions. Accordingly, any claims Robinson alleges under the Ninth and Tenth Amendments are dismissed. *See Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth Amendment is not an independent source of individual rights...."); *Padavan v. United States*, 82 F.3d 23, 29 (2d Cir. 1996) ("The purpose of the Tenth Amendment is to limit Congress from usurping power that was reserved to the states.").

3  *Cf. United States v. Hernandez-Fundora*, 58 F.3d 802, 806 (2d Cir. 1995) ("Punitive interests and remedial interests ... are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations.... [T]he mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes 'punishment' for double jeopardy purposes.").

4  While the court has already addressed and dismissed Robinson's state law claims, an additional basis for dismissal exists under New York State's sovereign immunity, which bars state constitutional claims against the state, its agencies, or against its employees in their official capacity, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105-06 (1984) (finding sovereign immunity bars federal courts from adjudicating state claims against the state), *overruled in part on other grounds*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988); *Diamond v. Pataki*, No. 03 Civ. 4642, 2007 WL 485962, at *7 (S.D.N.Y. Feb. 14, 2007). As such, any remaining state constitutional claims are dismissed.

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3110033
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Dwayne SINGLETON, Plaintiff,
v.
Jane DOE, Housing Works Psychologist,
Parole Officer Glenda Bubb, and Parole
Supervisor (Officer) Denise Granum, Defendants.

No. 14–CV–0303 (MKB).
|
Signed July 7, 2014.

**Attorneys and Law Firms**

Dwayne Singleton, Comstock, NY, pro se.

*MEMORANDUM & ORDER*

MARGO K. BRODIE, District Judge.

**\*1** Plaintiff Dwayne Singleton, proceeding *pro se* and currently incarcerated at Great Meadows Correctional Facility, brings this action against Defendant Jane Doe, a Housing Works Psychologist, and parole officers, Defendants Glenda Bubb and Denise Granum pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Jane Doe made a "false sex allegation" against him, and Bubb and Granum imposed new conditions of his parole as a result of the false accusation and confiscated his cellular telephone. Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons set forth below, Plaintiff's Section 1983 claim against Jane Doe is dismissed, and Plaintiff is granted thirty (30) days leave from the date of this Memorandum and Order to file an amended complaint against Jane Doe. Plaintiff's Section 1983 claims against Bubb and Granum shall proceed.

**I. Background**

For the purposes of this decision, the allegations in the Complaint are assumed to be true. According to Plaintiff, on or about December 2010, while on parole, he was forced "to take a sex offender program and had to endure further restrictions as well" when Jane Doe, a psychologist at Housing Works in Manhattan, accused him of "touching her feet[ ] in a sexual

manner" during a "mandatory court-ordered" therapeutic session. (Compl.4.) Parole officers Granum and Bubb "confiscated [his] cell phone" and parole officer Bubb "was very strict [with him]." (*Id.*) Plaintiff complained of this conduct to Bubb and was "forced to take additional therapeutic programs for a false charge and ... was penalized." (*Id.*) Plaintiff seeks compensatory damages and injunctive relief against Defendants. [1]

**II. Discussion**

**a. Standard of Review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and "dismiss the complaint or any portion of the complaint," if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C.1915A; *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). Similarly, the court is required to dismiss *sua sponte* an *in forma pauperis* action, if the court determines that it is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas,* 480 F.3d at 639.

**b. Defendant Jane Doe**

**\*2** Plaintiff has failed to state a claim under Section 1983 against Jane Doe. In order to sustain a claim for relief under Section 1983, a plaintiff must allege

(1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mt. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). The actions of a private entity may be deemed state action only if "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 52 (citation and internal quotation marks omitted); *see also Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir.2013) (same). "Whether such a 'close nexus' exists ... depends on whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [action] must in law be deemed to be that of the state." *Sullivan,* 526 U.S. at 52 (citation and internal quotation marks omitted). State action is satisfied if the private actor was a "willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

Here, Plaintiff does not specify which rights or privileges were violated by Jane Doe's conduct. It appears that Plaintiff may be trying to state a § 1983 claim for deprivation of liberty and/or due process based on the theory that Plaintiff was "ordered" to endure certain restrictions of his parole due to a false accusation, and was subsequently "penalized" when he complained of the conduct. (Compl.2–4.) *See Maldonado v. Fischer,* No. 11–CV–1091, 2012 WL 4461647, at *5 (W.D.N.Y. Sept.24, 2012) ("[plaintiff's] allegations concerning the [parole] restrictions and resulting hardships ... 'sufficiently allege[ ] a due process claim' "); *Taylor v. Sullivan,* 980 F.Supp. 697, 705 (S.D.N.Y.1997) ("[A]n intentionally false report, directly causing the loss of liberty, can state a cause of action for deprivation of a parolee's constitutional rights."). [2] However, Plaintiff fails to plead any facts indicating that Jane Doe, a private psychologist at Housing Works, was acting under the color of state law when she allegedly falsely accused him of "touching

