UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDDIE D. ENNIS,

                    Plaintiff,

v.                                                      5:18-CV-0501
                                                        (GTS/TWD)
ANTHONY J. ANNUCCI; B. WHITE;
TIMOTHY PETTIT; R. KELLAR;
DAVID KNAPP; and MARYANN
DELANEY,

                    Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

EDDIE D. ENNIS
   Plaintiff, *Pro Se*
114 Franklin Street, Apt. 208
Watertown, New York 13601

LETITIA A. JAMES                                        DAVID A. ROSENBERG, ESQ.
Attorney General for the State of New York              Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently pending before the Court, in this *pro se* civil rights action filed by Eddie D.

Ennis ("Plaintiff") against Anthony J. Annucci, B. White, Timothy Pettit, R. Kellar, David

Knapp, and Maryann Delaney ("Defendants"), is Defendants' motion to dismiss Plaintiff's

Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21.) For the reasons set

forth below, Defendants' motion is granted in part and denied in part.

## I.       RELEVANT BACKGROUND

### A.       Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges that Defendants violated his right to due process under the Fourteenth Amendment, and his right to free speech under the First Amendment. (*See generally* Dkt. No. 6 [Pl.'s Compl.].) More specifically, Plaintiff alleges that Defendants imposed specific conditions on his parole that improperly prohibit him from (1) engaging in any contact with any children under eighteen years of age, including his twelve-year-old son, unless he obtains prior approval from his parole officer and the contact is supervised by a responsible adult who is twenty-one years of age or older (the "Family Contact Condition"), and (2) owning or using a computer or other electronic device with the ability to access the internet without obtaining prior permission from his parole officer (the "Computer Condition"). (*Id.*)

Based on these factual allegations, Plaintiff's Amended Complaint asserts the following two claims: (1) a claim that Defendants violated his right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983, by imposing and enforcing the Family Contact Condition, which improperly interfered with his right to maintain a relationship with his child ("First Claim"); and (2) a claim that Defendants violated his right to free speech under the First Amendment and 42 U.S.C. § 1983, by imposing and enforcing the Computer Condition ("Second Claim"). (*Id.*) As relief, the Amended Complaint requests monetary damages and a permanent injunction. (*Id.*) Familiarity with the remaining factual allegations supporting these two claims in the Amended Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

**B.      Parties' Briefing on Defendants' Motion to Dismiss**

Generally, in support of their motion to dismiss, Defendants assert the following three arguments: (1) the Amended Complaint fails to allege facts plausibly suggesting that (a) Defendants Kellar and White were personally involved in the imposition or enforcement of the Family Contact Condition or the Computer Condition, and (b) Defendant Knapp was personally involved in the imposition or enforcement of the Family Contact Condition; (2) to the extent that Plaintiff seeks monetary damages, Defendants are entitled to qualified immunity as a matter of law based on Plaintiff's own factual allegations because the due process rights of a discretionary sex offender on parole are not clearly defined; and (3) Plaintiff's request for injunctive relief should be dismissed because (a) there is an adequate remedy to challenge the conditions of his parole through a N.Y. C.P.L.R. Article 78 proceeding, and, (b) in any event, such claims are inappropriate against Defendants Pettit, Kellar, and White because there are no factual allegations plausibly suggesting that those Defendants will have any role in the future enforcement of Plaintiff's parole.  (Dkt. No. 21, Attach. 1 [Defs.' Mem. of Law].)