her feet[ ] in a sexual manner" causing Plaintiff to have to participate in a sex offender program and endure other restrictions of his parole. (Compl.4.) A mere allegation that a private party provided information to the police, even if false, is insufficient to state a claim under § 1983. *See Stewart v. Victoria's Secret Stores, LLC,* 851 F.Supp.2d 442, 446 (E.D.N.Y.2012) ("A private party supplying information or seeking police assistance 'does not become a state actor ... unless the police officers are improperly influenced or controlled by the private party.' " (alteration in original) (citations omitted)); *Baez v. JetBlue Airways,* 745 F.Supp.2d 214, 221 (E.D.N.Y.2010) (holding that one incident of providing false information was not sufficient to make a private party an actor under the color of law); *Castro v. Cnty. of Nassau,* 739 F.Supp.2d 153, 173 (E.D.N.Y.2010) ("[T]he provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983."). Without more factual allegations indicating that Jane Doe was acting under color of state law, Plaintiff fails to state a valid claim pursuant to § 1983. [3] In light of Plaintiff's *pro se* status, the Court grants him leave to amend the Complaint to allege facts, if possible, to show that Jane Doe acted under color of state law when she allegedly made a false accusation against Plaintiff.

### c. Defendants Bubb and Granum

**\*3** Plaintiff claims that as a result of Jane Doe's false accusation, Bubb "ordered [him] to take a sex offender program and ... to endure further restrictions [of his parole]." (Compl.4.) Plaintiff also states that Bubb and Granum were "very strict," "rude," "unprofessional" and "denied [him] the right to ride the subway." (Compl.4.) The Court notes that "[a] parolee has no constitutionally protected interest in being free of a special condition of parole." *Boddie v. Chung,* No. 09–CV–4789, 2011 WL 1697965, at *1 (E.D.N.Y. May 4, 2011) (citations omitted); *see also* N.Y. Comp.Codes. R. & Regs. tit. 9, § 8003.3. ("A special condition may be imposed upon a [parolee] either prior or subsequent to release," memorialized by "a written copy of each special condition imposed."). Moreover, review of parole conditions are generally reserved to the state courts, *Boddie,* 2011 WL 1697965, at *2 (citations omitted), and "parole conditions are not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary

and capricious manner," *id.* (citations omitted). "[T]he imposition of conditions—whether imposed prior to or subsequent to release, by the parole board or a field parole officer—must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses." *Robinson v. New York,* No. 09–CV–0455, 2010 U.S. Dist. LEXIS 144553, at *14 (N.D.N.Y. Mar. 26, 2010).

However, while Plaintiff does not have a protected liberty interest to be free from special conditions of parole, he may have a viable due process claim pursuant to § 1983 based on the substance of the conditions and/or the basis for imposing such conditions. *See Maldonado v. Fischer,* 2012 WL 4461647, at *5 (finding a due process claim under Section 1983 where allegations relate to "the *substance* of the special conditions at issue ... and the basis for their imposition") (citing *Robinson,* 2010 U.S. Dist. LEXIS 144553, at *26).

A liberal interpretation of the Complaint indicates that Plaintiff's § 1983 claims against Bubb and Granum are based on the allegations that, as a result of a false accusation of sexual misconduct made against Plaintiff, Bubb "forced" him to participate in a sexual offender program and both Bubb and Granum "denied [him] the right to ride the subway." (Compl.4.) These allegations against Bubb and Granum challenge the substance of the parole conditions placed on Plaintiff and accordingly, are sufficient, at this juncture, to state a claim for deprivation of due process in violation of § 1983. *Maldonado,* 2012 WL 4461647, at *5 (Plaintiff's "allegations concerning the restrictions and resulting hardships that the [parole] conditions imposed on him have had ... 'sufficiently allege [ ] a due process claim regarding the substance of the special conditions at issue ... and the basis for their imposition.' "); *Robinson,* 2010 U.S. Dist. LEXIS 144553, at *25–26 (same). [4]

  *4 Plaintiff also claims that Bubb and Granum confiscated his cellular telephone and refused to return it to him. (Compl.4.) Plaintiff can also proceed on this claim as it is unclear whether Plaintiff, as a parolee and not a detained prisoner, had an adequate post-deprivation

remedy for the loss of his property available to him. *See Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").