Generally, in opposition to Defendants' motion to dismiss, Plaintiff asserts the following three arguments: (1) the Amended Complaint alleges facts plausibly suggesting (a) the personal involvement of Defendants Kellar and White in the imposition or enforcement of the conditions of Plaintiff's parole because both Defendants required Plaintiff to accept the Family Contact Condition and Computer Condition or risk violating his parole, and (b) the personal involvement of Defendant Knapp in the imposition or enforcement of the Family Contact Condition because Defendant Knapp provided a form to Plaintiff to request to reside with his family and Plaintiff was informed that his request to reside with his wife and children would be discussed with

Defendant Knapp; (2) the doctrine of qualified immunity is inapplicable here because Defendants were personally involved in imposing and/or enforcing the Family Contact Condition and Computer Condition; (3) there is no adequate remedy under New York law for Defendants' violations of Plaintiff's rights because Plaintiff's claims are constitutional in nature and thus raise a "Federal question." (Dkt. No. 24 [Pl.'s Opp'n Mem. of Law].)[1]

Generally, in their reply letter,[2] Defendants assert three arguments: (1) the Amended Complaint does not allege any facts that plausibly suggest that (a) Defendants Kellar or White were personally involved in the imposition or enforcement of the Family Contact Condition or the Computer Condition merely by meeting with him to sign documents accepting the terms of his parole, and (b) Defendant Knapp was personally involved in the imposition or enforcement of the Family Contact Condition because (i) there is no allegation that Plaintiff discussed his request to reside with his wife and children with Defendant Knapp, (ii) there is no allegation that this request was actually brought to Defendant Knapp's attention, and (iii) there is no supervisory liability based merely on the fact that Defendant Knapp is a "Senior Parole Officer"; (2) Plaintiff did not address Defendants' argument that they are immune from liability for monetary damages because the process due to a discretionary sex offender before he is subject to special conditions of parole is not clearly established; and (3) Plaintiff does not dispute that he could have filed an Article 78 proceeding in New York State courts to remedy the allegedly unconstitutional terms of his parole. (Dkt. No. 25 [Defs.' Reply Letter].)

_____

[1]     Plaintiff concedes that injunctive relief is not an appropriate remedy as to Defendants Pettit, Kellar, and White. (Dkt. No. 24, at 10.)

[2]     In the future, counsel is cautioned to comply with Local Rule 7.1(a)(1), which provides that "[a]ll memoranda of law shall contain a table of contents."

**II.    GOVERNING LEGAL STANDARD FOR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[3]

---

[3]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, complaints by *pro se* parties are accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

### III. ANALYSIS

#### A. Plaintiff's First Claim

##### 1. Whether the Amended Complaint Alleges Facts Plausibly Suggesting the Personal Involvement of Defendants Kellar, White, and Knapp

After carefully considering the matter, the Court grants Defendants' motion to dismiss the First Claim against Defendants Kellar, White, and Knapp because the Amended Complaint has failed to allege facts that plausibly suggest these Defendants' personal involvement in the imposition or enforcement of the Family Contact Condition for the reasons stated in Defendants' memoranda of law. (Dkt. No. 21, Attach. 1 [Defs.' Mem. of Law]; Dkt. No. 25 [Defs.' Reply Letter].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' reasons.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 [2d Cir. 1986]). "'Direct participation' means 'personal participation by one who has knowledge of the facts that rendered the conduct illegal.'" *Doe v. Annucci*, 14-CV-2953, 2015 WL 4393012, at *19 (S.D.N.Y. July 15, 2015) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 [2d Cir. 2001]). For example, the personal involvement requirement is satisfied where a parole officer is alleged to have "actually enforced" a parole condition by arresting the parolee for a violation. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). However, continuing special conditions already in place without altering the rules or conditions of parole, does not satisfy the personal involvement requirement. *Farrell*, 449 F.3d at 484.

8

### a. Defendant Kellar

The Amended Complaint alleges that, prior to his release from prison, Plaintiff met with Defendant Kellar "on May 14, 2017, who told me that if i [sic] did not sign my conditions of release . . . that I would receive a 12-18 page parole violation charge.  Needless to say, I signed the paper."  (Dkt. No. 6, at 4.)