**III. Conclusion**

For the reasons set forth above, Plaintiff is granted leave to amend the Complaint to replead his claim against Jane Doe in accordance with this Memorandum and Order. The amended complaint must be filed within 30 days of the date of this Memorandum and Order, or the claim against Jane Doe will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). Plaintiff is advised that if he files an amended complaint, it will completely replace the original Complaint. The amended complaint must be captioned "Amended Complaint" and shall bear the same docket number as this Memorandum and Order. No summons shall issue as to Jane Doe.

Plaintiff's claims against Bubb and Granum shall proceed. The Clerk of Court shall issue a summons for Bubb and Granum and the United States Marshal Service is directed to serve the summons, Complaint and a copy of this Memorandum and Order upon Bubb and Granum without prepayment of fees. The Clerk of Court shall mail a courtesy copy of the same papers to the Attorney General for the State of New York. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED:

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3110033

Footnotes

1    Over two years ago, Plaintiff sued several individuals, including Bubb and Granum alleging, among other claims, false imprisonment. *See Singleton v. Davis,* No. 11–CV–5709 (E.D.N.Y. Nov.17, 2011). The allegations in that case were based on much of the same allegations made in the instant Complaint, including that "Parole Officer Bubb ... confiscated [Plaintiff's] cell phone" and Bubb and Granum imposed "harsh treatment" after a "false allegation" was made against Plaintiff. *See* Sec. Am. Com pl. 20–21, No. 11–CV–5709, *Singleton v. Davis* (E.D.N.Y.2011). The Honorable John Gleeson dismissed Plaintiff's claims against Bubb and Granum without prejudice, (No. 11–CV–5709, Docket Entry No. 4), and Plaintiff never filed an amended complaint against Bubb and Granum, although he filed an amended complaint against others, (No. 11–CV–5709, Docket Entry No. 9). The prior action was reassigned to this Court on March 27, 2012, and on October 11, 2012, the parties filed a stipulation of settlement, discontinuing the action. (No. 11–CV–5709, Docket Entry No. 29.)

2    The holding in *Taylor v. Sullivan* was expressly limited to a *"parolee's* liberty interest in not having his conditional release unfairly revoked." *Taylor,* 980 F.Supp. at 705, n. 13. It did not directly address whether a parolee has a liberty interest in parole restrictions imposed as a result of a false accusation.

3    The Court is also not aware of any legal support for the notion that a private psychologist acts under the color of state law when treating a parolee during a court-ordered therapeutic session. It is well established that other private professionals such as attorneys do not become state actors for the purposes of § 1983 liability "merely by virtue of their position[s]," even when appointed by the court. *Delarosa v. Serita,* No. 14–CV–737, 2014 WL 1672557, at *3 (E.D.N.Y. Apr. 28, 2014) (collecting cases regarding private attorneys, public defenders and court-appointed counsel); *Garcia v. City of New York,* No. 12–CV–4655, 2013 WL 153757, at *3 (E.D.N.Y. Jan. 14, 2013) ("It is well established that court-appointed attorneys, including attorneys associated with a legal aid organization, do not act under color of state law when performing traditional functions of counsel."); *Elmasri v. England,* 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) (finding that a court appointed legal guardian was not a state actor for the purposes of § 1983). Rather, a plaintiff must allege sufficient facts demonstrating a close nexus between the private entity or individual and the State such that the Court can infer that the private entity or individual was acting under the color of state law. *See Sullivan,* 526 U.S. at 52.

4    In *Maldonado,* the plaintiff, seeking to proceed *in forma pauperis,* brought an action for violations of § 1983, the Ex Post Facto Clause of the United States Constitution, and the Eight Amendment to the Constitution. Plaintiff alleged that upon his release on parole, he was given "special conditions" of his parole that are typically given to sex offenders. *Maldonado v. Fischer,* No. 11–CV–1091, 2012 WL 4461647, at *1–2 (W.D.N.Y. Sept.24, 2012). Plaintiff claimed that these conditions were imposed on him because of a prior conviction for sexual misconduct and not related to the conviction for which he was on parole. *Id.* at *2. The Court found that while the plaintiff had no protected liberty interest "to be free from the special conditions of parole," it would allow the plaintiff's due process claim to go forward "to the extent it can be construed as objecting to the *substance, i.e.,* the nature and extent of, the conditions imposed upon him and their relation to his offenses." *Id.* at *5.

Similarly, in *Robinson,* the plaintiff objected to the imposition of new conditions placed on his parole, arguing that they violated, *inter alia,* § 1983. *Robinson v. New York,* No. 09–CV0455, 2010 U.S. Dist. LEXIS 144553, at *1–3 (N.D.N.Y. Mar. 26, 2010). The court denied the defendant's motion for judgment on the pleadings as to the plaintiff's § 1983 due process claim, finding that the plaintiff "sufficiently alleged a due process claim regarding the substance of the special conditions at issue ... and the basis for their imposition." *Id.* at *25–26.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.