There is no allegation that Defendant Kellar made any recommendations about the terms of Plaintiff's special conditions, participated in a meeting during which the decision about Plaintiff's special conditions was made, enforced the special conditions, or otherwise contributed to the alleged constitutional violations.  *See Annucci*, 2015 WL 4393012, at *20.  Instead, the Amended Complaint merely alleges that Defendant Kellar met with Plaintiff to obtain his signature on the parole conditions.  (Dkt. No. 6, at 4.)  The Amended Complaint alleges no facts plausibly suggesting that Defendant Kellar had any involvement or input regarding the terms and conditions of Plaintiff's parole.  (*See generally id.*)  In addition, the Amended Complaint does not allege any facts plausibly suggesting that Defendant Kellar enforced the Family Contact Condition.  (*Id.* at 28.)

Therefore, the Amended Complaint does not sufficiently allege that Defendant Kellar was personally involved in the alleged constitutional violations.  *Compare Barnes v. Ross*, 926 F. Supp. 2d 499, 508 (S.D.N.Y. 2013) (finding personal involvement where defendant "was aware of, and contributed to" the allegedly unconstitutional treatment) *and Pugh v. Goord*, 571 F. Supp. 2d 477, 514-15 (S.D.N.Y.2008) (finding personal involvement where defendant "was consulted" and "espoused views" that led to the creation of the allegedly unconstitutional policy), *with Vogelfang v. Capra*, 889 F. Supp. 2d 489, 503 (S.D.N.Y.2012) (finding no personal

involvement where defendants were not "involve[d] in any event which constituted a violation of [plaintiff's] rights") *and Odom v. Calero*, 06-CV-15527, 2008 WL 2735868, at *6-7 (S.D.N.Y. July 10, 2008) (finding no personal involvement where defendant reviewed an administrative determination).

As a result, Plaintiff's First Claim against is dismissed as against Defendant Kellar.

### b. Defendant White

The Amended Complaint alleges that on March 16, 2017, Plaintiff "reported to my parole office at 317 Washington Street in Watertown, NY where I met with Parole Officer B. White (my then parole officer, Timothy Pettit, wasn't there) who required me to agree and sign Special Conditions of Release to my Parole Supervision . . . as part of my parole." (Dkt. No. 6, at 4.)

Similarly to Defendant Kellar, there is no allegation that Defendant White made any recommendations about the terms of Plaintiff's special conditions, participated in a meeting during which the decision about Plaintiff's special conditions was made, enforced the special conditions, or otherwise contributed to the alleged constitutional violations. *See Annucci*, 2015 WL 4393012, at *20. Instead, the Amended Complaint merely alleges that Defendant White met with Plaintiff in the absence of Plaintiff's assigned parole officer. (Dkt. No. 6, at 4.) The Amended Complaint alleges no facts plausibly suggesting that Defendant White had any involvement or input regarding the terms and conditions of Plaintiff's parole. (*See generally id.*) In addition, the Amended Complaint does not allege any facts plausibly suggesting that Defendant White enforced the Family Contact Condition. (*Id.*)

Therefore, the Amended Complaint does not sufficiently allege that Defendant White was personally involved in the alleged constitutional violations. *Compare Barnes*, 926 F. Supp.

2d at 508 (finding personal involvement where defendant "was aware of, and contributed to" the allegedly unconstitutional treatment) *and Pugh*, 571 F. Supp. 2d at 514-15 (finding personal involvement where defendant "was consulted" and "espoused views" that led to the creation of the allegedly unconstitutional policy) *with Vogelfang*, 889 F. Supp. 2d at 503 (finding no personal involvement where defendants were not "involve[d] in any event which constituted a violation of [plaintiff's] rights"), *and Odom*, 2008 WL 2735868, at *6-7 (finding no personal involvement where defendant reviewed an administrative determination).

As a result, Plaintiff's First Claim is dismissed as against Defendant White.

### c.    Defendant Knapp

Generally, the fact that a defendant supervised or managed officials who may have violated the plaintiff's rights does not establish he or she was personally involved in the violation. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Here, the Amended Complaint does not allege any facts that plausibly suggest Defendant Knapp was personally involved in imposing or enforcing the Family Contact Condition. (*See generally* Dkt. No. 6.) The only factual allegation regarding Defendant Knapp is that Plaintiff spoke with Defendant Knapp "about having a laptop in my apartment (with internet) for the purposes of continuing education, business, and other legal activity (legal research) that parole could monitor through the use of special software. They were unwilling to agree to even this." (Dkt. No. 6, at 6.)[4] While relevant for the Second Claim, this allegation does not relate to the

---

[4]    In his opposition memorandum of law, Plaintiff asserts additional allegations regarding Defendant Knapp's involvement in enforcing the Family Contact Condition. (Dkt. No. 24, at 7.) More specifically, Plaintiff asserts that he "was informed that his request [to reside with his wife and children] would be discussed with Defendant Knapp. Defendant Delaney and Defendant Knapp even presented me with parole documentation to request to reside with

imposition or enforcement of the Family Contact Condition.

As a result, Plaintiff's First Claim is dismissed as against Defendant Knapp.

> **2.     Whether Plaintiff's First Claim Should Be Dismissed to the Extent It Seeks Monetary Damages Based on the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court denies Defendants' motion to dismiss

Plaintiff's First Claim for monetary damages based on the doctrine of qualified immunity.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless

defendant's alleged conduct, when committed, violated 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781

F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a

result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1)

"whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional

---

family." (Dkt. No. 24, at 7.)  In addition, Plaintiff asserts that his wife provided letters "expressing her strong desire to have me home.  It was 'misplaced' by parole she was told, so she sent Defendant Pettit another that should still be in my file.  To require a third letter from my wife, as Defendant Delaney and Knapp are currently, is frustrating to say the least." (*Id.*) However, the Court notes that it need not, and does not, consider these additional factual allegations submitted by Plaintiff in opposition to the pending motion as effectively amended his pleading.  The Court construes *Gill v. Mooney*, which considered an affidavit submitted in opposition to a motion to dismiss by a *pro se* plaintiff, as not controlling here, where Plaintiff has already amended his complaint once.  *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987); *see, e.g., Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on de novo review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.") (collecting cases), *aff'd,* 357 F. App'x 388 (2d Cir. 2009); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that denial of leave to amend is not abuse of discretion where movant has repeatedly failed to cure deficiencies in pleading).  In any event, the additional factual allegations contained in Dkt. No. 24 cannot fairly be said to be "consistent" with the allegations contained in Dkt. No. 6 (which, despite being 34 pages long, is conspicuously absent of any of these factual allegations).

violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

As the Second Circuit noted in *Birzon v. King*, "when a convict is conditionally released on parole, the Government retains a substantial interest in insuring [sic] that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee." 469 F.2d 1241, 1243 (2d Cir. 1972). Therefore, "[a]lthough a parolee should enjoy greater freedom in many respects than a prisoner, . . . [the] Government may . . . impose restrictions on the rights of the parolee that are reasonably and necessarily related to the interests that the Government retains after his conditional release." *Birzon*, 469 F.2d at 1243.

The Supreme Court has treated the right to familial association as "a fundamental element of personal liberty." *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618 [1984]); *see also United States v. Meyers*, 426 F.3d 117, 125 (2d Cir. 2005) (citing *Wilkinson v. Russell*, 182 F.3d 89, 103-04 [2d Cir. 1999] ["It is well established that a parent's interest in maintaining a relationship with his or her child is protected by the Due Process Clause of the Fourteenth Amendment"]); *United States v. McGeoch*, 546 F. App'x 44, 48 (2d Cir. 2013) ("A condition of supervised release that prevents a father from seeing his children outside the presence of an approved monitor is a severe one subject to careful scrutiny"). However, the degree of "protection varies in accordance with the

nature of the parent-child bond." *Yunus v. Robinson,* 17-CV-5839, 2018 WL 3455408, at *34

(S.D.N.Y. June 29, 2018); *see also Meyers*, 426 F.3d at 128 (remanding for fact-finding where

the supervised releasee had never been the child's custodian and presented "no evidence" in

support of his claim that he played "an active role in the life of his son" before he was

incarcerated); *Doe v. Lima*, 270 F. Supp. 3d 684, 701-03 (S.D.N.Y. 2017) (applying strict

scrutiny where state police officers expelled sex offender parolee from his marital home after his

wife gave birth to a son, without conducting any individualized inquiry into whether parolee was

a danger to the infant).

In *Singleton v. Doe*, the court considered special conditions placed on a parolee who was

designated a "discretionary sex offender." *Singleton v. Doe*, 210 F. Supp. 3d 359, 371-72

(E.D.N.Y. 2016).  There, unlike here, the plaintiff had not been convicted of a crime that was

sexual in nature. *Singleton*, 210 F. Supp. 3d at 362-63.[5]  Instead, based on the plaintiff's conduct

while incarcerated, he was designated a "discretionary sex offender" and, as a condition of his

release, he agreed to comply with specific sex offender conditions imposed by his parole officer.

*Id.*  The district court held that "neither the Supreme Court nor the Second Circuit has clearly

established the process that is due to a discretionary sex offender before he is subject to certain

special conditions of parole." *Id.* at 374.  As a result, the doctrine of qualified immunity shielded

the parole officers from monetary damages.

Unlike the plaintiff in *Singleton*, Plaintiff is not a *discretionary* sex offender.  In addition,

the issues raised by Plaintiff are not what process is due to him as a discretionary sex offender

---

[5]      It is not clear to the Court exactly what crime Plaintiff was convicted of that
resulted in his parole.  (*See generally* Dkt. No. 6.)  However, it is apparent that Plaintiff's
conviction was sexual in nature.  (Dkt. No. 6, at 8-11.)

before any special conditions of parole may be imposed. Instead, Plaintiff's concerns are with the specific (1) Family Contact Condition and (2) Computer Condition. (Dkt. No. 6.)

The Second Circuit has clearly established that a parent's interest in maintaining a relationship with his child is protected by the Due Process Clause of the Fourteenth Amendment. *Myers*, 426 F.3d at 126. Plaintiff has alleged facts plausibly suggesting that Defendants Pettit and Delaney, acting in their individual capacities, abused their discretion and violated his due process rights by imposing the Family Contact Condition without considering less-restrictive alternatives.

As a result, Defendants Pettit and Annucci are not, at this stage of the proceeding, entitled to qualified immunity for their alleged deprivation of Plaintiff's procedural due process rights.[6]

### 3. Whether Plaintiff's First Claim Should Be Dismissed to the Extent It Seeks a Permanent Injunction

Plaintiff concedes that his request for injunctive relief against Defendants Pettit, Kellar, and White is inappropriate and should be dismissed. (Dkt. No. 24, at 10.) In addition, as set forth above in Part III.A.1.c. of his Decision and Order, Plaintiff's First Claim is dismissed as against Defendant Knapp. (Dkt. No. 24, at 10.)

---

[6] The Court notes that Plaintiff cannot recover monetary damages against Defendant Annucci in his official capacity. *Jackson v. Ramirez*, 691 F. App'x 45, 46 (2d Cir. 2017). The Eleventh Amendment precludes suits against states unless the state expressly waives immunity or Congress abrogates it. *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 95 (2d Cir. 2002). A claim against state officials in their official capacities is likewise barred. *Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002). New York State has not waived its immunity, *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39 (2d Cir. 1977), nor has Congress abrogated it, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990).

After carefully considering the matter, the Court denies Defendants' motion to dismiss Plaintiff's claims for permanent injunctive relief as against Defendants Delaney and Annucci.

"The Due Process Clause requires that the parole conditions imposed by the State of New York or its agents be 'reasonably related to [the parolee's] prior conduct or to the government's interest in his rehabilitation." *Yunus*, 2018 WL 3455408, at *35 (quoting *Singleton*, 210 F. Supp. 3d at 374). "A parolee may seek judicial intervention-including 'tailoring or invalidation'-where 'the condition is not related to the parolee's criminal history or to the State's interests.'" *Id.* (quoting *Robinson v. New York*, 09-CV-0455, 2010 WL 11507493, at *6 [N.D.N.Y. Mar. 26, 2010] [Sharpe, J.]). "This 'limited due process right,' which entitles a parolee to 'conditions of parole that are reasonably related to his prior conduct or to the government's interest in his rehabilitation,' *Singleton*, 210 F. Supp. 3d at 374, may be enforced in federal court." *Id*. (citing *Maldonado v. Fischer*, 11-CV-1091, 2013 WL 5487429, at *4 [W.D.N.Y. Sept. 30, 2013]).

As a result, the Court rejects Defendants' argument that Plaintiff must pursue an Article 78 proceeding in New York State courts to obtain the permanent injunction he seeks. (Dkt. No. 21, Attach. 1, at 14-16.) While Plaintiff could have sought review of his parole conditions in an Article 78 proceeding, he was not required to. *Yunus*, 2018 WL 3455408, at *4; *see also Maldonado*, 2013 WL 5487429, at *4 ("Should plaintiff be granted parole at some point in the future, and should parole officials impose similar conditions, plaintiff may seek review of those conditions through an article 78 petition or another action in this court").[7]

---

[7]     Defendants do not cite to, and the Court is not aware of, any case in which a request for a permanent injunction was dismissed because the plaintiff could have brought an Article 78 proceeding in New York State court to review the special conditions of his or her parole.

The Amended Complaint alleges facts plausibly suggesting that, notwithstanding the permissive language in the Family Contact Condition that allows for permission from his parole officer, the Family Contact Condition is a bar on Plaintiff's ability to live with his minor son. In addition, the Family Contact Condition clearly prohibits any unsupervised contact between Plaintiff and his minor son.

As a result, Defendants are not entitled to dismissal of the First Claim to the extent it seeks injunctive relief against Defendants Annucci and Delaney.

**B.** **Plaintiff's Second Claim**

**1.** **Whether the Amended Complaint Alleges Facts Plausibly Suggesting the Personal Involvement of Defendants Kellar and White**

After carefully considering the matter, the Court grants Defendants' motion to dismiss the Second Claim as against Defendants Kellar and White because the Amended Complaint fails to allege facts that plausibly suggest their personal involvement in the imposition or enforcement of the Computer Condition for the reasons stated in Defendants' memoranda of law and as discussed above in Parts III.A.1.a. and III.A.1.b. of this Decision and Order. (Dkt. No. 21, Attach. 1 [Defs.' Mem. of Law]; Dkt. No. 25 [Defs.' Reply Letter].)

**2.** **Whether Plaintiff's Second Claim Should Be Dismissed to the Extent It Seeks Monetary Damages Based on the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court grants in part and denies in part Defendants' motion to dismiss Plaintiff's Second Claim to the extent it seeks monetary damages based on the doctrine of qualified immunity.

As set forth above in Part III.A.2. of this Decision and Order, "[t]he doctrine of qualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982]).

On June 19, 2017, in *Pakingham v. North Carolina*, 137 S. Ct. 1730 (2017), the Supreme Court held for the first time that registered sex offenders cannot be routinely or categorically barred from social media, even where–as in the North Carolina at issue there–the prohibition extends only to websites that could be used by minors. *Yunus*, 2018 WL 3455408, at *30. "Following *Packingham*, state and federal cases around the country have invalidated a variety of broad-based internet or social media restrictions imposed on sex offenders simply because they are sex offenders. To survive a constitutional challenge, any such restriction must be narrowly tailored to the history or known proclivities of the individual parolee." *Id.* (*see, e.g., Doe v. Kentucky*, 283 F. Supp. 3d 608, 613 [E.D. Ky. 2017] [holding that statute prohibiting registered sex offender from accessing all social media websites that could be used by minors was not sufficiently "tailored" to pass constitutional muster, notwithstanding Doe's conviction for possessing child pornography, and enjoining defendants from enforcing the statute "not only against Mr. Doe, but altogether"]; *Mutter v. Ross*, 240 W.Va. 336, 811 S.E.2d 866, 873 [W. Va. 2018] [noting that "*Packingham* made no exception for parolees" and invalidating special condition of parole preventing sex offender from accessing the internet where he had no "history of using the internet to engage in criminal behavior"]; *cf. United States v. Rock*, 863 F.3d 827, 830-32 [D.C. Cir. 2017] [upholding supervised release condition prohibiting sex offender from

possessing a computer or going online without prior approval because Rock pleaded guilty to "distributing" child pornography "over the internet," such that as to him the restriction was "narrowly tailored" and not "arbitrary"]).  Before *Packingham*, which was decided on June 19, 2017, this right was not clearly established.

The Amended Complaint alleges that Plaintiff was not charged with any internet-related criminal conduct, sexual or otherwise.  (Dkt. No. 6, at 4-5.)  However, Defendants imposed several special conditions on Plaintiff regarding his use of a computer, technology, and the internet.  (*Id.* at 27, 30-34.)  For example, the Amended Complaint alleges that Plaintiff has not been permitted to use the computer at the Jefferson County Law Library to conduct legal research or to type and print his court motions.  (*Id.* at 16.)  In addition, the Amended Complaint alleges that Plaintiff has not been permitted to own a laptop to continue his education and conduct business.  (*Id.*)

As a result, Defendants Knapp, Delaney, and Pettit[8] are entitled to the doctrine of qualified immunity for "any First Amendment deprivations that [P]laintiff suffered at [their] hands prior to June 19, 2017, when *Packingham* was decided" because "[p]rior to *Packingham*, it was not 'clearly established' that a social media [or computer] ban would violate the constitutional rights of parolees such as [P]laintiff."  *Yunus*, 2018 WL 3455408, at *33.  As to any First Amendment deprivations that Plaintiff allegedly suffered after June 19, 2017, these three Defendants are not entitled to the doctrine of qualified immunity with regard to this claim.

---

[8]     Plaintiff cannot recover monetary damages against Defendant Annucci in his official capacity.  *See, supra,* note 6 of this Decision and Order.

### 3. Whether Plaintiff's Second Claim Should Be Dismissed to the Extent It Seeks a Permanent Injunction

As set forth above in Part III.A.3. of this Decision and Order, Plaintiff is entitled to seek review of the conditions of his parole in federal court. The Amended Complaint alleges facts plausibly suggesting that, notwithstanding the permissive language in the Computer Condition which allows for permission from his parole officer, that the condition is a bar on Plaintiff's ability to use a computer or other technology for legitimate purposes.

As a result, Defendants are not entitled to dismissal of the Second Claim to the extent it seeks injunctive relief against Defendants Knapp, Annucci, and Delaney.

For all of these reasons, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 21) is **GRANTED in part** and **DENIED in part**, in that Plaintiff's Amended Complaint is **DISMISSED** against Defendants Kellar and White, Plaintiff's First Claim is **DISMISSED** against Defendant Knapp, Plaintiff's First Claim **SURVIVES** against Defendant Pettit for monetary damages, against Defendant Delaney for monetary damages and injunctive relief, and against Defendant Annucci for injunctive relief, and Plaintiff's Second Claim **SURVIVES** against Defendant Pettit for monetary damages for any actions that occurred after June 19, 2017, against Defendant Delaney for monetary damages for any actions that occurred after June 19, 2017, against Defendant Knapp for monetary damages for any actions that occurred after June 19, 2017, and injunctive relief, and against Defendant Annucci for injunctive relief;

**ORDERED** that the remaining Defendants (Knapp, Pettit, Delaney, and Annucci) file an Answer to the Plaintiff's Amended Complaint (Dkt. No. 6) within **FOURTEEN (14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P. Rule 12(a)(4)(a), and this case is referred back to U.S. Magistrate Judge Thérèse Wiley Dancks for the setting of pretrial scheduling deadlines.

Dated: July 1, 2019
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge